IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Stephanie Lukis, ) | |
| individually and on behalf of all others ) | CIVIL ACTION NO: 19-cv-4871 |
| similarly situated, ) | |
| ) | |
| *Plaintiffs*, ) | JUDGE FEINERMAN |
| v. ) | |
| ) | MAG. GILBERT |
| Whitepages Incorporated, ) | |
| ) | |
| *Defendant.* ) | |

_____

### OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
_____

Plaintiffs submit the following opposition to Defendant Whitepages' motion to dismiss.

**1. The substance of Plaintiff's complaint.**

Plaintiff alleges that Defendant obtains information sufficient to identify her to a reasonable viewer and then uses that information to advertise Defendant's services on its website. Compl. ¶¶ 8-12. Specifically, Defendant provides website viewers with a preview of Plaintiff's identifying information as part of advertisements for Defendant's "background report services." Compl. ¶¶ 12-14. These services consist of a monthly subscription that allows users access to the background reports of all individuals in Defendant's database, including Plaintiff. Compl. ¶¶ 15-16. Plaintiff alleges that this conduct violates the Illinois Right of Privacy Act ("IRPA") because Whitepages uses Plaintiff's identity "for a commercial purpose" as defined in 765 ILCS 1075/30.

**2. *Dobrowolski v. Intelius, Inc.*, No. 17- cv-1406, slip op. (N.D. Ill. May 21, 2018).**

Because much of Whitepages' motion is argued in the shadow of *Dobrowolski*, Plaintiff begins with her interpretation of that case. There, the plaintiffs alleged that defendants paid Google to display advertisements within Google's search results when someone entered a particular name into the Google search engine. *Id*. at 2. The Google search result link led to a "marketing page" on defendants' websites which displayed identifying information about the plaintiffs and other people with the same name. *Id*. A

user of the defendants' websites could then elect to purchase "informational reports" about any of the individuals who showed up on the marketing page. *Id*. at 1-2. The *Dobrowolski* court found these facts insufficient to state an IRPA claim because (1) the defendants were only using plaintiffs identities to advertise the sale of the plaintiffs' "informational reports" (as opposed to advertising a separate product); and (2) because it was impossible to say which identically-named individual on defendants' marketing page—if any—the paid Google search result was advertising on behalf of. *Id*. at 5.

Despite Whitepages' reliance on *Dobrowolski*, there are some fundamental differences between that case and this one—one of which Your Honor highlighted in the notice-of-motion hearing. Unlike in *Dobrowolski*, Whitepages advertises *other* services—its background report services—using Plaintiff's identity. In other words, it puts Chance the Rapper on the cover of Judge Feinerman's biography because the judge saw him in concert one time. This makes the instant case different from *Dobrowolski* as well as *Thompson v. Getty Images, Inc*., 2013 WL 3321612 (N.D. Ill. July 1, 2013), because in those cases the defendants were using plaintiff's identity to "preview" a product relating only to the plaintiff.

The second difference between *Dobrowolski* and this case is that Plaintiff is not complaining about a paid advertisement in Google's search results—she is complaining that searches conducted on Defendant's own website lead to "advertising previews" like the one shown in Paragraph 10 of the complaint.[1] These advertising previews impermissibly display Plaintiff's identity in connection with advertisements for Defendant's services. In *Dobrowolski* it was impossible to say on whose behalf the paid Google search result was made. By contrast, each advertising preview shown on Whitepages website corresponds to a distinct person. In short, in *Dobrowolski* the advertisement was the Google search result; in this case the advertisement is the advertising preview on Defendant's own website.

---

[1] A search on Whitepages' website of a given name yields search results for that name, and the *clicking* of any one of those search results will yield a "advertising preview" like that shown in Paragraph 10 of the complaint. This makes the instant case slightly different from *Fischer et al v. Instant Checkmate LLC,* No. 19-4892, where the plaintiffs allege that the search results themselves constitute IRPA violations. In any case *Dobrowolski* is inapposite, because each search result on Whitepages' website corresponds to its own "advertising preview" that relates exclusively to a distinct individual.

2

3. **This Court has personal jurisdiction over the Defendant.**

The Court has personal jurisdiction over Whitepages for the same reason the court in *Dobrowolski* had personal jurisdiction over the defendants in that case: Whitepages purposefully reached into Illinois to obtain information about its residents for the purpose of selling that information on its website, and that conduct harmed the Plaintiff. Compl. ¶¶ 20-21. "[Defendant] reached into Illinois to gather data about [plaintiff] and other Illinois residents knowing that it would use that information to advertise its reports. [Defendant's] use of this information ([plaintiff's] injury) was a natural and probable result of obtaining that information… [plaintiff] has established prima facie claim for personal jurisdiction over [defendant]." *Dobrowolski* slip. op at 4.

4. **Whitepages used Plaintiff's identity for a "commercial purpose" under IRPA.**

Whitepages next argues that IRPA does not apply because it did not use Plaintiff's identity for a "commercial purpose" as defined by the statute. Def.'s Br. at 7-8. In support of this argument it cites *Dobrowolski* and *Thompson*, characterizing its advertisements as merely offering previews of the Plaintiff's background report. But as already noted above, this case differs from *Dobrowolski* and *Thompson* in that Plaintiff alleges her identity was used to advertise a product *separate* from her background report—Whitepages' subscription service. Compl. ¶¶ 8-16. Plaintiff is not complaining that Whitepages offers a preview of her identity profile—she is complaining that her identity profile previews are being used by Whitepages to sell other products.

5. **A search on Whitepages website yields a search result corresponding to Plaintiff Stephanie Lukis.**

Whitepages argues that because a search of its website can return more than one result of "Stephanie Lukis" that the Plaintiff's complaint must be dismissed. Def.'s Br. 8-9. But this argument relies on a misreading of *Dobrowolski*. In *Dobrowolski*, certain names were advertised by defendants via paid Google search results; for example, "Jane Doe." Clicking that paid Google search result led the web surfer to a "marketing page" on defendants' websites which displayed a variety of different "Jane Does." Thus it was impossible to say which "Jane Doe" was the proud owner of an IRPA claim for the original

Google search result. Not so in the present case. Here, Whitepages' website—not Google—returns a list of search results, one of which indisputably belongs to Plaintiff Stephanie Lukis. As the complaint shows, Whitepages' website displays a very specific advertising preview for Plaintiff that includes her address, previous address, phone number, and relatives. This distinction makes *Dobrowolski* unavailing to Whitepages' argument.

6. **Plaintiff's identity is used for a "commercial purpose" and so neither First Amendment defenses nor any IRPA exemptions apply.**

Whitepages argues that it is immune to suit under both the First Amendment and 765 ILCS 1075/35(b)(2) because its use of Plaintiff's identity qualifies as "non-commercial speech." Yet Defendant's website advertises the partial background reports of individuals for the sole purpose of enticing website users to purchase background report services, Compl. ¶¶ 12-13, which is clearly "speech that proposes a commercial transaction." *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469, 482 (1989). "[T]he Seventh Circuit has listed relevant considerations to include "whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." *U.S. v. Benson*, 561 F.3d 718, 725 (7th Cir. 2009). Here, Defendant's website specifically solicits the purchase of its products—subscription background report services—through an advertisement that teases portions of Plaintiff's identity. This conduct meets all three factors from *Benson*.

Defendant analogizes this case to *Vrdolyak v. Avvo, Inc*., 206 F. Supp. 3d 1384 (N.D. Ill. 2016), arguing that like the website in *Vrdolyak*, Defendant's website is merely a "directory." But *Vrdolyak* involved very different facts. In that case the defendant compiled identifying information about U.S. attorneys and displayed that information in a profile page for each attorney on defendant's website. *Id*. at 1386. The information on each attorney profile page was displayed *for free* alongside advertisements for third-party services. *Id*. The *Vrdolyak* plaintiff conceded that the attorney profile information was constitutionally protected—but he argued the addition of the third-party advertisements converted the entire profile page into an advertisement, making it all commercial speech. *Id*. at 1388. The court

4

ultimately found that the profile pages were not commercial speech by virtue of the third-party advertisements because (1) not every profile page had an advertisement; and (2) the advertisements did not name the attorneys shown in the profile pages where they were posted. *Id*. The court rightly observed that to hold otherwise would create liability for virtually all publishers, who commonly gain revenue by including third-party advertisements alongside their content. *Id*.

In the present case, Defendant's so-called "directory" is not freely available to any website user, as in *Vrdolyak*, but instead is teased as part of Defendant's advertising strategy with information about Plaintiff's identity. Defendant does not post third-party advertisements alongside Plaintiff's identifying information; it advertises its own, for-pay services. The website in *Vrdolyak* was like a phonebook for lawyers with a pizza restaurant advertised in the margins; the website in this case is like a phonebook for lawyers that lists names and addresses—but makes you pay extra if you want to see the phone numbers. That makes this case less like *Vrdolyak* and more like *Gabiola v. Sarid*, 2017 WL 4264000 (N.D. Ill. Sept. 26, 2017). In *Gabiola*, the defendant's website published mugshot photos and arrest records of the plaintiffs and required users to pay a fee to remove them. *Id*. at 2-3. The *Gabiola* court distinguished *Vrdolyak* by observing that unlike the passive display of third-party advertisements alongside the defendant's website content, the *Gabiola* defendants incorporated the plaintiffs' identities into the advertisements for their own services. *Id*. at 6. The "[plaintiffs'] profiles…work together with links directly to the checkout page…as advertisements [for defendant's services]." *Id*.

Whitepages somewhat unbelievably claims that "[t]he primary purpose of the Whitepages' Web site is to share useful and newsworthy public information about individuals…[it] is not an attempt to trade on that individual's name or likeness but rather an attempt to direct Internet users to a directory of useful and newsworthy public information" Def.'s Br. at 11. It argues that this allegedly "noncommercial purpose" makes it immune to an IRPA claim under Subection (b)(2). But the fact that there is a hypothetically noncommercial purpose behind Defendant's website does not create grounds to dismiss Plaintiff's complaint on the pleadings. Plaintiff specifically alleges the opposite: that Whitepages

intentionally used her identity for commercial purposes—and that allegation should be given the benefit of the doubt at the pleading stage.

### 7. Dismissal under the Communications Decency Act ("CDA") is not appropriate under Rule 12.

Like any other affirmative defense, the Court should not grant Whitepages motion under the CDA unless Plaintiff establishes the elements of that defense in her pleadings. Plaintiff does not. To the contrary, she specifically alleges that Whitepages "compiles and generates the content it sells on its website." Compl. ¶ 17. This allegation is enough to establish Whitepages is a "creator" or "developer" of the content at issue in this case—and so the CDA should not apply. 47 U.S.C. § 230(c)(1); *Chicago Lawyers' Committee For Civil Rights Under Law, Inc. v. Craigslist, Inc*., 519 F.3d 666, 671 (7th Cir. 2008) (CDA does not apply where a defendant is responsible for the creation of the allegedly unlawful content). Whitepages argues it is not the creator of the content because users of its websites must enter a name into the search bar on its website. Def.'s Br. at 14. But querying a database does not make the query-maker a "creator" of the information in the database. Whitepages also argues that it does not generate the content available on its website, and that it actually comes from third parties. However it remains to be seen where the information comes from and what Whitepages does to it before it is shown to website viewers. That question should be resolved via discovery.

### 8. Conclusion

IRPA was not just written for the rich and famous. "This legislation will help protect entertainers, celebrities such as Michael Jordan, as well as other ordinary people…people who do not wish to have their identities used in the commercial manner without their consent." HB 1422, Tr. of House Debate, 90th Ill. Gen. Assem. (April 24, 1997) at 225. It is hard to imagine another venture that more baldly commercializes a regular person's identity than the Defendant's website. Unless IRPA is dead-letter law it should apply here.

6

*Respectfully submitted,*

*/s/ Roberto Luis Costales*

———————————————
Roberto Luis Costales
William H. Beaumont
BEAUMONT COSTALES
107 W. Van Buren #209
Chicago, IL 60605
Telephone: (773) 831-8000
rlc@beaumontcostales.com
Attorneys for Plaintiff