IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Stephanie Lukis, Mantas Norvaisas and Shawn Brown individually and on behalf of all others similarly situated, | ) ) ) CIVIL ACTION NO: 19-cv-4871 |
| *Plaintiffs,* | ) ) JUDGE FEINERMAN ) |
| v. | ) MAG. GILBERT ) |
| Whitepages Incorporated, | ) CLASS ACTION COMPLAINT ) JURY TRIAL DEMANDED |
| *Defendant.* | ) |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Stephanie Lukis, Mantas Norvaisas, and Shawn Brown bring this class action on their own behalf and also on behalf of all others similarly situated ("class members"). Class members had (and continue to have) their identities used by the Defendant in its advertisements without class members' written consent, in violation of Illinois law.

**THE PARTIES**

1. Plaintiffs Stephanie Lukis, Mantas Norvaisas and Shawn Brown are residents of Cook County, Illinois.

2. Defendant Whitepages Incorporated ("Whitepages" or "Defendant") owns and operates the website www.whitepages.com. Defendant is a Washington-based, for-profit corporation organized under the laws of the State of Washington.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d).

1

4. Venue is proper in the Northern District of Illinois because Defendant is committing the acts alleged herein in the Northern District and a substantial part of the acts and omissions giving rise to the claims asserted herein have occurred in the Northern District.

## COMMON FACTUAL ALLEGATIONS

5. Despite its name Defendant Whitepages is not affiliated with the once-popular print telephone directory promulgated by AT&T.

6. Rather, Defendant owns and operates a website that sells "background reports" on people to the general public.

7. Defendant sells its reports on its website: www.whitepages.com.

8. Upon accessing Whitepages' website, the public-at-large is free to enter the first and last name of a particular individual via a search bar on the homepage.

9. After entering this information, any public user of Whitepages' website is provided with a listing of search results. Each search result corresponds to an actual person that Whitepages has located who matches the name provided by the public user.

10. These search results provide a limited, free preview of Defendant's "background reports." As shown in the images below, this free preview includes the searched individual's name (including middle initials), age range, alleged phone number, current address, the "previous locations" where the searched individual has lived, and other identifying information:





11. As shown in the images above, Whitepages' free preview provides enough information to identify an individual.

12. The purpose behind Whitepages' free preview is singular: to entice users to purchase Defendant's services. These services include "background reports" and "histories" relating to individuals on its database.

13. Whitepages' uses these free previews to advertise its monthly subscription services whereby a user can access and retrieve "background reports" and "histories" on any individual in its database.

14. In order for a user to view a person's "background report" or other background "histories" generated by the Defendant, a user needs to purchase Defendant's services. Clicking any of the blue highlighted text in the above images (e.g. "view results" or "get their background

4

check" or "continue to results" or "view all relatives" or "criminal records") leads users to a pay screen which presents them with an option to pay for Whitepages' monthly subscription services.

15. Whitepages monthly subscription ranges in cost from $4.99 to $19.99 per month to access and search anyone on its database.

16. Whitepages monthly subscription allows users to obtain background reports using Whitepages services on between 20 and 200 different individuals per month, depending on subscription cost.

17. Whitepages compiles and generates the content it sells on its website. According to Whitepages: "we work with over 100 different data providers worldwide and ingest over two billion records a month into our internal database, enabling us to provide a robust search that we have within our products."[1]

18. Neither Plaintiffs nor class members provided Defendant with written consent to use their identities in Defendant's advertisements. As detailed above, Whitepages uses class members' identities to advertise its for-profit services. Thus, Defendant violates the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1, *et seq*.

19. It would be extremely easy for Whitepages to maintain their business model while still complying with state law. For example, Whitepages could merely display the names of the searched individuals—without more identifying information—in their advertisements for their services.

20. Whitepages purposefully subjects itself to jurisdiction in this Court by knowingly searching and obtaining private and public records and/or identifying information on Illinois residents. Indeed, this lawsuit revolves around Whitepages business practice of acquiring

---

[1] https://www.whitepages.com/blog/whitepages-identity-graph/ (last accessed October 21, 2020)

identifying information about Illinois residents with the specific intent of selling that information to its customers.

21. Additionally, Whitepages directly sells its services to consumers in Illinois.

## **THE PLAINTIFFS' EXPERIENCES**

22. In 2018 Plaintiff Lukis discovered that Whitepages uses her name, age, city of domicile, and the identity of her relatives in advertisements on the Whitepages website to advertise and/or actually sell Defendant's products and services. These advertisements were the same or substantially similar to those shown in Paragraph 10.

23. Plaintiff Lukis believes that it is reasonable for others to identify her because Defendant's advertisements include accurate details about her.

24. Indeed, Plaintiff Lukis can confirm that the individual Defendant identified in paragraph 10 is in fact herself.

25. Plaintiff Lukis never provided Whitepages with written consent to use any attribute of her identity in any advertisement or for any commercial purposes.

26. Plaintiff Lukis is not and has never been a Whitepages customer. She has no relationship with Whitepages whatsoever.

27. Plaintiff Lukis' discovery of Whitepages unauthorized use of her identity has caused Plaintiff emotional distress.

28. Plaintiff Lukis has not been compensated by Whitepages in any way for its use of her identity.

29. Plaintiff Lukis does not want Whitepages to use her identity for any commercial advertising purpose.

30. Like Plaintiff Lukis, in 2020 Plaintiff Norvaisas discovered that Whitepages uses his name, age, and the identity of his relatives in advertisements on the Whitepages website to advertise and/or actually sell Defendant's products and services. These advertisements are the same or substantially similar to those shown in Paragraph 10.

31. Plaintiff Norvaisas believes that it is reasonable for others to identify him because Defendant's advertisements include accurate details about him.

32. Plaintiff Norvaisas never provided Whitepages with written consent to use any attribute of his identity in any advertisement or for any commercial purposes.

33. Plaintiff Norvaisas is not and has never been a Whitepages customer. He has no relationship with Whitepages whatsoever.

34. Plaintiff Norvaisas's discovery of Whitepages' unauthorized use of his identity has caused Plaintiff emotional distress.

35. Plaintiff Norvaisas has not been compensated by Whitepages in any way for its use of his identity.

36. Plaintiff Norvaisas does not want Whitepages to use his identity for any commercial advertising purpose.

37. Plaintiff Brown also discovered in 2020 that Whitepages uses his name, age, city of domicile, and the identity of his relatives in advertisements on the Whitepages website to advertise and/or actually sell Defendant's products and services. These advertisements are the same or substantially similar to those shown in Paragraph 10.

38. Plaintiff Brown believes that it is reasonable for others to identify him because Defendant's advertisements include accurate details about him.

39. Plaintiff Brown never provided Whitepages with written consent to use any attribute of his identity in any advertisement or for any commercial purposes.

40. Plaintiff Brown is not and has never been a Whitepages customer. He has no relationship with Whitepages whatsoever.

41. Plaintiff Brown's discovery of Whitepages' unauthorized use of his identity has caused Plaintiff emotional distress.

42. Plaintiff Brown has not been compensated by Whitepages in any way for its use of his identity.

43. Plaintiff Brown does not want Whitepages to use his identity for any commercial advertising purpose.

## CLASS ACTION ALLEGATIONS

44. Plaintiffs bring this action on behalf of themselves and a class defined "all Illinois residents who have appeared in an advertisement preview for a Whitepages' report."

45. Excluded from the class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

46. The persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

47. There are common questions of law and fact common to the claims of Plaintiffs and the putative class, and those questions predominate over any questions that may affect individual members of the class. Common questions for the class include, but are not necessarily limited to the following:

    a. Whether Whitepages' uses class members' names and identities in advertisements for its own commercial benefit;

    b. Whether the conduct described herein constitutes a violation of the Illinois Right of Publicity Act 765 ILCS 1075/1, *et seq.*; and

    c. Whether Plaintiffs and the class are entitled to injunctive relief.

48. The claims of the named Plaintiffs are typical of the class. Plaintiffs will fairly and adequately represent and protect the interests of the class, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of the class, and Defendant has no defenses unique to Plaintiffs.

49. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Judicial economy will be served by maintaining this lawsuit as a class action because it avoids the burden which would otherwise be placed upon the judicial system by the filing of numerous similar suits. A class action is also superior because the damages suffered by individual class members are relatively small and because the burden upon such individual litigants may make it difficult and impractical for them to pursue their claims against Defendant.

50. There are no obstacles to effective and efficient management of this lawsuit as a class action by this Court.

51. References to the Plaintiffs shall be deemed to include the named Plaintiffs and each member of the class, unless otherwise indicated.

## FIRST CAUSE OF ACTION

**Violation of the Illinois Right of Publicity Act 765 ILCS 1075/1,** *et seq.*
**(On behalf of Plaintiffs and the class)**
(Damages)

52. Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

53. The Illinois Right of Publicity Act prohibits using a person's name, photograph, image, or likeness for the purpose of advertising or promoting products, merchandise, goods, or services without written consent. See 765 ILCS 1075/1, *et seq.*

54. Based upon Whitepages' violation of the Illinois Right of Publicity Act, Plaintiffs and class members are entitled to (1) an injunction requiring Whitepages' to cease using Plaintiffs' and members of the class' names and any attributes of their identities to advertise its products and services, (2) the greater of any award of actual damages (including profits derived from the unauthorized use of Plaintiff's and class members' names and identities) or statutory damages of $1,000 per violation to the members of the class, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees under 765 ILCS 1075/40-55.

## SECOND CAUSE OF ACTION

**Violation of the Illinois Right of Publicity Act 765 ILCS 1075/1,** *et seq.*
**(On behalf of Plaintiffs and the class)**
(Injunctive Relief)

55. Plaintiffs incorporate by reference each of the preceding allegations as though fully set forth herein.

56. The Illinois Right of Publicity Act provides for injunctive relief. 765 ILCS § 1075/50.

57. Plaintiffs and class members are entitled to and seek an order enjoining further violations of the Illinois Right of Publicity Act by Defendant.

58. Injunctive relief is necessary to afford Plaintiffs and class members the safety and peace of mind envisioned by the passage of the Illinois Right of Publicity Act.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully requests that the Court enter an Order:

1. Certifying the class as defined above under FRCP 23(b)(2) and (3), appointing Stephanie Lukis, Mantas Norvaisas, and Shawn Brown as class representatives and appointing their counsel as class counsel;

2. Declaring that Whitepages' actions described herein constitute a violation of the Illinois Right of Publicity Act;

3. Awarding injunctive and other equitable relief as necessary to protect the interest of the class, including, *inter alia*, prohibiting Whitepages from engaging in the wrongful and unlawful acts described herein;

4. Awarding the greater of actual damages, including the profits derived from the unauthorized use of same, or statutory damages in the amount of $1,000 per violation of the members of the class;

5. Awarding punitive damages where applicable;

6. Awarding Plaintiffs and the class their reasonable litigation expenses and attorney's fees;

7. Awarding Plaintiffs and the class pre- and post-judgment interest; and

8. Granting such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues for which a jury trial is allowed.

*Respectfully Submitted,*

*/s/ Roberto Costales*
_____
Roberto Luis Costales (#6329085)
William H. Beaumont (#6323256)
BEAUMONT COSTALES LLC
107 W. Van Buren, Suite 209
Chicago, IL 60605
Telephone: (773) 831-8000
rlc@beaumontcostales.com
whb@beaumontcostales.com
ATTORNEYS FOR PLAINTIFF