IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Stephanie Lukis, | ) | |
| individually and on behalf of all others | ) | CIVIL ACTION NO: 19-cv-4871 |
| similarly situated, | ) | |
| | ) | |
| *Plaintiffs,* | ) | JUDGE FEINERMAN |
| v. | ) | |
| | ) | MAG. GILBERT |
| Whitepages Incorporated, | ) | |
| | ) | |
| *Defendant.* | ) | |

_____

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR
TRANSFER BASED ON ARBITRABILITY**
_____

Defendant's request to arbitrate this dispute is "too little too late." It did too little to
discover its right to arbitrate—and the small amount of diligence it did exhibit was not brought to
the Court's attention until after Defendant had repeatedly availed itself of this judicial forum.
Defendant's explanation for its delay is not persuasive. The event that allegedly triggered
Defendant's arbitration claim—Plaintiff's counsel's accessing materials beyond the paywall at
Whitepages.com—occurred on July 21, 2020. Defendant's arbitration motion came more than
three months later. During that time period Defendant unquestionably knew or should have
known that it had a right to arbitrate. Yet it chose not act on that knowledge. The consequence of
that decision should be that Defendant's motion to transfer or dismiss be denied.

**I.      Whitepages forfeited its right to arbitration.**

Arbitration provisions, like any other contract right, can be waived. *St. Mary's Med. Ctr.
of Evansville, Inc. v. Disco Aluminum Prod. Co*., 969 F.2d 585, 590 (7th Cir. 1992). An
arbitration waiver can be intentional or implicit. *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495,
499 (7th Cir. 2018). Implicit waiver, also known as "forfeiture," occurs when a party fails to

timely assert its right to arbitrate. *Id*. To determine whether a forfeiture has taken place, a court looks to the "totality of the circumstances" to see if "a party acted inconsistently with the right to arbitrate." *Id*. Of particular importance is a party's diligence, *i.e*, whether a party "[does] all it can reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration[.]" *Id*. (quoting *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995). Other factors include "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Id*.

The *Smith* case is particularly instructive. There, the plaintiff entered into a credit card agreement that contained an arbitration provision. *Id*. at 497. The defendant was hired to collect plaintiff's debts pursuant to this agreement, but the plaintiff took issue with defendant's debt collection practices and sued. *Id*. Eight months into litigation, defendant demanded that the parties arbitrate. *Id*. at 498. The defendant argued it did not request arbitration sooner because it was not an original party to the agreement containing the arbitration clause and had difficulty obtaining a copy. *Id*. at 500. The 7th Circuit found this explanation "entirely inadequate" because defendant could have easily found the document through a "routine" search. *Id*.

Similarly, here, Defendant's explanation as to why it delayed in moving for arbitration is entirely inadequate. Defendant was first put on notice of the arbitration issue July 23, 2020, when Plaintiff's counsel filed a declaration stating that he "personally interacted" with Defendant's website and performed "comprehensive review" of same. Defendant has acknowledged that this declaration formed a "big moment" in its thinking about arbitration. *See* Exhibit 1, November 3, 2020 Hearing Transcript, p. 16 lines 15-16. That would make sense, since the declaration describes information only available behind the paywall on Defendant's website—including a

description of for-pay search results and the steps a for-pay user takes to operate Defendant's service. Thus, the "big moment" to which Defendant refers can only be its realization, on July 23, that it had a colorable claim for arbitration.

Defendant downplays Plaintiff's counsel's declaration as ambiguous. But it did not find it so ambiguous when using it as an excuse to evade discovery. On July 31, 2020 Plaintiff issued discovery requests for portions of Defendant's website that are behind the paywall, including copies of paid or "premium member" search interfaces. *See generally* Exhibit 2, Defendant's Responses to Plaintiff's Written Discovery. Whitepages objected to providing responses to these requests *on the basis that Plaintiff was already in possession of this information*, stating "[Plaintiff's counsel] personally interacted with Defendant's website" and "described all of the information that is available for free and for pay that he discovered through his comprehensive review of Whitepages.com." Exhibit 2 at pp. 7, 13-14.

Thus, there cannot be any real dispute that Defendant was on notice, as of late July, that counsel for Plaintiff had went beyond the paywall. Yet instead of taking action consistent with the desire to arbitrate—such as marshalling further evidence,[1] staying its pending motions, or notifying the Court or the Plaintiff—Defendant did none of these things. Quite the contrary: it filed a reply briefs in support of its motions for summary judgment, reconsideration, and request

---

[1] Defendant could have quickly and easily confirmed Plaintiff's counsel's use of their paid services because Defendant has a record of every person that has made a purchase on its website. *See* Exhibit 3, Excerpts from the Deposition of Nadine Thisselle. Defendant can search a person who has accessed their site by either the name on the credit card of the person purchasing services *or* the individual's email. *Id*. Despite the availability of these routine search functionalities, defense witness Nadine Thisselle testified that the first time anyone at Whitepages searched for Plaintiff's counsel's name was October 20, 2020. *Id*. Defendant makes much of the fact that undersigned counsel used an alternate email address to access Whitepages.com—but this is a red herring, since it completely ignores that the Defendant could have simply searched for Plaintiff's counsel's name among Defendant's credit card receipts.

to appeal on August 6, 2020. *See* Dkts. 79, 80. Then, two months later, following the Court's October 2, 2020 minute entry suggesting that Defendant's motions would be denied, Defendant conspicuously changed gears. Within seven days of that order Defendant had issued 225 discovery requests that focused almost exclusively on arbitration—and which again confirmed it was well-aware that Plaintiff's counsel had went beyond the paywall in preparing Plaintiff's summary judgment opposition:

> REQUEST NO. 182: Admit that in investigating your claim and/or in preparing your summary judgment response, your counsel signed up for a paid membership on www.whitepages.com.[2]

Defendant asks the Court to believe that it had the presence of mind to send this admission request on October 9th—but that it did not "discover" that Plaintiff's counsel went beyond the paywall until later, when it serendipitously searched for certain email keywords on October 20th in preparation for a deposition scheduled October 22nd. This explanation is highly improbable. Rather, given the totality of the circumstances, the only reasonable conclusion is that Defendant willfully delayed making its arbitration motion until well after it became aware of the right to do so. In other words, instead of "do[ing] all [one can] reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration[,]" *Cabinetree* at 391, Defendant sought summary dismissal of the case on the merits and hedged against a loss by sticking its head in the sand on the arbitration question. That is a classic example of forfeiture of the right to arbitrate and Defendant's motion should be denied on such basis.

---

[2] A copy of Defendant's discovery requests including the foregoing request can be found at Dkt. 94-1.

**II.     Transferring or dismissing this case despite Defendant's forfeiture will prejudice the Plaintiff.**

The Seventh Circuit has also held that "prejudice is a relevant factor" in finding that a party has forfeited their right to arbitration. *Smith* at 501. In *Smith*, the Seventh Circuit found prejudice where the movant "sought arbitration after [the nonmovant] had defeated a motion to dismiss, obtained class certification, and litigated several discovery issues[.]" *Smith* at 501. The Court additionally found the arbitration motion "sought to erase [the nonmovant's] successes— including her victory on [a] pivotal legal issue… [t]his attempt to 'play heads I win, tails you lose' is the worst possible reason for delay." *Id*. at 501-2 (citations and quotations omitted). Similarly, here, the Plaintiff has defeated both Defendant's motion to dismiss and motion for summary judgment—both involving victories on pivotal legal issues within the context of the Illinois Right of Publicity Act. Erasing these successes by transferring this matter to arbitration would highly prejudice Plaintiff, and the Court should deny Defendant's motion on that basis as well.

**III.    Whether Defendant's litigation conduct forfeited arbitration is not a question for the arbitrator.**

Defendant argues that the arbitration clause at issue delegates questions of arbitrability to the arbitrator. However, courts around the country have almost unanimously held that litigation conduct which forfeits the right to arbitration is an exception to such clauses. *See MB Fin., Inc. v. Hart*, 2019 WL 316869, at *3 (N.D. Ill. Jan. 24, 2019) ("Courts, not arbitrators, determine whether a party has waived its right to arbitration through litigation conduct."); *Banc of Am. Sec. LLC v. Indep. Tube Corp.*, 2010 WL 1780321, at *6 (N.D. Ill. May 4, 2010) ("[T]he vast majority of other courts that have addressed this issue [have concluded] that courts—not arbitrators—should resolve waiver-through-litigation-conduct issues.") (collecting cases); *Marie*

*v. Allied Home Mortg. Corp.*, 402 F.3d 1, 15 (1st Cir. 2005) ("There are no references to waiver or similar terms anywhere in the arbitration agreement. Neither party should be forced to arbitrate the issue of waiver by conduct without a clearer indication in the agreement that they have agreed to do so."); *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 222 (3d Cir. 2007) ("While it is clear the parties intended to have an arbitrator determine the gateway question of whether the underlying substantive dispute between them is arbitrable…we do not believe that this provision similarly evinces a clear and unmistakable intent to have an arbitrator decide procedural questions of arbitrability that arise only after the parties have bypassed a gateway determination of substantive arbitrability by the arbitrator and actively litigated the underlying dispute in court."); *Vine v. PLS Fin. Servs., Inc.*, 689 F. App'x 800, 804 (5th Cir. 2017) (unpublished) ("Because the Agreement does not contain clear and unmistakable evidence of an intent to arbitrate the instant litigation-conduct waiver issue, the district court did not err.").

There are compelling policy reasons for allowing courts, not arbitrators, to evaluate whether a party has waived arbitration by its litigation conduct. First, the court "is better positioned to determine whether the belated request for arbitration is a thinly veiled attempt to forum shop." *Ehleiter* at 1048. Second, "because the inquiry into whether a party has waived its right to arbitrate by litigating the case in court heavily implicates *judicial* procedures…[and] the court should remain free to control the course of proceedings before it and to correct abuses of those proceedings[.]" *Id*. (citations and quotations omitted) (emphasis in original). Here, the evidence overwhelmingly suggests that Defendant intentionally withheld its arbitration arguments in order to steal a favorable ruling on the merits from this Court. Then, when it saw the writing on the wall, it pursued the exact *opposite* course and tried to extricate itself from this forum as soon as possible via arbitration. Not only is the Court best positioned to evaluate this

6

sequence of events, the Court is also entitled to correct abuses of process that count the Court among its victims. Under the present circumstances, the entire exercise of moving for arbitration (in a class action with alternate representatives waiting in the wings, no less) is an affront to the orderly administration of justice and a waste of judicial resources.

It is within the Court's power to determine whether the Defendant has forfeited its right to arbitration and Plaintiff respectfully requests that it make such finding and deny Defendant's motion to dismiss or transfer.

*Respectfully submitted,*

*/s/ Roberto Costales*
_____
Roberto Costales
William H. Beaumont
BEAUMONT COSTALES LLC
107 W. Van Buren #209
Chicago, IL 60605
Telephone: (773) 831-8000
*rlc@beaumontcostales.com*

*Attorneys for Plaintiff*