IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Stephanie Lukis, individually and on behalf of all others similarly situated, | ) ) ) ) | CIVIL ACTION NO: 19-cv-4871 |
| *Plaintiffs,* | ) ) | JUDGE FEINERMAN |
| v. | ) ) | MAG. GILBERT |
| Whitepages Incorporated, | ) ) | |
| *Defendant.* | ) | |

## MOTION TO COMPEL

Plaintiff Stephanie Lukis brings the following motion to compel against Defendant Whitepages Incorporated ("Whitepages" or "Defendant"). Plaintiff seeks to compel documents and testimony relating to the third-party data providers that Defendant consults in the operation of its website, Whitepages.com.

### Introduction

This is a putative class action brought by Plaintiff Stephanie Lukis under the Illinois Right of Publicity Act ("IRPA"). Plaintiff alleges that Defendant unlawfully uses class members' identities "for a commercial purpose" in the course of advertising background reports and other similar services on its website. The current discovery cut off is February 1, 2021. Due in part to the disagreement outlined below, and also because of the slow pace of discovery to date, Plaintiff will be requesting a short extension of the discovery period in a filing later today.

There is no dispute that Whitepages obtains information about people—including Plaintiff and class members—from third party data providers. Yet Defendant has repeatedly concealed how, when, and why Whitepages obtains this data. Such information is broadly

1

relevant to Plaintiff's claim, Defendant's defenses, and class certification. Among other things, Plaintiff seeks to understand: (i) where precisely Whitepages obtains its data about people, including the specific identities of the third party data providers; (ii) what categories of information about people (*e.g.* cellular phone numbers) come from which provider(s); (iii) how regularly Whitepages consults with each of its data providers, and in what form(s) it makes such consultations; (iv) the extent to which Whitepages is aware of the sources of each data provider's information, and if so, what those sources are; and (v) whether any of Whitepages data providers purport to confer Plaintiff's or other class members' consent under IRPA.

To date, Whitepages has refused to give testimony on these topics. Its justification for that refusal is the alleged existence of confidentiality agreements with its data providers—agreements which it *also* declines to turn over to Plaintiff. According to Whitepages, it cannot provide discovery regarding its data providers unless those data providers give their express consent to the disclosure. This legal position is not well founded. Under Seventh Circuit case law, litigants are required to provide otherwise relevant discovery *even* if that information is subject to a confidentiality agreement with third parties. Thus, Plaintiff asks the Court to compel Defendant to provide testimony on the subject of its data providers, and also to produce all agreements Defendant has with such data providers.

<u>History of Plaintiff's Discovery Requests and Argument</u>

Plaintiff has sought to learn more about Defendant's data providers since early on in this case. On July 31, 2020, Plaintiff propounded written discovery requests seeking "every person that [Whitepages] contracted with…to collect or obtain [personal identity information] for use on [whitepages.com]." Plaintiff separately and specifically requested the identity of the person(s) who Whitepages contracted with to obtain Plaintiff's personal identifying information, including

2

her cellular phone number, and also a request for "all documents" relied on by Whitepages in answering any of Plaintiff's discovery requests.[1] On August 31, 2020, Whitepages served written responses to the discovery requests, wherein it objected to providing information about its data providers. On September 9, 2020, in a Rule 37 conference, it reiterated that refusal.

On November 12, 2020 Plaintiff took the deposition of Whitepages' Vice President of Finance and Operations, Nadine Thisselle. During the course of the deposition, Plaintiff's counsel asked the deponent to identify the data providers of whom she had knowledge. Defense counsel instructed her to not answer, claiming that such testimony would violate the confidentiality provisions of the agreements that existed between Whitepages and its data providers.

On December 15, 2020 the parties had a discovery conference to discuss the issue further. *See* Exhibit 2, Email Correspondence from Plaintiff's Counsel to Defense Counsel. In the conference, Defendant agreed to revisit its position. On December 22, 2020 counsel for Defendant indicated that it would make a "request" to its data providers to be released from its confidentiality obligations. *See* Exhibit 3, Email Correspondence between Defense Counsel and Plaintiff's Counsel.

On January 19 and 21, 2021, Plaintiff took two more depositions of Defendant's management, Director of Product Laura Mehrkens and Director of Strategy Rohn Ramon. As was the case in Nadine Thisselle's deposition, counsel for Defendant instructed the deponents

---

[1] *See* attached Exhibit 1, Defendant's Responses to Plaintiff's First Discovery Requests, Interrogatory Nos. 3 and 4 and Request for Production No. 2. Because Defendant cites its agreements with third parties as being the justification for not answering Plaintiff's discovery, it seems reasonable that it "relies" on the agreements in so answering—and so should have provided the documents pursuant to Plaintiff's Request for Production No. 2. Nonetheless, Plaintiff also specifically asked for the agreements in a separate discovery request on December 28, 2020. To date, no such agreements have been provided.

3

not to answer questions relating Whitepages' data providers.[2] Counsel for Defendant again reiterated that the data provider contracts prohibited such testimony. When asked about the status of the aforementioned "request" to the data providers, counsel for Defendant said it was "out of his hands" and that there was a possibility that the data providers would never provide their consent.

Subsequent to these depositions, the Plaintiff cancelled the deposition of Whitepages' Vice President of Engineering, Bradley James, previously scheduled for Friday January 29, 2021. Plaintiff canceled the deposition because she anticipates that Mr. James' testimony will delve extensively into the area of Whitepages' data providers, and she would rather take his deposition after this dispute is resolved. Additionally, Plaintiff plans to take a 30(b)(6) deposition in this matter, and would like to ask Whitepages directly whether it knows the sources of the data it obtains from third parties, what it does with that data, and whether that data includes, among other things, consent by the Plaintiff.[3]

The information sought by Plaintiff regarding the data providers is not only broadly relevant to her own case, but also to Defendant's defenses. Defendant's answer makes numerous affirmative defenses that relate to the nature of the data it obtains from third-parties:

- It claims immunity under the Communications Decency Act because it "aggregates publicly available information from numerous other sources of

---

[2] In addition to directly instructing the witnesses not to answer some questions, counsel for Defendant also "cautioned" the witnesses prior to answering multiple other questions that they not reveal confidential information.

[3] A copy of the 30(b)(6) notice detailing Plaintiff's proposed lines of inquiry can be found at as Exhibit 4 to this motion. Topics 5, 7, 9, 10, and 12 all contemplate testimony on the details of Whitepages' data providers.

4

      information and does not itself create or generate any information[.]" *See* Dkt. 59, Affirm. Def. No. 11.

- It argues immunity under IRPA and various Constitutional grounds, because its website is only republishing "publicly available" information. *See* Affirm. Def. Nos. 1, 2, 4, 6, and 25.

- It argues that Plaintiff might have provided her consent to third parties, and that those third parties could have somehow transferred that consent to Whitepages. *See* Def.'s Mot. to Strike, Dkt. 122, p. 3 ("And Lukis admitted that her Facebook records reveal that she shared her personal information with 4,033 companies online, any one of which might have been authorized by her to share the information with Whitepages for advertising purposes.")

The potential validity of each of these defenses turns on issues relating to how, when, why, and what Whitepages obtains from third party data providers.

      Because discovery into the data providers is unquestionably relevant, the sole issue is the operation of the alleged confidentiality provision in the contracts between Whitepages and those data providers. Plaintiff can only guess what contractual language Defendant is relying on to make its refusals, because Plaintiff has not been shown the agreements. However, it is routine for such agreements to make specific exception for compulsory legal processes (such as discovery in civil litigation), only requiring that the disclosing party arrange for a protective order. Here, there is already a protective order in place and Whitepages could easily disclose the agreements under the aegis of the order, as well as permit its witnesses to testify on that same basis. Whitepages refuses to do so.

Defendant's position is without precedent. "[T]hird party agreements cannot foreclose discovery." *Superior Graphite Co. v. Campos*, No. 19 C 5830, 2020 WL 5210841, at *6 (N.D. Ill. Sept. 1, 2020). The Seventh Circuit has specifically found that "[c]ontracts bind only the parties. No one can "agree" with someone else that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off." *Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009). "Indeed, we have stated more broadly that a person's desire for confidentiality is not honored in litigation…[a] litigants' preference for secrecy does not create a legal bar to disclosure." *Id*.

## Conclusion

While Plaintiff was willing to permit Defendant an attempt at obtaining consent from the other signatories to its data provider agreements, that no longer is a valid option. As counsel for Defendant himself admitted, there is a chance that the data providers may never give their consent. Thus, Plaintiff asks the Court to compel the disclosures. Specifically, Plaintiff requests that the Court: (1) issue an order requiring future Whitepages deponents to provide unfettered testimony, within their knowledge, on the subject of third-party data providers; (2) issue an order granting leave to Plaintiff to conduct a second deposition of Whitepages employee Rohn Ramon on the subject of Whitepages' third-party data providers; and (3) issue an order compelling Whitepages to provide complete copies of the agreement(s) it has with any third-party data provider(s), pursuant to Plaintiff's Request for Production No. 2, as well as an order requiring Defendant to supplement its responses to Plaintiff's Interrogatory Nos. 3 and 4.

*Respectfully submitted*:

/s/ Roberto Costales
Roberto Costales (#33696)
William H. Beaumont (#33005)
BEAUMONT COSTALES LLC
107 W. Van Buren Suite 209
Chicago, Illinois 60605
Tel: (773) 831-8000
*rlc@beaumontcostales.com*

*Attorneys for Plaintiff*

Rule 37.2 Certificate

Plaintiffs' counsel avers that it conducted a good faith discovery conference with counsel for Defendant on September 9, 2020 and also December 15, 2020, over the telephone. Plaintiffs' counsel further avers that it conducted a conference with counsel for Defendant in the course of a deposition taken in this matter on January 21, 2020. In all cases the parties to the conferences were Plaintiffs' counsel Roberto Costales and Defense Counsel Blaine Kimrey.

Date: January 28, 2021                                    /s/ Roberto Costales