**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STEPHANIE LUKIS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | No. 1:19-cv-04871 |
| v. | Judge Gary Feinerman |
| | Mag. Judge Jeffrey Gilbert |
| WHITEPAGES, INC., | |
| Defendant. | |

**WHITEPAGES, INC.'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS OR TRANSFER BASED ON ARBITRABILITY**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................ 1

II.    ARGUMENT .................................................................................................... 1

    A.    The arbitrator, not the Court, should decide whether Whitepages waived its right to arbitrate Lukis's claim .......................................................... 1

    B.    Whitepages did not waive its right to enforce its arbitration agreement ............... 4

        1.    Whitepages' Motion for Arbitration, filed seven day after its discovery of Mr. Costales's conduct, was not untimely ........................... 4

        2.    Lukis will not be prejudiced by proceeding with her claim in arbitration, as she agreed to do ................................................................. 9

    C.    Lukis is bound to Whitepages' Terms through her counsel's actions on her behalf and by her own conduct on Whitepages' Web site .................................... 9

        1.    Lukis admits that Mr. Costales was acting as her agent and does not dispute that Mr. Costales's actions in this litigation bound her ........... 9

        2.    Lukis accepted Whitepages' Terms by using Whitepages' Web site ...... 10

        3.    Lukis's claims against Whitepages arise out of and relate to her mother's acceptance of Whitepages' Terms ........................................... 13

    D.    This dispute is within the scope of Whitepages' arbitration agreement .............. 13

III.    CONCLUSION............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banc of Am. Sec. LLC v. Indep. Tube Corp.*,
    2010 WL 1780321 (N.D. Ill. May 4, 2010) ...................................................................4

*BG Group plc v. Republic of Arg.*,
    572 U.S. 25 (2014) .........................................................................................................2

*CMS Inv. Holdings, LLC v. Castle*,
    2016 WL 4557115 (S.D.N.Y. Aug. 31, 2016) ..............................................................3

*Cooper v. Asset Acceptance, LLC*,
    532 Fed. Appx. 639 (7th Cir. 2013) ..............................................................................2

*Dental USA, Inc. v. Beak & Bumper, LLC*,
    2014 WL 683709 (N.D. Ill. Feb. 21, 2014) ..................................................................2

*Ehleiter v. Grapetree Shores, Inc.*,
    482 F.3d 207 (3d Cir. 2007) ......................................................................................2, 4

*Gutierrez v. FriendFinder Networks, Inc.*,
    2019 WL 1974900 (N.D. Cal. May 3, 2019) ...............................................................13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ....................................................................................................3

*Hoenig v. Karl Knauz Motors, Inc.*,
    983 F. Supp. 2d 952 (N.D. Ill. 2013) ............................................................................6

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) .........................................................................................................2

*IBEW Local 2150 v. NextEra Energy Point Beach, LLC*,
    762 F.3d 592 (7th Cir. 2014) ......................................................................................15

*Indep. Living Res. Ctr. San Francisco v. Uber Techs, Inc.*,
    2019 WL 3430656 (N.D. Cal. July 30, 2019) .............................................................10

*Kawasaki Heavy Indus. Ltd. v. Bombardier Rec. Prods., Inc.*,
    660 F.3d 988 (7th Cir. 2011) .........................................................................................2

*Kendall Mfg. Co. v. Cooper Lighting, LLC*,
    354 F. Supp. 3d 877 (N.D. Ill. 2018) .....................................................................10, 14

*Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs.*,
    623 F.3d 476 (7th Cir. 2010) ...........................................................................2

*Marie v. Allied Home Mortg. Corp.*,
    402 F.3d 1 (1st Cir. 2005)............................................................................2, 4

*MB Fin., Inc. v. Hart*,
    2019 WL 316869 (N.D. Ill. Jan 24, 2019) .....................................................4

*Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*,
    328 F.3d 462 (8th Cir. 2003) ...........................................................................2

*Republic of Ecuador v. Chevron Corp.*,
    638 F.3d 384 (2d Cir. 2011)............................................................................3

*Sharif v. Wellness Int'l Network Ltd.*,
    376 F.3d 720 (7th Cir. 2004) ...........................................................................6

*Smith v. GC Servs. Ltd P'ship*,
    907 F.3d 495 (7th Cir. 2018) ...................................................................6, 7, 8

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv.*
    *Workers Int'l Union v. Trimas Corp.*,
    531 F.3d 531 (7th Cir. 2008) .........................................................................14

*ValuePart, Inc. v. Farquhar*,
    2014 WL 4923179 (N.D. Ill. Sept. 29, 2014) ...............................................14

*Vine v. PLS Fin. Servs., Inc.*,
    689 Fed. Appx. 800 (5th Cir. 2017).............................................................2, 4

**Statutes**

9 U.S.C. § 4......................................................................................................15

28 U.S.C. § 1404(a) .........................................................................................15

Illinois Right of Publicity Act,
    765 ILCS 1075/1, *et seq.*..........................................................................14, 15

## I.     INTRODUCTION

Lukis opposes Whitepages' Motion to Dismiss or Transfer Based on Arbitrability (ECF 90 (the "Motion for Arbitration") **on only one ground**: that Whitepages purportedly failed to timely assert its arbitraiton rights.  Thus, the only disputed issue is whether Whitepages waived its arbitration agreement by filing the Motion for Arbitration **within seven days** of learning that Lukis's lead counsel, Roberto Costales, accepted the Terms on Lukis's behalf.  Although that issue is properly for the arbitrator to decide, there was no waiver in this case, where Whitepages acted with remarkable speed upon discovering the necessary factual predicate for arbitration. Additionally, Lukis has forfeited and conceded numerous key issues related to Whitepages' Motion for Arbitration by failing to address them in her response, inlcuding that Lukis's counsel bound Lukis to the Terms while acting as her agent, that Lukis herself accepted the Terms through her use of Whitepages' Web site, and that her claims fall within the scope of Whitepages' arbitration provision (which is an issue for the arbitrator, anyway).  But even if those arugments were not forfeited and could be analyzed by the Court, each supports a finding that Lukis's claim is arbitrable (and she waived class relief) for the reasons set forth below.

## II.     ARGUMENT

### A.     The arbitrator, not the Court, should decide whether Whitepages waived its right to arbitrate Lukis's claim.

Lukis argues that "courts around the country have almost unanimously held that litigation conduct which forfeits the right to arbitration is an exception to [delegation] clauses" and should be decided by the Court, rather than the arbitrator.  (ECF 103 at 5.)  That assertion is incorrect in several respects.  Not only is there is a well-recognized Circuit split on this issue that the Seventh Circuit has never squarely addressed, but several of the cases cited by Lukis did not even analyze a delegation clause in the arbitration agreement and thus cannot support Lukis's gross over-

statement.  Based on the broad delegation clause in Whitepages' arbitration agreement, the issue

of waiver in this case is for the arbitrator to decide.

Despite seemingly clear directives from the Supreme Court, the law on this issue is

unsettled.  The Supreme Court has twice recently held that issues related to waiver of arbitration

are presumptively for the arbitrator to decide.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S.

79, 84-85 (2002) (holding that "'procedural' questions are presumptively *not* for the judge, but for

the arbitrator, to decide," including "waiver, delay, or a like defense to arbitrability"); *BG Group*

*plc v. Republic of Arg.*, 572 U.S. 25, 34-35 (2014) (reaffirming that claims of "waiver, delay, or a

like defense to arbitrability" are presumptively for the arbitrator).  Nevertheless, a Circuit split has

developed regarding whether waiver specifically through *litigation conduct* is presumptively for

the arbitrator.  *Compare Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 15 (1st Cir. 2005);

*Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 222 (3d Cir. 2007); *and Vine v. PLS Fin. Servs.,*

*Inc.*, 689 Fed. Appx. 800, 804 (5th Cir. 2017) (each holding that litigation conduct waiver was

properly decided by the court) *with Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*,

328 F.3d 462, 466 (8th Cir. 2003) (holding that litigation conduct waiver is for the arbitrator).  The

Seventh Circuit has not directly addressed this issue in light of *Howsam* and *BG Group* and has

provided inconsistent guidance regarding a waiver defense to arbitration.  The Seventh Circuit has

in one instance cited *Howsam's* holding that questions related to waiver are for the arbitrator, *see*

*Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs.*, 623 F.3d 476, 480 (7th Cir. 2010), and in

others performed the waiver analysis itself without mentioning *Howsam. See Kawasaki Heavy*

*Indus. Ltd. v. Bombardier Rec. Prods., Inc.*, 660 F.3d 988, 993-98 (7th Cir. 2011); *Cooper v. Asset*

*Acceptance, LLC*, 532 Fed. Appx. 639, 641-42 (7th Cir. 2013).  Courts in this district have also

struggled with the issue.  *See, e.g., Dental USA, Inc. v. Beak & Bumper, LLC*, 2014 WL 683709,

at *4 n.6 (N.D. Ill. Feb. 21, 2014) (noting the Seventh Circuit's silence on this circuit split).

But even if the question of litigation conduct waiver is *presumptively* for the Court, the parties may delegate waiver issues to the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019) ("when the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision"). Whitepages' arbitration provision delegates to the arbitrator all threshold issues of arbitrability. It provides:

> THE ARBITRATOR WILL DECIDE ALL THRESHOLD QUESTIONS INCLUDING BUT NOT LIMITED TO, ISSUES RELATING TO THE ENFORCEABILITY, REVOCABILITY, OR VALIDITY OF THIS SECTION 12.10 AND WHETHER EITHER PARTY LACKS STANDING TO ASSERT THEIR CLAIMS

(ECF 90-1 at Ex. 1 § 12.10 (the "Terms").) This broad delegation clause clearly and unmistakably includes questions as to litigation conduct waiver. For example, in *CMS Inv. Holdings, LLC v. Castle*, 2016 WL 4557115, at *5-6 (S.D.N.Y. Aug. 31, 2016), the parties' arbitration agreement incorporated a JAMS arbitration rule that gave the arbitrator authority to decide disputes concerning the "validity" of the arbitration agreement. The court held that "an objection to arbitrate on waiver grounds goes 'to the validity of the arbitration agreement'" and thus "the parties clearly and unmistakably submitted to the arbitrator's authority the question of whether [plaintiff] waived its right to arbitrate by engaging in prior litigation." *Id.* at *6 (citing *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384 (2d Cir. 2011) (which held that delegation of disputes over the "validity" of the agreement reserved for the arbitrator disputes concerning waiver by conduct in a separate litigation). Likewise, here, Whitepages' Terms delegate to the arbitrator all issues related to the "enforceability, revocability, *or validity*" of the agreement. (Terms at § 12.10.) Regardless of whether the Court should "presumptively" decide issues related to litigation conduct waiver, the parties' clear delegation of that issue to the arbitrator rebuts and negates that presumption.

For those reasons, the authority cited by Lukis is inapposite. Neither of the two Northern

District of Illinois cases analyzed an agreement with a delegation clause. *See MB Fin., Inc. v. Hart*, 2019 WL 316869, at *3 (N.D. Ill. Jan 24, 2019); *Banc of Am. Sec. LLC v. Indep. Tube Corp.*, 2010 WL 1780321, at *6 (N.D. Ill. May 4, 2010). They do not apply here, where Whitepages and Lukis agreed to delegate to the arbitrator "*all* threshold questions," which include without limitation "issues relating to the enforceability, revocability, or validity" of the arbitration provision. (Terms at § 12.10 (emphasis added).) That provision also is distinguishable from the delegation clauses in *Marie*, 402 F.3d at 14-15 (an agreement delegating only "disagreements concerning the interpretation or application" of the arbitration agreement, including "the arbitrability" of a claim, which did not include waiver issues), *Ehleiter*, 482 F.3d at 221-22 (delegation of "the issue of arbitrability of any claim" did not include waiver), and *Vine*, 689 Fed. Appx. at 804 (holding that arbitration of "any claim or attempt to set aside this Arbitration Provision" did not encompass waiver). Each of those agreements entailed narrower delegation clauses not analogous here.

As described further *infra*, Section II.B, Whitepages did not waive its right to arbitrate by seeking to enforce its Terms seven days after discovering that Lukis's claim was arbitrable. But regardless, the issue is for the arbitrator, not the Court, to decide.

**B.     Whitepages did not waive its right to enforce its arbitration agreement.**

**1.     Whitepages' Motion for Arbitration, filed seven day after its discovery of Mr. Costales's conduct, was not untimely.**

Even if the Court were allowed to decide the waiver issue, Whitepages acted diligently and expeditiously in asserting its arbitration rights. The relevant period of purported delay is the seven days between October 20, 2020, when Whitepages' first discovered the full scope of Mr. Costales's activity on Whitepages.com, and October 27, 2020, when Whitepages filed its Motion for Arbitration on October 27, 2020. (ECF 90 at 3-5.) Seven days, during which there was *no* activity

in this case, is plainly insufficient to constitute conduct inconsistent with a desire to arbitrate.

Lukis argues that the relevant period for the waiver analysis is the three-month period from July 23, 2020, when Mr. Costales filed his declaration (ECF 77-1 (the "Costales Declaration")), to October 27, 2020, when Whitepages filed its Motion for Arbitration. (ECF 103 at 2.) That argument fails because the Costales Declaration is vague and ambiguous as to what Mr. Costales did on Whitepages.com.[1] Besides proclaiming that he "interacted with" and "comprehensive[ly] reviewed" Whitepages' Web site, Mr. Costales provides no factual detail about what he did. That ambiguity was perpetuated by Mr. Costales's citation to *only* the information about Whitepages.com contained in the screenshots produced by Whitepages. (*See* ECF 77-1 at ¶¶ 5-6 (citing exclusively to the Whitepages' production for each paragraph analyzing the information behind the paywall)). Thus, Lukis's argument that Whitepages should have known the extent of Mr. Costales's conduct because "the declaration describes information only available behind the paywall" badly mischaracterizes the Costales Declaration. (ECF 103 at 2.) The most sensible reading of those Paragraphs is that Mr. Costales did *not* go past the paywall, but instead relied on Whitepages' production to inform his declaration. The Costales Declaration is insufficient to have put Whitepages on notice of a duty to search for information related to Mr. Costales's actions.

Further, even assuming Whitepages *could* have discovered on July 23, 2020, that Lukis's claims were potentially arbitrable, Whitepages' litigation conduct between then and the filing of its Motion for Arbitration was not sufficient to waive its right to enforce the arbitration agreement. Whitepages took no action during that time except to file its reply in support of its motion for summary judgment according to the Court-ordered briefing schedule (ECF 79-80), issue written

---

[1] As explained in Whitepages' Opposition to Lukis's Motion for Leave to Amend, the Costales Declaration was seemingly drafted to conceal the full extent of his activity. (ECF 125 at 10-11.)

discovery requests as ordered by the Court over Whitepages' frequent objections, and jointly move for the entry of an agreed protective order to govern that discovery. (ECF 84.) That conduct is simply insufficient to constitute a blanket waiver of Whitepages' right to enforce an agreement to arbitrate. *See Hoenig v. Karl Knauz Motors, Inc.*, 983 F. Supp. 2d 952, 965 (N.D. Ill. 2013) (holding that a three-month delay in seeking to compel arbitration, during which the defendant filed an initial answer that did not invoke arbitration, issued a Rule 68 offer of judgment, participated in the filing of a joint status report, and participated in initial discovery, did not waive the right to arbitrate); *see also Sharif v. Wellness Int'l Network Ltd.*, 376 F.3d 720, 727 (7th Cir. 2004) (holding that eighteen month-delay in bringing motion to compel arbitration, during which the defendant filed four motions to dismiss, did not waive arbitration).[2]

Cuing off of the Court's reference to *Smith v. GC Servs. Ltd P'ship*, 907 F.3d 495 (7th Cir. 2018) during the November 3, 2020 hearing (Ex. A at 18:16-21), Lukis relies exclusively on that decision to argue that Whitepages waived its right to enforce its arbitration agreement. *Smith* is inapplicable here and in fact illustrates why Whitepages should not be found to have waived arbitrability. In *Smith* the defendant was a "sophisticated debt collection agency" hired by Synchrony Bank to collect an outstanding credit card balance. *Smith*, 907 F.3d at 497, 500. The defendant did not assert any arbitrability defense for eight months after the suit was filed and then waited *another five months* after first raising the issue before filing its motion to compel arbitration. *Id.* at 497, 500 (finding that defendant sent a letter to the plaintiff notifying her of the arbitration agreement on March 10, 2017, but did not file a motion to compel arbitration until August 7, 2017). That egregious timeline alone is sufficient to distinguish Whitepages' conduct in this case.

Additionally, despite regularly seeking to enforce card agreements on behalf of financial

---

[2] Neither party argued in *Hoenig* or *Sharif* that the waiver issue should be decided by the arbitrator.

-6-

institutions, the defendant in *Smith* argued that it did not initially raise arbitrability because it did not have a copy of the credit card agreement containing the arbitration provision from Synchrony Bank. *Id.* at 500. The court found that argument implausible based on the defendant's experience with debt collection, particularly because "credit card agreements routinely include arbitration agreements" and are "commonplace." *Id.* The court further held that, even ignoring the initial eight-month delay, the defendant's inaction for another five months after purportedly discovering the arbitration agreement was inexcusable. *Id.* During that time the defendant filed an answer that did not raise arbitrability as a defense and failed to supplement the briefing on the pending motions to dismiss and for class certification to assert arbitrability.[3] *Id.* Thus, the defendant's collective conduct over those 13 months was "manifestly inconsistent with an intention to arbitrate." *Id.*

Here, Whitepages always recognized that its Terms contained an arbitration provision and timely asserted arbitrability as an affirmative defense in its Amended Answer on June 3, 2020. (ECF 59.) At that time, Whitepages had no evidence that Lukis had visited Whitepages.com, and her counsel had not yet gone beyond the pay wall. As soon as Whitepages learned the extent of Mr. Costales's actions, it moved to compel arbitration within *seven days* of that discovery. Whitepages' actions bear no similarities to the defendant's dilatory conduct in *Smith*.

Next, Lukis misconstrues Whitepages' objections to Lukis's discovery requests as evidence Whitepages was "on notice" of Mr. Costales's conduct. In the referenced discovery, Lukis asked Whitepages to describe and produce "copies" or "exemplars" of Whitepages' publicly

---

[3] To be sure, Whitepages' also had several motions pending when it discovered Lukis's claims were arbitrable. (*See* ECF 40, 43, and 61.) But as Whitepages explained in its Motion for Arbitration, Whitepages was set to request that the Court enter and continue those motions when Whitepages moved regarding arbitration. By sheer coincidence, the Court issued its ruling on Whitepages' Motion for Summary Judgment literally minutes before Whitepages filed its motion. (ECF 90 at 2 n.1.) That unfortunate timing is not a basis to assign undue delay to Whitepages.

available Web site.[4]  (ECF 103-2 at ROG 7, RFPs 8-10.)  The requests simply do not make sense, and Whitepages properly asserted numerous objections related to their vagueness, ambiguity, relevance, burden, and disproportionality to the factual issues in this case.  Whitepages also objected to producing arbitrary "copies" or "exemplars" of its Web site because those pages are "publicly available and equally available to Plaintiff."  (*Id.*)  To further explain that objection, Whitepages cited Mr. Costales's purported interaction with the site as an example of Lukis's ability to access the requested information.  Whitepages' objections are in no way evidence that Whitepages should have known that Mr. Costales purchased several products from Whitepages.

Lukis similarly argues that Whitepages' discovery requests related to the scope of Lukis's use of Whitepages.com are evidence that Whitepages was "well-aware" that Mr. Costales went beyond the paywall.  (ECF 103 at 3-4.)  Claiming it inconceivable that Whitepages had the "presence of mind" to seek discovery about a potential defense, Lukis argues that Whitepages must have "willfully delayed making its arbitrability motion."  (*Id.* at 4.)  This argument is nonsensical, as the very purpose of discovery is to learn facts that are not already known to the propounding party.  Indeed, Whitepages also had the "presence of mind" to assert an affirmative defense related to arbitrability as early as June 3, 2020, because Whitepages was aware of this potential legal issue, not because Whitepages knew the full extent of Lukis's or her counsel's use of Whitepages.com.

Whitepages' conduct was not "inconsistent[] with the right to arbitrate."  *Smith*, 907 F.3d at 499.  Lukis's argument rests on an unsupported theory that Whitepages had an ongoing duty to

---

[4] Lukis attached the incorrect version of Whitepages' discovery responses to its Opposition.  (ECF 103-2.)  In response to the parties' September 9, 2020 telephonic meet-and-confer about Lukis's discovery requests, Whitepages supplemented its discovery responses on September 16, 2020, to resolve certain issues raised by Lukis's counsel during that conference.  Lukis never conferred with Whitepages about Requests for Production 8-10, nor did Lukis seek any relief from the Court related to Whitepages' objections to Interrogatory 7, which Lukis now inappropriately and pejoratively mischaracterizes as attempts to "evade discovery."  (ECF 103 at 3.)

search its records for conduct by an agent of Lukis and immediately move to compel arbitration upon a relevant discovery. The law imposes no such obligation and, given the circumstances and timeline described above, Whitepages' Motion for Arbitration was filed remarkably quickly.

> **2. Lukis will not be prejudiced by proceeding with her claim in arbitration, as she agreed to do.**

Although prejudice is not required for a finding of waiver, Lukis asserts that she will be prejudiced by the enforcement of her arbitration agreement because she previously prevailed on Whitepages' motion to dismiss and its early motion for summary judgment. (ECF 103 at 5.) Lukis misconstrues the Court's prior rulings. In denying Whitepages' motion to dismiss, the Court merely held under Rule 12 that Lukis had adequately stated a claim. That ruling did not decide any legal issues related to this case or forecast Lukis's success on the merits, as Lukis now seems to believe. (*See* ECF 37 at 19-23 (repeatedly limiting the holding to the pleadings and the early stage of litigation).) Likewise, Whitepages' early motion for summary judgment was filed on substantially the same record, with the only addition being Lukis's background report. (ECF 88 at 2.) The Court carefully limited its ruling to "the summary judgment record," which at that time did not have the benefit of any discovery or the testimony that has since come to light. (*See, e.g.*, ECF 88 at 7, 12, 15, 17.) Far from constituting "victories on pivotal legal issues," as Lukis asserts (ECF 103 at 5), those rulings are limited to an analysis of Lukis's pleadings. Lukis will suffer no prejudice from an arbitrator evaluating for the first time how a *full* factual record affects her claim.

> **C. Lukis is bound to Whitepages' Terms through her counsel's actions on her behalf and by her own conduct on Whitepages' Web site.**

> **1. Lukis admits that Mr. Costales was acting as her agent and does not dispute that Mr. Costales's actions in this litigation bound her.**

Whitepages moved on arbitrability as soon as it discovered that Mr. Costales, acting as Lukis's agent, bound Lukis to Whitepages Terms. (ECF 90 at 9-11.) Since then, both Lukis's

counsel and the Court have acknowledged that the factual aspects of the agency issue are undisputed.  During the December 10, 2020 hearing on Lukis's motion for a protective order related to the deposition of Mr. Costales, Mr. Costales noted, "We do admit that on July 21st, 2020, plaintiff's counsel agreed to the terms of use produced by Whitepages in the process of opposing defendant's motion for summary judgment."  (Ex. B at 12:19-23.)  Likewise, the Court stated:

> I don't think that there are any open or disputed factual questions that the defendant needs to obtain in a deposition from Mr. Costales that pertains to the agency issue that the defendant raised in its motion to compel arbitration.  Even if Mr. Costales hadn't admitted that he went beyond the pay wall for purposes of this case, I think it's pretty clear from the chronology that that's exactly what happened.  As to the legal significance of that, I don't know what the legal significance of that is.  But in terms of the facts, I think the facts are pretty clear.

(*Id.* 15:22-16:8.) ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████  There is no factual dispute that Mr. Costales, in his capacity as agent for Lukis, accepted Whitepages' Terms.

As to the legal significance of that conduct, Lukis does not dispute in her response to the Motion for Arbitration that Mr. Costales, as her agent, bound her to Whitepages' Terms.  *See Indep. Living Res. Ctr. San Francisco v. Uber Techs, Inc.,* 2019 WL 3430656, at *4 (N.D. Cal. July 30, 2019).  Because Lukis does not respond to this argument or address the agency issue, she has forfeited it.  *See Kendall Mfg. Co. v. Cooper Lighting, LLC*, 354 F. Supp. 3d 877, 883 (N.D. Ill. 2018) (Feinerman, J.) (collecting cases).  Accordingly, Mr. Costales agreed on Lukis's behalf to arbitrate Lukis's claims on an individual basis and the Motion for Arbitration should be granted.

### 2.    Lukis accepted Whitepages' Terms by using Whitepages' Web site.

In addition to the agency issue, Whitepages learned through discovery after filing its

Motion for Arbitration that Lukis also agreed to Whitepages' Terms through her own conduct.[5]

Unfortunately, Lukis's written discovery responses and deposition testimony on this issue have

been brutally inconsistent and often false, frustrating Whitepages' ability to determine the full

extent of her interactions with Whitepages.com.  (*See* ECF 122 at 11-12.)

---

[5] In anticipation of discovering these facts, Whitepages noted in its Motion for Arbitration that it
may raise arguments related to Lukis's own conduct at the appropriate time.  (ECF 90 at 9 n.5.)

████████████████████████████████████████████████

Lukis's testimony is facially incredible. ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████

In light of the foregoing, Lukis has knowingly agreed to be bound by Whitepages' Terms.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████        ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ *See*

*Gutierrez v. FriendFinder Networks, Inc.*, 2019 WL 1974900, at *7 (N.D. Cal. May 3, 2019)

(granting motion to compel arbitration on browsewrap terms based on the plaintiff's "inquiry

notice" of the terms, even though he had never read the terms).

**3.** ████████████████████████████████████ ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████ ████████████████████████████████████ ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

**D.  This dispute is within the scope of Whitepages' arbitration agreement.**

Lukis does not contend that her claim is outside the scope of Whitepages' arbitration

agreement.  (*See generally* ECF 103.)  By failing to raise that argument, Lukis has forfeited it, and

the Court should not consider scope as a basis to deny Whitepages' Motion for Arbitration.  *See*

*Kendall Mfg. Co.*, 354 F. Supp. 3d at 883. However, despite Lukis's forfeiture, Whitepages will address the scope issue because the Court raised it *sua sponte* during a recent hearing. (Ex. B, Dec. 10, 2020 Trans. at 16:15:17:8.) By doing so, Whitepages does not waive its primary argument that scope is for the arbitrator, not the Court, to decide. (ECF 90 at 12.)

The scope of arbitrable disputes as set forth in Whitepages' Terms is as follows:

ANY DISPUTE, CLAIM OR CONTROVERSY BETWEEN YOU AND WHITEPAGES RELATING IN ANY WAY TO THIS AGREEMENT OR YOUR ACCESS TO OR USE OF THE SERVICES OR CONTENT, WHETHER BASED IN CONTRACT, STATUTE, REGULATION, ORDINANCE, TORT (INCLUDING, WITHOUT LIMITATION, FRAUD, MISREPRESENTATION, FRAUDULENT INDUCEMENT, OR NEGLIGENCE), OR ANY OTHER LEGAL OR EQUITABLE THEORY ("DISPUTE").

(Terms § 12.10.) Thus, there are two categories of arbitrable disputes: (1) disputes relating in any way to Whitepages' Terms; and (2) disputes relating in any way to the access to or use of Whitepages' services or content. Whitepages' arbitration provision is "extremely broad." *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Trimas Corp.*, 531 F.3d 531, 536-37 (7th Cir. 2008) (provision encompassing "any alleged violation or dispute involving the terms" was "extremely broad"); *ValuePart, Inc. v. Farquhar*, 2014 WL 4923179, at *7 (N.D. Ill. Sept. 29, 2014) (each of the phrases "in respect of," "arising out of," and "relating to" are extremely broad). The provision also includes all statutory claims, necessarily including the Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq.* ("IRPA").

Lukis's claim fits both categories of arbitrable disputes. First, Lukis's claim relates to Whitepages' Terms, which together with the Privacy Policy (incorporated into the Terms) govern the use of Whitepages' Web site and the information available through it. For instance, the Terms provide that Whitepages "may provide publicly available sources of information aggregated for your convenience, including but not limited to, court, voter registration, property and license

records" that is "made available to you through the Services and is provided for information purposes only." (Terms at § 4.2.) That provision goes directly to the heart of Lukis's claim under IRPA related to the publication of her publicly available information. Further, the Terms provide that Whitepages may make advertisements available on its Web site, which relates to the alleged use of Lukis's "identity" for advertising purposes under IRPA. (Terms at § 7.1.) And the Terms provide a clear opt-out policy that Lukis could have availed herself of to ensure that her information was no longer available via Whitepages' site. (Terms at § 9.)

Second, Lukis's claim relates to the use of Whitepages' services. The fundamental allegation in the Complaint is that Whitepages used Lukis's identity to advertise its services.



That claim relates directly to the access and use of Whitepages' services and is within the scope of the arbitration provision.[6]

## III.  CONCLUSION

The Court—consistently with and pursuant to 9 U.S.C. § 4— should dismiss Lukis's complaint based on *forum non conveniens* or, in the alternative, transfer this matter to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a).

---

[6] To the extent there is ambiguity in Whitepages' Terms, it is resolved in favor of arbitration. *IBEW Local 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014).

Dated:  January 29, 2021                Respectfully submitted,

                                            WHITEPAGES, INC.

                                            By:    */s/ Blaine C. Kimrey*
                                                  One of its attorneys

Blaine C. Kimrey – bkimrey@vedderprice.com
Jonathon P. Reinisch – jreinisch@vedderprice.com
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 29, 2021, a copy of the foregoing was electronically filed in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system.

*/s/ Blaine C. Kimrey*
Blaine C. Kimrey