**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STEPHANIE LUKIS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | No. 1:19-cv-04871 |
| v. | Judge Gary Feinerman |
| | Mag. Judge Jeffrey Gilbert |
| WHITEPAGES, INC., | |
| Defendant. | |

**WHITEPAGES, INC.'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO COMPEL**

## TABLE OF CONTENTS

**Page**

I.     Introduction..................................................................................................... 1

II.    Factual and procedural background ................................................................. 2

III.   Argument ........................................................................................................ 3

      A.     Lukis should search all devices and sources of data identified in her deposition for documents responsive to Whitepages' discovery requests or, alternatively, make those devices and sources available for imaging and searching ................................................................................. 3

      B.     Lukis should produce the responsive documents identified in her deposition .................................................................................. 5

      C.     Lukis should search for, and produce, additional documents evidencing her access to Whitepages' Web site...................................... 6

      D.     Lukis should produce an unredacted copy of the engagement letter with her counsel ................................................................................. 8

      E.     Lukis should be required to sit for another deposition session to address the documents that have not yet been produced, as well as topics that were subject to improper instructions not to answer ....................................... 9

      F.     Lukis should be required to provide a privilege log .......................................... 10

      G.    The Court should grant Whitepages its expenses in filing this Motion ............... 11

IV.   Conclusion ..................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Properties Co. v. Tomar Electronics*,
  2006 WL 2670038 (D. Minn. Sept. 18, 2006)............................................................................4

*Baxter International, Inc. v. Becton, Dickinson and Company*,
  2020 WL 424918 (N.D. Ill. Jan. 27, 2020)................................................................................8

*In re Caesars Entertainment Operating Co., Inc.*,
  2018 WL 2431636 (N.D. Ill. Bankr. May 29, 2018) ...............................................................10

*Carter v. Janssen*,
  2011 WL 5181993 (E.D. Wis. Oct. 31, 2011) .........................................................................10

*In re Discovery Zone Securities Litigation*,
  169 F.R.D. 104 (N.D. Ill. Sept. 27, 1996)................................................................................9

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
  2021 WL 185082 (N.D. Ill. Jan. 19, 2021)...............................................................................3

*ED&F Capital Markets Ltd. v. JVMC Holdings Corp.*,
  335 F.R.D. 174 (N.D. Ill. 2020)..............................................................................................11

*Fautek v. Montgomery Ward & Co.*,
  96 F.R.D. 141 (N.D. Ill. 1982).................................................................................................4

*Federal Trade Commission v. Vylah Tec LLC*,
  2018 WL 7364589 (M.D. Fla. Nov 26, 2018) .........................................................................10

*Hobley v. Burge*,
  433 F.3d 946 (7th Cir. 2006) ...................................................................................................10

*Jump v. Montgomery County*,
  2015 WL 5854101 (C.D. Ill. Oct. 6, 2015)..............................................................................10

*Marsch v. Rui Feng*,
  2013 WL 3204193 (S.D.N.Y. 2013).........................................................................................9

*In re Ocean Bank*,
  2007 WL 1063042 (N.D. Ill. April 9, 2007).............................................................................9

*Plump v. Kraft Foods North America, Inc.*,
  2003 WL 22299019 (N.D. Ill. Oct. 6, 2003).............................................................................9

*Rickels v. City of South Bend, Ind.*,
    33 F.3d 785 (7th Cir. 1994) ......................................................................................11

*Schachar v. American Academy of Ophthalmology, Inc.*,
    106 F.R.D. 187 (N.D. Ill. 1985)..................................................................................8

*Schumacher v. J.V. Pro, Inc.*,
    2004 WL 1157851 (N.D. Ill. May 24, 2004)..............................................................4

*United States Securities and Exchange Commission v. Hollnagel*,
    2010 WL 11586980 (N.D. Ill. Jan. 22, 2010).............................................................8

*Whiteamire Clinic, P.A., Inc. v. Quill Corp.*,
    2013 WL 5348377 (N.D. Ill. Sept. 24, 2013) .............................................................5

**Other Authorities**

Fed. R. Civ. P. 11...........................................................................................................3

Fed. R. Civ. P. 23...........................................................................................................9

Fed. R. Civ. P. 26(b)(5)................................................................................................10

Fed. R. Civ. P. 37(a)(5)............................................................................................11, 12

N.D. Ill. Local Rule 37.2..............................................................................................12

## I.     Introduction

Despite the fact that plaintiff Stephanie Lukis has had the written discovery requests from defendant Whitepages, Inc. ("Whitepages") since October 9, 2020, Lukis has failed to provide adequate responses, produce all relevant and responsive documents, or even conduct a reasonable search for information and documents.  To be clear, Whitepages' position is that discovery should not proceed at all in this forum on Lukis's claim because it is subject to arbitration/class waiver (*see* ECF 89-90) and Lukis is an inadequate class representative who should be struck.  (ECF 119, 122).[1]  This Motion should not be construed as waiving any of those arguments. But in the alternative, and in case the Court grants Lukis's motion to extend the discovery period, Whitepages files this motion to compel.

Lukis's deposition testimony revealed that she made no effort whatsoever to search for any responsive documents until nearly three months after having received the discovery requests (and three days before her first deposition session) — and even then, she only attempted to download her Facebook, LinkedIn, and Twitter accounts for production.  *See* Declaration of Blaine C. Kimrey, attached as **Exhibit 1** ("Kimrey Decl."), at Exh. A ("Lukis Dep."), 25:1-26:24.  In fact, Lukis has not searched for any documents related to Whitepages (Lukis Dep. 246:10-15), nor has she searched for any responsive documents other than her Facebook, LinkedIn, and Twitter social media data.  *See* Kimrey Decl., at Exh. B ("Second Lukis Dep."), 495:8-19.  Moreover, Lukis's two deposition sessions revealed numerous documents and sources of information that should have been searched and/or produced, but were not.  In short, Lukis's discovery responses and production are woefully inadequate, and as set forth in greater detail below, the Court (if it allows Lukis to

---

[1] Notably, Lukis has moved to extend the discovery cutoff in this matter, which passed on February 1, 2021.  (ECF 128).  Whitepages will oppose Lukis's motion.

proceed with her claim in federal court, which it shouldn't) should compel Lukis to supplement her discovery responses, produce additional documents, produce a privilege log, and make herself available for another deposition session. The Court also should award Whitepages its expenses, including attorney's fees, in bringing this motion.

## II.      Factual and procedural background

On October 9, 2020, Whitepages served Lukis with interrogatories, requests for production, and requests for admissions. (Kimrey Decl., ¶ 4). On December 10, 2020, Lukis provided written responses, but produced no documents whatsoever. (Kimrey Decl., ¶ 5). On December 15, 2020, Whitepages' counsel sent a letter to Lukis's counsel, outlining the numerous problems with Lukis's responses. (Kimrey Decl., ¶ 6). On December 22, 2020, the parties held a ***three-hour*** meet and confer discussion, in which it was clear that Lukis's counsel had not adequately considered or prepared to discuss the problems raised. (Kimrey Decl., ¶ 7). Whitepages' counsel summarized that discussion in a letter dated December 23, 2020. (Kimrey Decl., ¶ 8).

Despite these letters and the three-hour meet and confer conversation, Lukis still did not supplement her responses or produce ***any*** documents until after 4:00 p.m. Central on January 4, 2021, the day before Lukis's deposition was set to proceed. (Kimrey Decl., ¶ 9). And the production at that time consisted solely of her data from Facebook and LinkedIn. (Kimrey Decl., ¶ 10).[2] The supplemental responses failed to adequately address the problems with Lukis's discovery responses, and Lukis's deposition on January 5, 2021, revealed numerous additional

---

[2] The documents received at that time included hundreds of fully redacted pages, without explanation. (Kimrey Decl., ¶ 10). Lukis later provided a small production of her Twitter profile. (Kimrey Decl., ¶ 11). In total, Whitepages entered 47 exhibits comprising 2,701 pages in Lukis's two deposition sessions, largely based on Whitepages' independent research. (Kimrey Decl., ¶ 12). In the interest of not burdening the Court with this volume of exhibits, those are not included with this filing, but any and all exhibits can be made available to the Court upon request.

problems, as discussed in greater detail below.  And during the January 5, 2021 deposition session,

Lukis's counsel made numerous improper objections and instructions not to answer, which Lukis

followed.   (Lukis Dep. 21:1-18; 22:1-23:14; 26:23-27:12; 38:10:13; 39:6-15; 40:8-15; 41:21-

42:23; 43:9-44:4; 44:22-45:18; 46:17-47:6; 47:9-48:17; 48:19-49:20; 50:17-51:2; 53:14-54:8;

55:1-20; 55:21-56:9; 56:10-57:5; 57:6-18; 122:17-123:20; 124:20-125:15; 125:16-24; 126:1-24;

127:19-128:5; 162:11-20; 164:8-165:14; 166:4-21).

On January 11, 2021, Whitepages' counsel sent another meet and confer letter (which also

addressed Whitepages' Rule 11 concerns).  (Kimrey Decl., ¶ 13).  As of the date of this Motion,

Lukis has not responded to this letter.  (Kimrey Decl., ¶ 14).

On January 13, 2021, Lukis's deposition continued and additional discovery problems were

identified.  On January 13, 2021, Whitepages' counsel sent an email to Lukis's counsel, following

up on certain discovery issues.  (Kimrey Decl., ¶ 15).   On January 14, 2021, having received no

response, Whitepages' counsel sent another email to Lukis's counsel.  (Kimrey Decl., ¶ 16).  On

January 18, 2021, Lukis's counsel responded, refusing to provide any additional information.

(Kimrey Decl., ¶ 17).

III.    **Argument**

      **A.**      **Lukis should search all devices and sources of data identified in her deposition for documents responsive to Whitepages' discovery requests or, alternatively, make those devices and sources available for imaging and searching.**

Lukis's deposition testimony made clear that she has failed to engage in even the most

basic efforts to search for and produce documents responsive to Whitepages' discovery requests

— her *entire* document collection effort consisted of requesting data from Facebook, LinkedIn

and Twitter *three days* before her deposition started.  (Lukis Dep. 26:12-14; 27:17-28:10; 108:4-

13; 246:10-15; Second Lukis Dep. 395:22-396:7; 408:12-14).  *See DR Distributors, LLC v. 21*

*Century Smoking, Inc.,* 2021 WL 185082, \*7 (N.D. Ill. Jan. 19, 2021) (imposing sanctions on defendants for failing to adequately search for responsive ESI and holding that "[t]he Court does not demand that level of expertise, but it certainly expects — and the rules require — a reasonable understanding of ESI and the law relating to identifying, preserving, collecting, and producing ESI, in addition to good faith compliance by the parties and counsel"); *Schumacher v. J.V. Pro, Inc.*, 2004 WL 1157851, \*4 (N.D. Ill. May 24, 2004) ("Defendants are obligated under the Federal Rules of Civil Procedure to make a reasonable search for the documents.").

A diligent search is particularly important because Lukis objected that Interrogatories 1-7 and 10 were "overbroad and unduly burdensome" simply because Lukis ***cannot recall*** some or all of the responsive information. Lukis can't rely on her faulty memory to avoid responding to discovery — she has an obligation to conduct a reasonable investigation before responding. *See Fautek v. Montgomery Ward & Co.,* 96 F.R.D. 141, 145 (N.D. Ill. 1982) ("[The Rules of Civil Procedure] require[ ] that parties take reasonable steps to ensure that their responses to requests to produce are complete and accurate."); *3M Innovative Properties Co. v. Tomar Electronics,* 2006 WL 2670038, \*6 (D. Minn. Sept. 18, 2006) ("In light of the Supreme Court's directive that discovery under the federal rules requires a complete disclosure of relevant facts known to the parties, parties are under a duty to complete a reasonable investigation when presented with the opposing party's interrogatories and document requests.").

Lukis identified the following devices and accounts during her deposition that she has ***not*** searched for responsive documents:

- Her LG Stylo 5 cell phone (Lukis Dep. 19:15-18)

- Her Samsung Galaxy cell phone data stored to the cloud in her Google Drive account (Lukis Dep. 19:19-20:7)

- Her autumnsilver@gmail.com, stephanie.lukis@gmail.com, and smlukis@gmail.com email accounts (Lukis Dep. 20:9-14)

-4-

- Her Dell Inspiron 3584 computer (Lukis Dep. 23:15-25:15)

- Her HP desktop computer (Lukis Dep. 26:15-17)

- The hard drive from her Dell desktop computer (Lukis Dep. 106:2-107:19)

- Her Facebook Messenger account (Lukis Dep. 191:1-4)

- All devices used to log in to her Facebook account (Second Lukis Dep. 495:8-19)

Given Lukis's egregious failure to search for responsive documents, the Court should order Lukis to search for and produce any responsive documents from these sources or, alternatively, make available to Whitepages forensic images of these devices and accounts. *See Whiteamire Clinic, P.A., Inc. v. Quill Corp.*, 2013 WL 5348377, *6 (N.D. Ill. Sept. 24, 2013) (compiling cases in which courts order production of hard drive images).

**B.      Lukis should produce the responsive documents identified in her deposition.**

In addition to identifying sources of data that she had not searched, Lukis identified numerous responsive documents in her deposition testimony that should be produced.  The Court should order the production of the following documents:

- The Craigslist ad (or ads) soliciting her to participate as a plaintiff in this litigation and any related email communications  (Lukis Dep. 45:24-46:14)

- Any documents related to her use of CreditKarma.com, Experian, Equifax, and/or TransUnion  (Lukis Dep. 62:1-67:21)

- Her cell phone contracts with TMobile and Sprint (Lukis Dep. 102:17-23; 105:2-16)

- Any documents related to her applications to work at Whole Foods, Amazon, McCormick & Schmick's, and Homeliving  (Lukis Dep. 134:12-136:1)

- Her Craigslist account history and profile  (Lukis Dep. 193:16-19)

- Her eBay account history and profile  (Lukis Dep. 193:20-194:4)

- Her Amazon account history and profile  (Lukis Dep. 194:5-12)

- Her Uber account history and profile  (Lukis Dep. 194:23-195:6)

- Her MySpace account history and profile  (Lukis Dep. 196:9-14)

- Her YouTube account history and profile  (Lukis Dep. 198:2-7)

- Her Google account history and profile  (Lukis Dep. 202:17-20)

- Her Google+ account history and profile (Lukis Dep. 90:17-21)

- Her FamilyTreeNow.com history and profile (Lukis Dep. 179:22-23)

- The privacy settings on all relevant Web sites (Lukis Dep. 170:7-12)

- Her browser history reflecting visits to Whitepages.com (Lukis Dep. 94:10-24)

All of these documents are relevant and proportional to the needs of the case and responsive to Whitepages' discovery request.  After these documents were identified by Lukis in her deposition, Whitepages reiterated its request for those documents, (Kimrey Decl. ¶¶ 13, 15-16) but Lukis has refused to provide them.  Accordingly, the Court should order production.

**C.      Lukis should search for, and produce, additional documents evidencing her access to Whitepages' Web site.**

Lukis has not produced critical documents reflecting access by her devices to Whitepages.com, which are clearly relevant and proportional to the needs of the case — indeed, the history of Lukis's interactions with the Web site may be case dispositive.  As discussed above, Lukis has identified numerous additional devices that she may have used to access Whitepages.com, and she must produce the browsing history from those devices.  The inconsistent testimony and discovery responses that Lukis has provided regarding her visits to Whitepages.com make this information particularly important.  Lukis admitted that she has visited Whitepages' Web site and performed searches. (ECF 122-2 at 65, 68).  But she then testified that she had never visited Whitepages.com (Lukis Dep. 220:4-7) before subsequently testifying that she had visited the site only once in her entire life, in September or November of 2018, after her mom told her that her cell phone number was available via Whitepages.com. (Lukis Dep. 222:19-224:9; 230:20-232:2; 243:8-11).

But newly discovered evidence tells a far different story. According to the data that Lukis produced on January 4, 2021, from her own Facebook account, Lukis's computer visited Whitepages.com on December 6, 2019, and then twice on July 20, 2020. (Second Lukis Dep. Ex. 26). When confronted with that information, Lukis testified that she is not the person responsible for those visits to Whitepages.com. (Second Lukis Dep. 509:19:510:2). Rather, Lukis claimed that her computer is a "shared computer" and that her mother-in-law, her husband, and her sister-in-law each have access and know the password to the computer. (Second Lukis Dep. 513:6-517:14).

In addition to being facially incredible, Lukis's testimony is contradicted by data Whitepages was able to pull based on the information she (belatedly) provided. Lukis accessed her Facebook account on July 23, 2019, from an Android device in Chicago, Illinois, using the IP address 73.45.216.131. (ECF 131, p. 12). That same IP address accessed Whitepages' Web site from Chicago, Illinois, on June 12, 2019, to view the profiles of "Stephanie Lukis" and "Paul Lukis." (ECF 131-3, ¶ 6). Likewise, Lukis's production shows that she accessed her Facebook account from an LG Stylo 5 on October 21, 2018, and dozens of times from an Android device from July 2019 through October 2020, using the IP address 73.110.110.3. (ECF 131, p. 12). Whitepages' internal data shows that IP address accessed Whitepages.com from Chicago, Illinois, on October 27, 2019, February 14-20, 2020, and September 14, 2020, to search for or view the profiles of Stephanie Marie Lukis, Stephanie Marie Klatte, Paul Lukis, Mike Lukis, Deborah Egan, Brian Klatte, Susan Klatte, and Robert Lee Hern, and to search for a phone number. (ECF 131-3, ¶ 7).

It is clear that Lukis's contact with Whitepages.com is far more extensive than she previously disclosed, and, if Lukis is allowed to proceed with this case in the U.S. Northern District

of Illinois, it is essential that the requested browsing histories be produced.  In objecting, Lukis

asserts that "producing her browsing history (if any) from this hard drive is unduly burdensome as

Plaintiff does not have the present capability to operate the hard drive," but this claim is without

merit.  (Kimrey Decl., Exh. E, p. 9).  Lukis's Web browsing history is critical evidence in this case

in light of the privacy and consent issues (among others), and  Lukis has described no burden that

is disproportionate to the needs of the case.  *See Baxter International, Inc. v. Becton, Dickinson*

*and Company*, 2020 WL 424918, *5 (N.D. Ill. Jan. 27, 2020) ("The burden rests upon the objecting

party to show why a particular discovery request is improper."); *Schachar v. American Academy*

*of Ophthalmology, Inc.*, 106 F.R.D. 187, 190 (N.D. Ill. 1985) ("The party objecting to a discovery

request bears the burden of showing that the request is unduly burdensome. . . .  Plaintiffs have

made no factual showing that discovery here is any more burdensome than is typical in responding

to discovery requests in complex cases.").  If Lukis is unable to access the hard drive, Lukis should

enlist the aid of a computer forensics vendor to access the drive or to image the drive and turn the

entire drive over to Whitepages (or a third-party vender designated by the Court) for analysis.

There is no basis for Lukis to withhold this critical data.

> **D.**     **Lukis should produce an unredacted copy of the engagement letter with her counsel.**

With respect to Request for Production 6, Lukis's engagement letter with Beaumont

Costales has now been produced, but two paragraphs have been redacted.  (Kimrey Decl. ¶ 18).

"[E]ngagement letters between a client and a law firm [ ] generally are not privileged, except to

the extent such letters reveal 'the motive of the client in seeking representation, litigation strategy,

or the specific nature of the services provided, such as researching particular areas of law.'" *United*

*States Securities and Exchange Commission v. Hollnagel*, 2010 WL 11586980, *17 (N.D. Ill. Jan.

22, 2010).    Lukis has not provided any explanation for its redactions or whether it contains

information about motives, strategy, or the specific nature of services provided.

The engagement letter is clearly relevant here because courts regularly look at the terms of

engagement letters and fee arrangements in evaluating adequacy under Rule 23 — and as set forth

in Whitepages' motion to strike class allegations (ECF 119, 122), there are significant adequacy

concerns in this case.  For example, in *In re Ocean Bank*, 2007 WL 1063042, *6 (N.D. Ill. April

9, 2007), the court denied a motion for class certification where the class representative's retainer

agreement contained a provision requiring her to follow counsel's demands concerning settlement.

*See also Marsch v. Rui Feng*, 2013 WL 3204193, *2-*3 (S.D.N.Y. 2013) (referring to terms of

engagement letter in evaluating adequacy).  The engagement letter reveals important information

about the nature of the putative class representative's relationship with counsel, which can be

problematic because "when a class representative is closely associated with class counsel, he or

she may permit a settlement less favorable to the interests of absent class members." *In re*

*Discovery Zone Securities Litigation*, 169 F.R.D. 104, 108 (N.D. Ill. Sept. 27, 1996).  Thus, absent

an explanation from Lukis regarding the redactions, the entire engagement letter should be

produced.[3]

> **E.      Lukis should be required to sit for another deposition session to address the documents that have not yet been produced, as well as topics that were subject to improper instructions not to answer.**

When a party is unable to elicit fully responsive deposition testimony because of

inadequate disclosures before the deposition or because of improper instructions not to answer

during the deposition, courts routinely allow a subsequent deposition session.  *See, e.g., Plump v.*

---

[3] At a minimum, the Court should review the letter *in camera*, which opposing counsel William Beaumont, during Lukis's deposition, said he would agree to.  (Lukis Dep. 86:20-87:15).

*Kraft Foods North America, Inc.*, 2003 WL 22299019, \*6 (N.D. Ill. Oct. 6, 2003) (ordering plaintiff to sit for third deposition); *Carter v. Janssen*, 2011 WL 5181993, \*1 (E.D. Wis. Oct. 31, 2011) (referencing third deposition ordered by the court in response to motion to compel); *In re Caesars Entertainment Operating Co., Inc.*, 2018 WL 2431636, \*11 (N.D. Ill. Bankr. May 29, 2018) ("[A] second deposition is usually allowed when 'new information is unearthed only after the initial deposition.'"); *Jump v. Montgomery County*, 2015 WL 5854101, \*3 (C.D. Ill. Oct. 6, 2015) (allowing second deposition to address new information and documents); *Federal Trade Commission v. Vylah Tec LLC*, 2018 WL 7364589, \*8 (M.D. Fla. Nov 26, 2018) (allowing second deposition based on improper instructions not to answer). Here, Whitepages was not able to question Lukis on numerous documents and other information because, as set forth above, those documents have not been produced. Additionally, as stated above, Lukis's counsel made numerous inappropriate instructions not to answer, including some objections that Lukis's counsel confusingly attempted to withdraw during the second deposition session. (Second Lukis Dep. 393:1-394:18). Once Lukis supplements her production and discovery, Whitepages should be entitled to ask her about this new information (which, among other things, is relevant to arbitrability and class waiver), and the Court should order her to appear for another deposition session (if the Court doesn't send her to arbitration, ECF 89-90, or strike her as an inadequate class representative, ECF 119, 122).

        **F.**      **Lukis should be required to provide a privilege log.**

To the extent Lukis claims that her production is complete, she should be required to produce a privilege log. *See* Fed. R. Civ. P. 26(b)(5); *Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006) ("An attorney asserting privilege must timely support that claim with a 'privilege log' which describes the nature of each document being withheld."). Lukis not only must identify any documents withheld on the basis of privilege, but also explain the significant redactions in her

-10-

production.  In the documents she produced less than 18 hours before the first deposition session

started, Lukis included two documents that were comprised almost entirely of black boxes, one

which was 39 pages and one which was 832 pages.  (Second Lukis Dep. 473:18-474:4; 506:19-

513:18).  The 39-page document was redacted in its entirety, and the 832-page document had a

*single* unredacted page.  If Lukis is taking the position that this voluminous portion of her

production is privileged or otherwise protected from disclosure, that should be included on a

privilege log.  The Court therefore should require Lukis to produce a privilege log  (if the Court

doesn't send her to arbitration, ECF 89-90, or strike her as an inadequate class representative, ECF

119, 122).

### G.      The Court should grant Whitepages its expenses in filing this Motion.

Pursuant to Federal Rule of Civil Procedure 37(a)(5), the Court should require Lukis, as

the party "whose conduct necessitated the motion," to pay Whitepages' expenses incurred in

making this motion, including attorneys' fees.  An award of expenses is mandatory unless "the

court finds that the motion was filed without the movant's first making a good faith effort to obtain

the disclosure or discovery without court action, or that the opposing party's nondisclosure,

response, or objection was substantially justified, or that other circumstances make an award of

expenses unjust."  Fed. R. Civ. P. 37(a)(5); *see also Rickels v. City of South Bend, Ind.*, 33 F.3d

785, 786-87 (7th Cir. 1994) ("The great operative principal of Rule 37(a) is that the loser pays.").

"The burden of persuasion is on the losing party to avoid assessment of expenses and fees rather

than on the winning party to obtain such an award."  *ED&F Capital Markets Ltd. v. JVMC*

*Holdings Corp.*, 335 F.R.D. 174, 180 (N.D. Ill. 2020).

An award of expenses is appropriate here because (1) Whitepages worked tirelessly for

months to try to resolve this dispute without Court action, (2) Lukis's refusal to respond and

produce documents is entirely unjustified, and (3) there are no other circumstances that make an

award of expenses unjust. *See* Fed. R. Civ. P. 37(a)(5)(A). Thus, the Court should award Whitepages its expenses, including attorney's fees, in bringing this motion.

## IV. Conclusion

For the foregoing reasons, if the Court denies Whitepages' arbitration (ECF 89-90) and class strike (ECF 119, 122) motions and this case proceeds in the U.S. Northern District of Illinois with Lukis as the putative class representative, the Court should grant this motion to compel and require Lukis to supplemental her discovery responses, produce additional documents and/or devices for forensic imaging and searching, produce a privilege log, and make herself available for another deposition session. The Court also should award Whitepages its expenses, including attorney's fees, in bringing this motion.

## LOCAL RULE 37.2 STATEMENT

On December 15, 2020, Whitepages' counsel Jonathon Reinisch sent a meet and confer letter to Lukis's counsel Roberto Costales. (Kimrey Decl. ¶ 6). On December 22, 2020, Whitepages counsel Blaine Kimrey and Mr. Reinisch participated in a ***three-hour*** meet and confer discussion with Lukis's counsel William Beaumont. (Kimrey Decl. ¶ 7). Mr. Reinisch then summarized that discussion in a letter dated December 23, 2020. (Kimrey Decl. ¶ 8). After Lukis supplemented her responses and produced documents on January 4, 2021, Whitepages' counsel Blaine Kimrey sent another meet and confer letter. (Kimrey Decl. ¶¶ 9-13). On January 13, 2021, Mr. Kimrey sent an email to Lukis's counsel, following up on certain discovery issues. (Kimrey Decl. ¶ 15). On January 14, 2021, having received no response, Mr. Kimrey sent another email to Lukis's counsel. (Kimrey Decl. ¶ 16). On January 18, 2021, Mr. Costales responded, refusing to provide any additional information. (Kimrey Decl. ¶ 17).

-13-

Dated: February 3, 2021

Respectfully submitted,

WHITEPAGES, INC.

By:     */s/ Blaine C. Kimrey*
      One of its attorneys

Blaine C. Kimrey – bkimrey@vedderprice.com
Bryan K. Clark – bclark@vedderprice.com
Jonathon P. Reinisch – jreinisch@vedderprice.com
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

-13-

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2021, a copy of the foregoing was electronically filed in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system.


/s/ Blaine C. Kimrey
Blaine C. Kimrey