IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Stephanie Lukis, individually and on behalf of all others similarly situated, | ) ) ) ) | CIVIL ACTION NO: 19-cv-4871 |
| Plaintiffs, | ) ) | JUDGE FEINERMAN |
| v. | ) ) | MAG. GILBERT |
| Whitepages Incorporated, | ) ) | |
| Defendant. | ) | |

### PLAINTIFF'S OPPOSITION TO
### DEFENDANT'S MOTION TO COMPEL

Defendant believes that *any* time Plaintiff has disclosed *any* part of her identity to *any* person that such disclosure is a discoverable fact in this case. Defendant claims that these disclosures are relevant to the question of whether Plaintiff gave her consent to Defendant to use her identity for a commercial purpose. Defendant takes this position despite admitting, in its answer, that it did not get consent from Plaintiff to use her identity. *See* Dkt. 59, Def.'s answer to allegation No. 25. Defendant also takes this position despite being in a better position than anyone—and certainly Plaintiff—to say which, if any, third parties provided it Plaintiff's consent under the Illinois Right of Publicity Act. Against the backdrop of these conflicting positions, which underlie essentially all of Defendant's irrelevant and overbroad discovery requests, the Plaintiff responds to Defendant's motion to compel as follows:

Defendant's motion can be divided into essentially five requests: (1) that Plaintiff provide a raft of documents that were identified in her deposition; (2) that Plaintiff search certain electronic devices for "responsive documents"; (3) that Plaintiff provide additional documents regarding her visits to Defendant's website; (4) that Plaintiff sit for another deposition; (5) that

1

Plaintiff provide a privilege log; and (6) that Plaintiff provide an unredacted copy of her engagement letter with Plaintiff's counsel.

As argued below, the majority of these requests are not properly before the Court because Defendant neglected to have any meaningful conference with Plaintiff's counsel pursuant to FCRP Rule 37, Local Rule 37.2. and Your Honor's rule regarding ESI discovery disputes. The Defendant's motion to compel is also insufficient in that it largely fails to establish the relevance of the materials that it seeks to compel and also the tremendous overbreadth of the requests themselves.

1. **Standard of Review**

When addressing motions to compel, the court has broad discretion and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. *See* Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495–96 (7th Cir. 1996). "[A] district court should independently determine the proper course of discovery based upon the arguments of the parties." *Gile*, 95 F.3d at 496.

2. **Defendant's request for additional documents**

Defendant's motion to compel requests a variety of different documents that Plaintiff testified about in her deposition. None of these requests have been the subject of any sort of meet and confer.[1]

---

[1] Defendant's motion claims that it conferred with Plaintiff's counsel following Plaintiff's deposition and supplemental discovery responses. Yet no telephonic conference took place. There was an exchange of emails, Dkt. 139-1 p. 117-120, however only one particular discovery request was mentioned in those emails—Plaintiff's Facebook data. The fact is that Defendant's motion relates almost entirely to discovery disputes that parties have never specifically conferred about.

2

### (i) The Craigslist advertisement

Defendant requests the advertisement that Plaintiff saw on Craigslist advertising her attorneys' services. This document was never properly requested by Defendant. Despite the immense overbroadness of its discovery demands, none include any request for this document. Because Defendant never requested it (and never conferred with Plaintiff about it) their motion to compel is improper.

### (ii) Plaintiff's job applications

In her written responses to Defendant's requests for production, Plaintiff specifically stated that she did not have copies of her job applications. Dkt. 139-1 p. 21, Plaintiff's Suppl. Response to Request for Production No. 1. The parties have never conferred about any alleged deficiency with this response; Defendant's motion is the first time Plaintiff is hearing about it. Additionally, Defendant's motion does not explain why Plaintiff's response is insufficient or what leads Defendant to believe that there is additional, unproduced information.

### (iii) Plaintiff's cell phone contracts

These contracts are available to anyone with the Internet.[2] In Plaintiff's deposition, Defendant spent large amounts of time reviewing various terms of service from other websites, like Facebook, which Defendant apparently obtained on its own initiative. Defendant has not conferred with Plaintiff about this particular request, including why the terms available on Sprint and T-Mobile's websites are not sufficient.

---

[2] Sprint's terms and conditions are available at https://www.sprint.com/en/legal/terms-and-conditions.html. T-Mobile's terms and conditions are available at https://www.t-mobile.com/responsibility/legal/terms-and-conditions.

3

### (iv) Plaintiff's social media accounts

As Plaintiff told Defendant in their single Rule 37 conference, Defendant's discovery request for social media information is facially overbroad. Request for Production No. 15 states: "All documents and communications related to, arising out of, or evidencing any social media account or profile that you maintain, including but not limited to Facebook, Twitter, Instagram, TikTok, LinkedIn, Twitch, Vimeo, Tumblr, Pintrest, Google+, Snapchat, Reddit, Myspace, YouTube, Tinder, and Flickr."

Despite Defendant's request for "all" social media documents and communications, it is well-established that requests for "all" social media information are improper. *See*, *e.g.*, *Estate of Loury by Hudson v. City of Chicago*, No. 16-CV-04452, 2017 WL 11562006, at *2 (N.D. Ill. Mar. 14, 2017) (St. Eve, J.) ("Courts are reluctant to compel all-encompassing social media or electronic information requests unless they are limited in scope to content that is relevant to the case."). This is particularly true in the case of private social media information, like browser histories. *In re Cook Med., Inc., IVC Filters Mktg., Sales Practices & Prod. Liab. Litig.*, No. 1:14-ML-2570-RLY-TAB, 2017 WL 4099209, at *5 (S.D. Ind. Sept. 15, 2017) ("The requesting party does not have an unfettered right to rummage through the responding party's social media and must limit the time period and content of the request.").

In the parties' Rule 37 conference, Defendant refused to limit its request in any way. Because the request is improper as written, the Court should not compel a response. Additionally, Defendant fails to establish the relevance of the request. Defendant claims that the social media materials are relevant to establishing that Plaintiff provided her consent to Defendant for the use of her identity for a commercial purpose—yet Defendant's answer specifically admits that it received no such consent. *See U.S. ex rel. Baltazar v. Warden*, No. 07

C 4107, 2013 WL 12446467, at *2 (N.D. Ill. Feb. 5, 2013) ("The scope of discovery is framed by the issues raised in the pleadings[.]"). Additionally, it is Defendant—not Plaintiff—who can most easily determine which third parties provided it with Plaintiff's written consent to use her identity for a commercial purpose. If it is aware of any such third party it should inform Plaintiff, and Plaintiff can narrow her search for responsive information accordingly.

### (v) Other websites

Defendant's motion to compel also refers to other websites that are not social media, such as Amazon, eBay, Uber, and credit reporting agencies. Unlike the social media requests, Defendant's demand for information related to these other websites is not clearly called for by any of Defendant's discovery requests. The only two possibilities are the impossibly broad Request for Production No. 5 ("Every publicly available manifestation of your identity or any portion of your identity") and No. 17 ("All documents and communications reflecting your consent to use or share any aspect of your identity"). Because Defendant refused to limit these extremely broad requests, Plaintiff cannot be charged with failing to provide the specific document that Defendant claims was included in the request. The requests contemplate everything from voter registration forms to mortgages to ski mountain waivers to the cards people used to use to check out library books. Simply because Defendant has elicited testimony in deposition of materials it thinks are included in these overbroad requests does not entitle it to a compel order. Additionally, none of the requested websites have ever been discussed by the parties in any sort of meet and confer. And again, Defendant does not explain the relevance of these requests. To the extent they relate to the consent that Plaintiff might have given Defendant to use her identity for a commercial purpose, that argument has no merit.

      **(vi)    The privacy settings on "all relevant websites"**

This is another item that was not clearly requested in any of Defendant's discovery requests. It is not even clear from Defendant's motion what "all relevant websites" is referring to. The privacy settings from "all relevant websites" has also never been the subject of a meet and confer.

### 3. Defendant's request that Plaintiff perform additional searches

Defendant lists 8 devices and messenger accounts that it demands Plaintiff search for "responsive documents." Defendant argues that Plaintiff must search old, electronically stored information because in her objections to Defendant's overbroad interrogatories she states that she cannot remember, for instance, "every person…[she has] provided [her] phone number," *see* Def.'s Interrogatory No. 1; or "every restriction [she] has placed on the sharing of [her] name," *see* Def.'s Interrogatory No. 6.

Defendant's impossibly broad discovery requests do not create a duty for Plaintiff to search old emails and computers for every person she's given her address or date of birth.[3] *Gabiola v. Mugshots.com, LLC*, 16 C 2076, 2019 WL 426143, at *2 (N.D. Ill. Feb. 4, 2019) (discovery requests asking a party to produce "nearly every document associated with their businesses" were improper where the requesting party failed to provide a "particularized explanation" why it needed a "potentially a very large volume of documents[.]"). Here, Defendant's overbroad requests would potentially require a review of every email, text message, or document ever sent by Plaintiff.

It bears mentioning that, under the Illinois Right of Publicity Act, Plaintiff is required to establish that Defendant used her identity for a commercial purpose without Plaintiff's written

---

[3] *See* Def.'s Interrogatory Nos. 2 and 3.

consent. 765 ILCS 1075/30(a); *Lukis v. Whitepages Inc.*, No. 19 C 4871, 2020 WL 6287369, at *3 (N.D. Ill. Oct. 27, 2020). In the context of that law, Defendant cites no hypothetical—let alone any case—establishing the relevance of Plaintiff's provision of her personal information to friends, businesses, or internet websites. Defendant may argue that these disclosures go to consent—but it cannot cite any cases in support, nor can it explain in any logical way, how Plaintiff's consent to Myspace.com to use her personal information somehow transfers to Whitepages.com. Additionally, and as pointed out above, Defendant's answer *already admits* that it did not obtain any consent from Plaintiff. Finally, if Defendant is aware of any third-parties from whom it obtains class members consent, it is not willing to limit its discovery requests to target those entities.

    **4. Defendant's request for additional documents evincing Plaintiff's visits to Whitepages.com**

Defendant's motion asks that Plaintiff be compelled to produce "additional documents evidencing her access" to Defendant's website. Defendant bases this request on Plaintiff's deposition, where she supposedly "identified numerous additional devices that she may have used to access Whitepages.com." Defendant now wants the browsing history of those devices. Plaintiff never testified that she used any "additional devices" to access Defendant's website apart from a personal computer, and Defendant's motion does not have any citations in support of that proposition. Plaintiff has indicated that her personal computer hard drive may have browsing histories on it.[4] She has not testified or otherwise stated that there are any other

---

[4] Plaintiff's hard drive is not accessible to her and requires the attention of a specialist in order to be accessed. This was indicated to defense counsel in Plaintiff's discovery responses. *See* Dkt. 139-1 p. 28, Plaintiff's Suppl. Response to Request for Production No. 13. The parties have not, pursuant to Your Honor's rule, conducted a conference with IT personnel to discuss the parameters of any search of Plaintiff's hard drive. The parties have not, for that matter, had such a conference with regard to any of the ESI impasses referenced in Defendant's motion.

7

documents "evidencing *your* access to Whitepages.com" as requested in Defendant's discovery requests. *See* Request for Production No. 12.

This is the first time Plaintiff is hearing about Defendant's search of its website for an IP address associated with Plaintiff's Facebook account. It is unclear why Defendant was unable to examine Plaintiff on this issue during Plaintiff's second deposition session (which took place 8 days after the first, and was specifically delayed for, among other reasons, the Defendant to have time to review the Facebook data Plaintiff provided). In any case, Defendant's research only establishes that someone connected to Plaintiff's home network visited Defendant's website— that's how IP addresses work.[5] Defendant's request for production asks for records of *Plaintiff's* access, not records of other people's access.

While Defendant hints that Plaintiff's unsure testimony on her visits to Whitepages.com can only be nefarious, its motion fails to establish why that testimony matters to its arbitration claim. The arbitration motion is already fully briefed, and the motion is based entirely on Plaintiff's *counsel* accessing the website and agreeing to the terms of service—not Plaintiff. Defendant already had an opportunity to question the Plaintiff on her familiarity with the terms of service on Whitepages.com and has failed to produce any evidence that Plaintiff was aware of them, let alone agreed to them. Dkt. 125-8 p. 62 (Lukis Dep. 238:1-24). It is unclear from Defendant's motion how browser histories could possibly change those facts.[6]

---

[5] *See*, *e.g.*, *United States v. Carter*, 549 F. Supp. 2d 1257, 1263 (D. Nev. 2008) (citing with approval the declaration of a computer expert stating: "[a]ll computers accessing the Internet through the same wireless router will have the same IP address," as contrasted with a "MAC address," which can identify a particular device accessing the internet through a given IP address.).

[6] It is equally unclear why, if Defendant' truly thought this information was important to its case, it did not join in Plaintiff's motion to extend discovery in this matter, *see* Pl.'s Mot. to Extend

### 5. Plaintiff's engagement letter with her counsel

This letter was provided following the parties' single meet and confer and it has not been the subject of a discovery conference since that time. The redacted portions of the letter were omitted because they potentially reveal protected attorney-client information, specifically legal advice. The Court should deny Defendant's motion with regard to this item.

### 6. Defendant's request for a privilege log

The two redacted documents Defendant refers to in its motion consist entirely of Facebook records reflecting Plaintiff's "off Facebook" internet activity i.e., browsing history. This fact has been communicated both verbally and in writing to Defendant. The basis of the redactions is that the Defendant's social media request is overbroad and irrelevant, and Plaintiff is under no obligation to produce her "private" Facebook information, including "off Facebook" internet activity. *In re Cook*, *supra*; *see also Ye v. Cliff Veissman, Inc.*, 14-CV-01531, 2016 WL 950948, at *3 (N.D. Ill. Mar. 7, 2016) (a request for "unfettered access" to plaintiff's Facebook archives improper).

Despite the impropriety of Defendant's request, Plaintiff did provide more than two thousand pages of Facebook records, including a single, partially redacted page of Plaintiff's private Facebook data, reflecting visits from her personal computer to Whitepages.com.[7] Defendant fails to establish the relevance of anything else that might be included among

---

Deadlines, Dkt. 128, instead of opposing that motion and asking the Court to "order that fact discovery is closed." Def.'s Opp. to Pl.'s Mot. to Extend Deadlines, p. 8.

[7] Defendant's motion would have the Court believe that the record of these visits to whitepages.com was kept secret by Plaintiff until Defendant "confronted [her] with that information" in her deposition. Def.'s Br. at 7. The fact is, however, that Defendant did not question Plaintiff about this record until her own counsel did. Dkt. 125-9 p. 54 (Lukis Dep. 508:9-510:2).

9

Plaintiff's private Facebook data; and because the basis for redacting that information is the same across the board, a privilege log should not be required.

### 7. Defendant's request that Plaintiff sit for another deposition; request for fees

Defendant argues that it is entitled to a new deposition of Plaintiff because of Plaintiff's failure to produce documents. However, as argued above, Defendant has not established that it is entitled to any further documents, nor has it established that it met its meet and confer obligations with respect to any outstanding document requests. Thus, Defendant's request for a second deposition is, at best, premature. For the same reasons, Defendant is not entitled to fees for bringing this motion.

### 8. Conclusion

While much of Defendant's motion is procedurally improper because of a failure to meet and confer, the Court can considerably narrow future disputes if it gives the parties a peek at its thoughts on the relevance of Defendant's discovery requests. As outlined above, the vast majority of Defendant's requests focus on the theory that Plaintiff has somehow provided her consent to Defendant via a third party. To a lesser extent, the discovery requests relate to Defendant's arbitration claim. Guidance on these issues, however general or hypothetical, may prevent unnecessary future motion practice.

*Respectfully submitted,*

*/s/ Roberto Costales*

Roberto Costales
William H. Beaumont
BEAUMONT COSTALES LLC
107 W. Van Buren #209
Chicago, IL 60605
Telephone: (773) 831-8000
*rlc@beaumontcostales.com*

*Attorneys for Plaintiff*

10