IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Stephanie Lukis, individually and on behalf of all others similarly situated, | ) ) ) ) | CIVIL ACTION NO: 19-cv-4871 |
| Plaintiffs, | ) | JUDGE FEINERMAN |
| v. | ) ) | MAG. GILBERT |
| Whitepages Incorporated, | ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

NOW COMES PLAINTIFF, Stephanie Lukis, who hereby moves the Court to certify this case as a class action under Fed. R. Civ. P. 23(b)(2), to wit:

This is a putative class action filed by Plaintiff to enjoin Defendant from continuing its unlawful business practice of exploiting class members' identities for a commercial purpose under the Illinois Right of Publicity Act ("IRPA"). Specifically, Plaintiff alleges that Defendant "uses" her identity—and those of class members—for a "commercial purpose" where it displays those identities on its website as part of a solicitation to purchase Defendant's subscription services and "background reports." Because Defendant does not obtain any written consent from any class member to use their identity, this practice is unlawful under the IRPA. Additionally, as argued in more detail below, the nature of the IRPA and the wrongful acts alleged by Plaintiff make for a textbook application of Rule 23(b)(2).

1. **Factual Background**

Defendant Whitepages is a for-profit corporation that owns and operates the website, Whitepages.com (the "Website").[1] The Website "provides and sells to the general public access to an online directory of information about people."[2] Defendant offers both free and paid information to users of the Website.[3] The Website allows users to search, for free, an individual's name.[4] In response to that user's search, the Website returns a list of search results related to that name.[5] An example of a search result returned by the Website is attached hereto as ***Exhibit 2***.[6] Clicking the button labeled "View Details" next to a search result leads the user to what Defendant's employees refer to as a "profile page" or "details page."[7] (Hereinafter "Details Page.")

A Details Page lists various personal information relative to the person whose search result was clicked on by the user. Specifically, the Details Page displays a name, middle initial, age range, city of domicile, past cities of domicile, and possible relatives.[8] An example of the Details Page is attached hereto as ***Exhibit 1***.[9]

In addition to providing free information about a searched person, every Details Page also promotes Defendant's paid services. There are hyperlinks on the Details Page that will lead a user to yet another webpage where the user can purchase Defendant's paid services.[10] For

---

[1] Dkt 62-1, Declaration of Nadine Thisselle at ¶ 3.
[2] *Id*. at ¶ 4.
[3] *Id*. at ¶¶ 5-6, 8; ***Exhibit 6, Deposition of Laura Merhkens***, 13:16-16:17.
[4] ***Exhibit 4, Deposition of Rohn Ramon***, 7:8-12; Merhkens Dep. 227:4-15.
[5] ***Exhibit 5, Deposition of Nadine Thisselle***, 22:11-14.
[6] Thisselle Dep. 50:9-19; 51:15-19.
[7] Thisselle Dep. 20:2-5; 22:15-23:1-9; 58:15-59:9; Merhkens Dep. 33:5-34:17;
[8] Ramon Dep. 36:9-17; 69:12-70:21.
[9] Thisselle Dep. 58:15-59:9; Merhkens Dep. 33:5-34:17.
[10] Ramon Dep. 66:24-69-10; Thisselle Dep. 74:14-76-7.

example, the Details Page invites a user to click various hyperlinks in order to "view relatives" or "view phone numbers."[11] Clicking these hyperlinks will lead the user to a "summary page."[12] The summary page, "is a page that [Defendant] deliver[s] to users that show what additional data is available within the paid product"[13] and invites the user to navigate to a pricing page.[14] An example of the summary page is attached hereto as ***Exhibit 3***.[15] The summary page invites the user to "unlock full report,"[16] which takes the user to a pricing page where users can purchase Defendant's products.[17]

Defendant offers two types paid products: "membership products" and "transactional products."[18] The membership product, also called "Whitepages Premium," is a monthly or annual subscription service[19] that offers customers "a more elaborate set of data" including more comprehensive Details Pages about people.[20] Transactional products, on the other hand, consist of background reports about individuals[21] that are "more detailed version[s] of a person's details page," and which include criminal records, address histories, and bankruptcies.[22] Various price packages for these two paid products are advertised to a user of the Website after they click on the funnel displayed in a Details Page.[23]

---

[11] *See generally* Exhibit 1.
[12] Merhkens Dep. 236:15-238:24.
[13] Ramon Dep. 66:15-17.
[14] Merhkens Dep. 239:2-15.
[15] Thisselle Dep. 45:11-16;
[16] *See generally*, Exhibit 3.
[17] Ramon Dep. 68:23-69:10; Thisselle Dep. 45:11-16; 47:4-9.
[18] Merhkens Dep. 214:11-20.
[19] Merhkens Dep. 215:23-216:7.
[20] Thisselle Dep. 103:16-104:1; Ramon Dep. 16:2-5.
[21] Merhkens Dep. 215:2-21.
[22] Ramon Dep. 18:24-19:3.
[23] Thisselle Dep. 37:19-39:8; Merhkens Dep. 227:17-229:7.

Every Details Page of a person searchable on Whitepages' website has an "ID" associated with it.[24] Whitepages maintains "in house" a series of identifying information about each person for whom it has an ID, including name, middle name, alias, current address, historical addresses, phone number, relatives, and age.[25] The information maintained by Whitepages with respect to a person's ID is periodically updated when Whitepages receives an update about that person from a third-party data provider.[26] Defendant does not collect any of the data on its Website by "scraping" the internet—all data is obtained from third-party sources.[27]

Whitepages' website "focuses" on providing information about the U.S. adult population,[28] and Whitepages has the IDs of roughly 250 million U.S. adults, "similar to the total population of U.S. adults."[29] Whitepages maintains Details Pages about Illinois residents, and it does not treat Illinois residents' Details Pages any differently than the other Details Pages on its website generally.[30] Plaintiff Stephanie Lukis is a resident of Illinois.[31] Defendant can and has generated a Details Page about Lukis that includes her name, middle initial, age range, state of domicile, past locations, and one or more relatives.[32]

2. **Statutory framework of the Illinois Right of Publicity Act**

The IRPA prohibits using an individual's identity for a commercial purpose without having obtained that person's written consent. *Lukis v. Whitepages Inc.*, No. 19 C 4871, 2020 WL 6287369, at *3 (N.D. Ill. Oct. 27, 2020); 765 ILCS 1075/30(a). "A plaintiff must thus prove

---

[24] Ramon Dep. 31:15-18.
[25] Ramon Dep. 71:5-72:17.
[26] Ramon Dep. 35:10-36:5.
[27] Ramon Dep. 50:7-10.
[28] Ramon Dep. 42:4-12.
[29] Ramon Dep. 72:21-73:4.
[30] Ramon Dep. 84:9-85:4.
[31] **Exhibit 7, Declaration of Stephanie Lukis**, ¶ 1
[32] *Id*. at ¶¶ 7-8.

4

(1) the appropriation of one's identity, (2) without one's consent, (3) for another's commercial benefit." *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008 (7th Cir. 2019). "The IRPA defines identity as any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." *Id*. (quoting 765 ILCS 1075/5).

### 3. Class Definition

Plaintiff hereby seeks to certify a class of the following individuals:

"***All Illinois residents over the age of 18 for whom Defendant can generate a Details Page that includes their first and last name, middle initial, age range, state of domicile, previous location(s) lived, and one or more relatives.***"

For the following reasons, this class definition is appropriate for class certification under FRCP 23(a) and (b)(2).

### 4. Standard of Review

Plaintiff's motion to certify requires her to establish, by a preponderance of the evidence, both the elements of FRCP 23(a) as well as 23(b)(2). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). FCRP 23(a) includes the requirements of numerosity, typicality, commonality, and adequacy of representation. *Id*. It also implicitly includes the requirement of ascertainability. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). Additionally, under FRCP 23(b)(2), a class plaintiff must show "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Jefferson v. Ingersoll Intern. Inc.*, 195 F. 3d 894, 896 (7th Cir. 1999) (quoting Rule 23).

Although Plaintiff's burden at the class certification stage is not to prove her class claims on the merits, *Szabo v. Bridgeport Machines, Inc.*, 249 F. 3d 672, 675-76 (7th Circuit 2001), she is cognizant that the Court must also make "whatever factual and legal inquiries are necessary," to determine if she establishes the elements of Rule 23. *Id.* at 676. Invariably that involves "a peek at the merits…limited to those aspects of the merits that affect the decisions essential under Rule 23." *Schleicher v. Wendt*, 618 F. 3d 679, 685 (7th Cir. 2010). Courts should limit merit-based inquires to the elements of Rule 23 so the efficiencies envisioned by the class action device are preserved. Following certification, classwide disputes can just as easily be won as "go down in flames on the merits," *Id.*, and thus resolve legal questions for entire groups of potential disputants—not just the named plaintiff. By avoiding a "dress rehearsal for the trial on the merits," *Messner* at 811, courts ensure that the problems of one-way-intervention are avoided. *Wendt* at 685.

As described in more detail below, any peek at the merits in this case should counsel in favor of proceeding with class certification. Plaintiff alleges an objectively ascertainable class of people whose identities are allegedly being used by the Defendant for a discrete commercial purpose on a specific part of Defendant's website. These facts make this case particularly well-suited to class treatment, especially under FRCP 23(b)(2). The question of whether this constitutes a violation of the IRPA is one common to all class members and capable of resolution "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

5. **The Elements of FRCP 23(a) and (b)(2)**

    A. **Numerosity**

The 7th Circuit has observed that 40 class members typically satisfies the "numerosity" requirement. *Mulvania v. Sherriff of Rock Island County*, 850 F. 3d 849, 859-60 (7th Cir. 2017).

Here, the basis for Plaintiff's claims is that Defendant displays the identity information of Illinois residents on its website. Defendant's personnel testified that Whitepages maintains records for roughly 250 million U.S. adults. Additionally, Whitepages does not treat Illinois residents any differently than it does the residents of any other state when it comes to storing and displaying their information in Details Pages. Thus, given that Whitepages' website has roughly the same number of profiles as the U.S. adult population, and also given that the state of Illinois has approximately ten million adults,[33] it cannot be reasonably disputed that Whitepages' website can generate Details Pages for 40 or more Illinois residents. *See, e.g., Montoya v. Jeffreys*, No. 18 C 1991, 2020 WL 6581648, at *10 (N.D. Ill. Nov. 10, 2020) ("Generally, a plaintiff must show enough evidence of the class's size to enable the court to make commonsense assumptions regarding the number of putative class members.").

### B. Commonality

Under 23(a)(2), Plaintiff's class claims must involve "questions of law or fact common to the class." A common nucleus of operative facts is enough to satisfy the commonality requirement, and this typically exists where the defendants have engaged in standardized conduct towards members of the proposed class. *Keele v. Wexler*, 149 F. 3d 589, 594 (7th Cir. 1998). The Supreme Court famously issued guidance on the commonality requirement in their landmark 2011 decision, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). Writing for the majority, Justice Scalia observed:

> "[Common questions of law and fact] must depend upon a common contention…[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in

---

[33] U.S. census data. https://www.census.gov/quickfacts/fact/table/IL,US/PST045219 (last accessed March 1, 2021).

7

> one stroke. What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."

*Dukes* at 2551. Here, Plaintiff's class claims fit seamlessly into the commonality framework from *Dukes*. There is a "single answer" to the "common questions" that Plaintiff's lawsuit poses that have zero dissimilarity amongst class members. Those questions are:

a. Is the combination of a class member's name, middle initial, age range, state of domicile, previous locations lived, and possible relatives enough to constitute their "identity" within the meaning of the IRPA?

b. Does the practice of displaying the Details Page about a class member constitute the "use" of that class member's identity for a "commercial purpose" under the IRPA?

c. Is Defendant's practice of displaying class members' identities in Details Pages exempt under the IRPA as described at 765 ILCS § 1075/30(b)(1), (2), and (4), as alleged in Defendant's answer?

d. Is Defendant's practice of displaying class members' identities in Details Pages exempt under First Amendment principles, as alleged in Defendant's answer?

e. Do the purveyors of the data that Whitepages uses to populate its Details Pages confer the "written consent" of any class member as that phrase is defined under the IRPA?

These questions strike at the heart of Plaintiff's case, but they are also identically dispositive *as to all other class members*. In order words, these common questions can "generate common answers" and resolve the litigation "in one stroke." *Dukes* at 2551. For example, if the Court finds that Defendant's website does not "use" Plaintiff's identity for a "commercial purpose" when it displays her information on a Details Page, then that answer will resolve the same legal question for all other class members. Similarly, if Plaintiff's name, middle initial, age range, state of domicile, previous locations lived, and possible relatives do not constitute her "identity" within the meaning of the IRPA, that answer would apply to all other class members

8

as well. Common questions also exist with respect to Defendant's defenses: whether the Details Page is exempt under the IRPA or First Amendment principles is a defense that would equally bar the claims of all class members.

Class certification does not require the Court to determine whether Defendant actually *does* use Plaintiff or class members identities for a commercial purpose—that is for summary judgment or trial—instead 23(a) requires the Court to ascertain if it is a "common contention" that it *might*. "A proposed class of plaintiffs must prove the existence of a common question…but it need not prove that the answer to that question will be resolved in its favor." *Bell v. PNC Bank, Nat. Ass'n*, 800 F. 3d 360, 376 (7th Cir. 2015). Here, the questions posed by Plaintiff's claim are in lockstep with those presented by the claims of all other proposed class members. For that reason, the commonality prong of 23(a) is satisfied.

### C. Typicality

The question of typicality is closely related to the question of commonality. *Rosario v. Livaditis*, 963 F. 2d 1013, 1018 (7th Cir. 1992). The two requirements "tend to merge" and both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Southwest v. Falcon*, 457 US 147, 158, n. 13 (1992). Stated another way, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F. 3d 574, 586 (7th Cir. 2011). That "congruence" is shown where "claims are based on the same legal theory…[where] the named representative's

claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quotation marks and citations omitted).

Here, the basic assertion that Plaintiff makes in her lawsuit is that the Defendant can use her identity for a commercial purpose when it displays, in its Details Page, Plaintiff's age range, middle initial, state of domicile, past locations lived, and relatives. The Defendant can and does, in fact, do that—as shown in Exhibit 1. Thus, Plaintiff's claim is "typical" of all other class members, because they are also Illinois residents for whom the Defendant can display Details Pages including their first and last names, middle initials, age ranges, states of domicile, past locations lived, and relatives.[34]

### D. Adequacy

Adequacy also "tend[s] to merge" with the typicality and commonality requirements, "although the [adequacy] requirement also raises concerns about the competency of class counsel and conflicts of interest." *Dukes* at 2551, n. 5. Conflicts between a named class representative and class members is where the representative must "choose between competing class members" *Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F. 3d 364, 372 (7th Cir. 2012), or where there is a possible that "some class members will be hurt by class treatment." *Id*. In addition to the competency of counsel and potential conflicts of interests, courts also consider whether a proposed class representative "is subject to a substantial defense unique to [them]." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1027 (7th Cir. 2018).

---

[34] Defendant's motion to strike, Dkt. 119, suggests that Plaintiff's claim presents "unique facts" that make her "susceptible to defenses that do not apply to the putative class," and so she is an "atypical" class representative. This Court has specifically observed, however, that such arguments are properly analyzed under the adequacy prong of Rule 23(a), not that of typicality. *Al Haj v. Pfizer Inc.*, No. 17 C 6730, 2020 WL 1330367, at *2 (N.D. Ill. Mar. 23, 2020).

With respect to conflicts of interest between the Plaintiffs and the class, there are none—they are all, categorically, subject to the same unlawful conduct by the Defendant. Furthermore, there is no possibility that any putative class member will be "hurt" by the certification of a class or the disposition of class issues. Additionally, Plaintiff's counsel are competent, adequate, and have litigated this case expeditiously and professionally.[35]

On the merits, the Plaintiff is not subject to any unique and substantial defense that would make her different from any other class member. While Defendant does allege that Plaintiff agreed to arbitrate her claim, Dkt. 89, that does not relate to the merits of her dispute. More importantly, the Court is primed to rule on the arbitration question prior to, or concurrent with, the disposition of the instant motion—in which case there will be no arbitration issue by the time this case reaches a fact-finder for ultimate resolution.

### E. Ascertainability

Implicit in Rule 23(a) is the requirement that the proposed class must be definite enough for the class to be ascertained. *Oshana* at 513. In general, this means that a class must be clearly defined by objective criteria. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659–60 (7th Cir. 2015). Classes defined by vague or subjective criteria, or classes defined only in terms of success on the merits (so-called "fail-safe classes"), do not meet the ascertainability requirement. *Id*. Additionally, some courts have held that the ascertainability requirement of 23(b)(2) is more flexible than in (b)(3) classes. *Haynes v. Dart*, No. CIV.A. 08 C 4834, 2009 WL 2355393, at *4 (N.D. Ill. July 29, 2009).

Here, Plaintiff's proposed class definition sets forth "objective criteria" by which class members may be identified: all residents of a particular state (Illinois) for whom Defendant can

---

[35] *Exhibit 8, Declaration of Roberto Costales*, ¶¶ 2-6.

generate a specific page on its website (a Details Page) which includes a defined set of information (first and last name, middle initial, age range, state of domicile, previous location(s) lived, and one or more relatives). The proposed class definition is not a "fail safe" class, nor is it vague or dependent on subjective criteria, "such as a person's state of mind," *Mullins*, *supra*, at 660. For these reasons the ascertainability prong is satisfied.

### F. The elements of FRCP 23(b)(2)

In addition to the requirements of 23(a), a class action under 23(b)(2) must also be one where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Jefferson* at 896. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes* at 2557. Thus, a Rule 23(b)(2) class can only be certified if "a single injunction or declaratory judgment would provide relief to each member of the class." *Id*. at 2541.

Here, an injunction or declaratory judgment would apply equally to all class members, and no class member would be entitled to any different or individualized relief. *Id*. at 2557. Plaintiff's proposed class seeks to end Defendant's unlawful practice of using any Illinois resident's identity in its Details Pages *prospectively*—it does not seek individual damage awards for anyone based on Defendant's past conduct. Thus, it is a "final" remedy, not "merely [] an evidentiary foundation for subsequent determinations of liability." *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 893 (7th Cir. 2011). When the Court decides the "common questions" outlined in Section 5.B above, the liability of all class members' claims will be

settled. If the Court answers those questions in favor of the Plaintiff and the class, then an injunction prohibiting Defendant's unlawful conduct will be "indivisible [and] benefiting all [] members at once." *Dukes* at 2558.

Additionally, injunctive relief—and by extension, declaratory orders—are specifically contemplated by the IRPA. *See* 765 ILCS 1075/50. This further supports the notion that FCRP 23(b)(2) is appropriate in the context of IRPA class actions. The elements of FRCP 23(b)(2) are met in this case and the Court should certify the class accordingly.

### 6. Class notice is not required and should not be ordered

Because Plaintiff moves for certification under FRCP 23(b)(2), notice to class members is not mandatory. *See Dukes* at 2558-9 ("[FRCP 23](b)(2) does not require that class members be given notice and opt out rights, presumably because it is thought (rightly or wrongly) that notice has no purpose when the class is mandatory, and that depriving people of their right to sue in this manner complies with the Due Process Clause."); *see also In re Allstate Ins. Co.*, 400 F.3d 505, 506-7 (7th Cir. 2005) ("The thinking behind this distinction is that declaratory or injunctive relief will usually have the same effect on all the members of the class as individual suits would…They [] all sink or swim together.").

The Seventh Circuit has observed that while Rule 23 does not categorically forbid notice in 23(b)(2) cases, it is reserved for rare or special circumstances. *See Johnson* at 370 ("[In (b)(2) class actions] notice is not mandatory. And when it is ordered, the purpose usually is to enable class members to challenge the class representatives or otherwise intervene in the suit, rather than to allow them to opt out.") (citing cases); *see also Eubanks v. Billington*, 110 F.3d 87, 93-95 (D.C. Cir. 1997) (finding class notice under 23(b)(2) is rare, but citing cases where "basic

13

fairness," or "fair and efficient conduct," and/or monetary damages counseled in favor of requiring notice.).

Here, there are no circumstances that warrant providing notice to the class if the Court grants Plaintiff's motion to certify. There are no issues of fairness, efficiency, or monetary damages that would justify any such notice. Accordingly, the Court should not order it.

## 7. Conclusion

Based on the foregoing, the Court should certify this case as a class action under FRCP 23(b)(2), appoint Plaintiff Stephanie Lukis as the class representative, and appoint attorneys Roberto Costales and William H. Beaumont as class counsel.

*Respectfully submitted,*

*/s/ Roberto Costales*

Roberto Costales
William H. Beaumont
BEAUMONT COSTALES LLC
107 W. Van Buren #209
Chicago, IL 60605
Telephone: (773) 831-8000
*rlc@beaumontcostales.com*

*Attorneys for Plaintiff*