**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STEPHANIE LUKIS, MANTAS NORVAISAS, and SHAWN BROWN, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | No. 1:19-cv-04871 |
| v. | Judge Gary Feinerman |
| | Mag. Judge Jeffrey Gilbert |
| WHITEPAGES, INC., | |
| Defendant. | |

**WHITEPAGES, INC.'S MEMORANDUM IN SUPPORT**
**OF MOTION TO DISMISS OR TRANSFER UNDER RULES 12(B)(1)-(B)(3)**
**AND 28 U.S.C. § 1404(A) BASED ON LACK OF SUBJECT MATTER JURISDICTION,**
**LACK OF PERSONAL JURISDICTION, AND ARBITRABILITY**

## <u>TABLE OF CONTENTS</u>

**Page**

I.   Factual and procedural background ............................................................... 1

    A.   Access to Whitepages' Web site is governed by Whitepages' Terms of Use, which contain a mandatory arbitration provision ........................... 2

    B.   Plaintiffs' counsel accepted and agreed to be bound as an agent for Plaintiffs ................................................................................................. 4

II.   Argument ..................................................................................................... 6

    A.   The Court should dismiss the case for lack of subject matter jurisdiction ........... 6

    B.   The Court should dismiss the case for lack of personal jurisdiction ..................... 8

    C.   The Court should dismiss or transfer the case as to Norvaisas and Brown based on arbitrability............................................................................. 8

        1.   Legal standards governing motions to dismiss or transfer based on arbitrability and 9 U.S.C. § 4 ................................................................ 8

        2.   The FAA requires enforcement of Whitepages' arbitration agreement............................................................................................... 10

        3.   The Terms delegate the issue of arbitrability to the arbitrator................ 14

III.   Conclusion .................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Carbajal v. H & R Block Tax Servs., Inc.*,
   372 F.3d 903 (7th Cir. 2004) ...............................................................14

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)...............................................................................1

*Ervin v. Nokia, Inc.*,
   812 N.E.2d 534 (Ill. 2004).....................................................................13

*Faulkenberg v. CB Tax Franchise Sys.*,
   637 F.3d 801 (7th Cir. 2011) ..................................................................9

*Figueroa v. Kronos Incorporated*,
   2020 WL 4273995 (N.D. Ill. July 24, 2020)..........................................8

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)...............................................................................10

*Fischer v. Magyar Allamvasutak Zrt*,
   777 F.3d 847 (7th Cir. 2015) ..................................................................9

*Frank v. Gaos*,
   139 S.Ct. 1041 (2019)............................................................................6

*Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*,
   2018 WL 2933608 (N.D. Ill. June 12, 2018).........................................12

*Gundrum v. Cleveland Integrity Servs., Inc.*,
   2017 WL 414491 (W.D. Wisc. Jan. 31, 2017) ......................................10

*Gupta v. Morgan Stanley Smith Barney, LLC*,
   934 F.3d 705 (7th Cir. 2019) ..................................................................5

*Gutierrez v. FriendFinder Networks, Inc.*,
   2019 WL 1974900 (N.D. Cal. May 3, 2019).........................................11

*Hartman v. Lisle Park Dist.*,
   158 F. Supp. 2d 869 (N.D. Ill. 2009) .....................................................13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019).............................................................................15

**TABLE OF AUTHORITIES**
(continued)

*Hunt v. Moore Bros.*,
861 F.3d 655 (7th Cir. 2017) ...................................................9

*Hynan v. XPO Logistics Freight, Inc.*,
2019 WL 1598156 (S.D. Ind. Apr. 15, 2019) ............................9

*IBEW Local 2150 v. NextEra Energy Point Beach, LLC*,
762 F.3d 592 (7th Cir. 2014) .................................................14

*Kontrick v. Ryan*,
540 U.S. 443 (2004) ................................................................7

*Miracle-Pond v. Shutterfly, Inc.*,
2020 WL 2513099 (N.D. Ill. May 15, 2020) .....................10, 11

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ................................................................7

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) ................................................................14

*Spokeo, Inc. v. Robins*,
136 S.Ct. 1540 (2016) ...........................................................6, 7

*Starykowicz v. Int'l Mgmt. Group (UK) Ltd.*,
2014 WL 2514819 (N.D. Ill. June 4, 2014) .............................9

*Tamburo v. Dworkin*,
601 F.3d 693 (7th Cir. 2010) ...................................................8

*Town of Chester v. Laroe Ests., Inc.*,
137 S.Ct. 1645 (2017) .............................................................7

*Treiber & Straub, Inc. v. UPS, Inc.*,
474 F.3d 379 (7th Cir. 2007) .................................................12

*Warth v. Seldin*,
422 U.S. 490 (1975) ................................................................7

**Statutes**

28 U.S.C. § 1404 .............................................................1, 9, 10

Class Action Fairness Act, 28 U.S.C. § 1332(d) ..................2, 6, 7

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page**

Federal Arbitration Act, 9 U.S.C. §§ 3, 4 ............................................................... *passim*

Illinois Right of Publicity Act, 765 ILCS § 1075/1, *et seq.*..............................................2, 6, 7, 14

**Other Authorities**

Fed. R. Civ. P. 12(b)(1).........................................................................................1, 6

Fed. R. Civ. P. 12(b)(2).........................................................................................1, 7, 8

Fed. R. Civ. P. 12(b)(3).........................................................................................1, 7, 10

Fed. R. Civ. P.  23(b) ...........................................................................................7

Defendant Whitepages, Inc. ("Whitepages") moves to dismiss the claims of plaintiffs Stephanie Lukis, Mantas Norvaisas, and Shawn Brown ("Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and the claims of Norvaisas and Brown under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Alternatively, Whitepages moves to dismiss as to Norvaisas and Brown under Fed. R. Civ. P. 12(b)(3) for improper venue or to transfer the case under 28 U.S.C. § 1404, based on arbitrability.[1] With respect to Lukis, the Court recently held that because Whitepages allegedly had "reason to suspect" that she had agreed to the arbitration terms, Whitepages should have "immediately raised the issue by motion," allowing the parties to address arbitration. (ECF 175, the "April 23 Order," pp. 12, 16). Accordingly, Whitepages now so moves as to Norvaisas and Brown.

## I.     Factual and procedural background

After litigating for more than 15 months with only Lukis at the helm, Lukis's counsel sought leave to amend on November 9, 2020, to add claims from Norvaisas and Brown. (ECF 97). More than six months later, the Court granted that motion (*see* April 23 Order, p. 23), and the FAC was filed on April 26, 2021 (more than 21 months after this lawsuit was filed). (ECF 176). The FAC's allegations with respect to Norvaisas and Brown are essentially the same as the allegations with respect to Lukis, which the Court recently held "clearly conveyed that Lukis had personally

---

[1] As explained in greater detail below, Whitepages has moved to dismiss or transfer based on arbitrability because the Terms of Use at issue contain a forum selection clause identifying the U.S. Western District of Washington as the proper forum to hear any disputes related to the arbitration agreement. *See infra* p. 4. Accordingly, this Court lacks authority to compel arbitration or stay this case pending arbitration, meaning the case should be dismissed or transferred. If the case is dismissed and refiled in the U.S. Western District of Washington or transferred, that court would then have the clear authority and the obligation to compel arbitration pursuant to the Federal Arbitration Act. *See* 9 U.S.C. §§ 3, 4 (the "FAA"); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). That said, if the Court is inclined to treat this as a motion to compel arbitration, as it did Whitepages' prior motion (April 23 Order, p. 1), the Court should stay this case while arbitration proceeds.

visited the Whitepages website."[2] (April 23 Order, p. 15). As with Lukis, the FAC alleges that Norvaisas and Brown "discovered that Whitepages uses [their] name, age, city of domicile, and the identity of [their] relatives in advertisements on the Whitepages website" (FAC, ¶¶ 30, 37). Thus, according to the Court, "[i]t is difficult to imagine how [they] might have 'discovered' advertisements on the website without visiting it."[3] (April 23 Order, p. 15).

The FAC asserts subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). The FAC asserts three bases for personal jurisdiction over Whitepages: (1) "Whitepages purposefully subjects itself to jurisdiction in this Court by knowingly searching and obtaining private and public records and/or identifying information on Illinois residents;" (2) "this lawsuit revolves around Whitepages [sic] business practice of acquiring identifying information about Illinois residents with the specific intent of selling that information to its customers;" and (3) "Whitepages directly sells its services to consumers in Illinois." (FAC, ¶¶ 20-21).

A. **Access to Whitepages' Web site is governed by Whitepages' Terms of Use, which contain a mandatory arbitration provision.**

Norvaisas and Brown bring this case under the Illinois Right of Publicity Act, 765 ILCS § 1075/1, *et seq.* ("IRPA"), alleging that Whitepages violated IRPA by using their identities to advertise other products and services. Plaintiffs' claims depend entirely on the use of Whitepages' Web site, which is governed in all respects by Whitepages' Terms of Use. Whitepages owns and operates the Web site www.whitepages.com, which offers public access to an online directory of

---

[2] Whitepages intends to appeal the Court's decision on this issue and has filed a concurrent Notice of Appeal with this memorandum. But in light of the Court's decision, Whitepages is moving now regarding arbitrability as to Norvaisas and Brown.

[3] Whitepages also disagrees with the Court's conclusion on this issue because surfing the Web site is not the only way to learn of it. For instance, Plaintiffs' counsel trolled for potential plaintiffs via Craigslist (*see* ECF 138, p. 5), and might have apprised the named plaintiffs when they responded what happened when their names were searched on www.whitepages.com. Likewise, others might have apprised the named plaintiffs.

information about people.  *See* Declaration of Nadine Thisselle (ECF 90-1, "Thisselle Decl."), at ¶¶ 3-4.[4]  The use of Whitepages' Web site is governed by Whitepages' Terms of Use (the "Terms").  (Thisselle Decl., at ¶ 5 and Ex. 1).  The Terms are an agreement between Whitepages and the user of Whitepages' Web site that "sets forth the legally binding terms for [the user's] access and use of the Services."  (Terms at p. 1).  The Terms also provide that "[e]ach time that you access or use the Services, you signify that you have read, understand, and agree to be bound by these Terms, as well as [Whitepages'] Privacy Policy, which is incorporated by reference herein."  (*Id.*).  The Terms also direct the user, in bold and italic font, to "***take a few minutes and read the Terms of Use agreement that you're entering into, and pay special attention to our dispute resolution policy in Section 12.10 which requires binding arbitration in most circumstances***."  (*Id.*).  That dispute resolution provision provides:

> ANY DISPUTE, CLAIM OR CONTROVERSY BETWEEN YOU AND WHITEPAGES RELATING IN ANY WAY TO THIS AGREEMENT OR YOUR ACCESS TO OR USE OF THE SERVICES OR CONTENT, WHETHER BASED IN CONTRACT, STATUTE, REGULATION, ORDINANCE, TORT (INCLUDING, WITHOUT LIMITATION, FRAUD, MISREPRESENTATION, FRAUDULENT INDUCEMENT, OR NEGLIGENCE), OR ANY OTHER LEGAL OR EQUITABLE THEORY ("DISPUTE"), WILL BE RESOLVED BY BINDING ARBITRATION IF IT CANNOT BE RESOLVED THROUGH NEGOTIATION AS SET FORTH IN THIS SECTION 12.10. ARBITRATION MEANS THAT THE DISPUTE WILL BE RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY. THE ARBITRATOR WILL DECIDE ALL THRESHOLD QUESTIONS, INCLUDING BUT NOT LIMITED TO, ISSUES RELATING TO THE ENFORCEABILITY, REVOCABILITY, OR VALIDITY OF THIS SECTION 12.10 AND WHETHER EITHER PARTY LACKS STANDING TO ASSERT THEIR CLAIM(S).

 (Terms at § 12.10).  Section 12.10 also includes a class action waiver, which provides:

> YOU AND WHITEPAGES EACH WAIVE ALL RIGHTS TO CONDUCT DISPUTE RESOLUTION PROCEEDINGS IN A CLASS ACTION OR CONSOLIDATED ACTION. YOU AND WHITEPAGES EACH AGREE THAT ANY DISPUTE

---

[4] This pleading relies on the Nadine Thisselle declaration filed on October 27, 2020, because the facts set forth in that declaration remain the same.  *See* Second Declaration of Nadine Thisselle, attached as **Exhibit A**, at ¶¶ 3-4.

RESOLUTION PROCEEDINGS WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS, WITH THE SOLE EXCEPTION OF REPRESENTATIVE SUITS THAT ARE PERMITTED BY, AND DEEMED UNWAIVABLE UNDER, STATE LAW. IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN IN ARBITRATION, WE EACH WAIVE ANY RIGHT TO A JURY TRIAL.

(*Id.*).

Further, the Terms are governed by Washington law and the parties consented to the jurisdiction of the U.S. Western District of Washington for claims that are not arbitrable:

If the arbitrator determines this Section 12.10 is unenforceable, invalid, or has been revoked as to any claim(s), then the Dispute as to such claim(s) will be decided by the courts in the state of Washington, King County, or the United States District Court for the Western District of Washington, and the parties irrevocably submit to the exclusive jurisdiction of such courts. If the class action waiver clause is determined to be illegal or unenforceable, this entire Section 12.10 will be unenforceable, and the Dispute will be decided by the courts of the state of Washington, King County, or the United States District Court for the Western District of Washington, and the parties irrevocably submit to the exclusive jurisdiction of such courts.

(*Id.* at §§ 12.1, 12.10).

### B. Plaintiffs' counsel accepted and agreed to be bound as an agent for Plaintiffs.

The Terms are at all times available via a clear and conspicuous hyperlink on Whitepages' Web site, as show in the image below:



(Thisselle Decl., at ¶ 6).  Additionally, users are required to affirmatively assent to the Terms before purchasing a Background Report or signing up for other paid access to Whitepages'

services.  As shown in the image below, users cannot complete any paid transaction on Whitepages' Web site without first checking a box indicating that they "agree to the Terms":



(Thisselle Decl., at ¶ 13).  Because, as reflected in the image above, purchases and paid access are tracked by email address, Whitepages has not yet been able to search for any purchases by Norvaisas and Brown because no discovery has occurred as to them.  If any portion of this case is not dismissed, transferred, or stayed, discovery ought to be limited to the question of arbitrability. *See Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 709-10 (7th Cir. 2019).

All parties and the Court are aware that Plaintiffs' counsel used Whitepages' services in connection with his representation of Lukis (and now of Norvaisas and Brown).  Both Plaintiffs' counsel and the Court have acknowledged that agency is undisputed.  During the December 10, 2020 hearing on Lukis's motion for a protective order related to the deposition of Mr. Costales,

Mr. Costales noted, "We do admit that on July 21st, 2020, plaintiff's counsel agreed to the terms of use produced by Whitepages in the process of opposing defendant's motion for summary judgment." (ECF 131-2 at 12:19-23). Likewise, the Court stated:

> I don't think that there are any open or disputed factual questions that the defendant needs to obtain in a deposition from Mr. Costales that pertains to the agency issue that the defendant raised in its motion to compel arbitration. Even if Mr. Costales hadn't admitted that he went beyond the pay wall for purposes of this case, I think it's pretty clear from the chronology that that's exactly what happened.

(*Id.* 15:22-16:8). Lukis herself also has confirmed Mr. Costales is her agent and that Mr. Costales has authority from Lukis to do whatever he thinks is appropriate to act on her behalf in this case. (Docket Entries 122-3 & 122-4 ("Lukis Dep.") at 249:9-250:3). And the Court acknowledged in its opinion that it is undisputed that "[Mr.] Costales agreed to the website's terms of use" and "that he bound [Lukis] as her agent." (April 23 Order, p. 4). The Court further stated that "[a]s with the arbitration clause, the court accepts as true that Lukis, through Costales's purchase of a Whitepages product, agreed to the forum selection clause." (April 23 Order, p. 18). There is no dispute that Mr. Costales, in his capacity as agent for Plaintiffs, accepted Whitepages' Terms.

## II. Argument

### A. The Court should dismiss the case for lack of subject matter jurisdiction.

The FAC fails to establish subject matter jurisdiction and therefore should be dismissed under Rule 12(b)(1). The FAC asserts CAFA jurisdiction, but Plaintiffs also must have Article III standing. Simply having a potential IRPA claim for statutory damages does not itself confer Article III standing. The Supreme Court "abrogated the [view] that the violation of a statutory right automatically satisfies the injury-in-fact requirement whenever a statute authorizes a person to sue to vindicate that right." *Frank v. Gaos*, 139 S.Ct. 1041, 1046 (2019). No matter the source of a cause of action or whether statutory damages are available, a plaintiff must always demonstrate that she "suffered an injury in fact." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547-48 (2016). To

qualify as injury-in-fact, an injury must be "distinct and palpable." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). It must be "particularized," i.e., it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. And it must be "concrete," i.e., "it must actually exist." *Spokeo*, 136 S.Ct. at 1548. "Abstract injury is not enough." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). When plaintiffs seek to proceed on behalf of a class, courts need to be especially vigilant to ensure that both the plaintiff and every class member has Article III standing "for each claim [the class] seeks to press." *Town of Chester v. Laroe Ests., Inc.*, 137 S.Ct. 1645, 1650 (2017).

Here, Plaintiffs have failed to plead a concrete injury to establish Article III standing over their claims for statutory damages under IRPA. With respect to Lukis,[5] she ***waived*** her claim for damages in her motion for class certification by seeking only Rule 23(b)(2) certification (ECF 162), and at the hearing on March 9, 2021, Plaintiffs' counsel acknowledged concerns about being able to achieve certification of a Rule 23(b)(3) class. *See* Transcript of March 9, 2021 hearing, 12:4-13:7. Moreover, Lukis's claim for injunctive relief is moot because her information is no longer available via the Whitepages Web site. *See* ECF No. 62-1, ¶ 12.

Lukis's abandonment of a damages class is not surprising because Plaintiffs have not pled — and cannot plead — that they and each member of the putative class suffered distinct, particularized, and palpable injuries as a result of Whitepages' alleged conduct that can be remedied in federal court. Plaintiffs' claims are, at best, abstract and constitute nothing more than allegations of technical statutory violations. To the extent Plaintiffs may argue that their claims

---

[5] Although Whitepages has not previously moved on subject matter jurisdiction as to Lukis, "[a] litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). Whitepages removed on July 19, 2019, under CAFA based in part on plausibility of more than $5 million in controversy, but Whitepages learned during Lukis's deposition on January 5, 2021 that she's not seeking actual damages. *See* ECF 121-3, 229:5-14. And Whitepages learned on March 1, 2021 when Lukis filed her motion for class certification that she's not seeking certification of a damages class at all. (ECF 162).

of "emotional distress" are enough to establish subject matter jurisdiction, this Court has reasoned otherwise, finding that a plaintiff lacks standing where "[a]ll he [was] left with [was] a claim that the violation . . . [had] made him *feel* aggrieved" *Figueroa v. Kronos Incorporated*, 2020 WL 4273995, *5 (N.D. Ill. July 24, 2020) (Feinerman, J.) (emphasis in original). Accordingly, the FAC should be dismissed at minimum as to Lukis for lack of subject matter jurisdiction. And the claims of Norvaisas and Brown also should be dismissed for lack of subject matter jurisdiction because the allegations fail to allege concrete harm sufficient to establish Article III standing.

**B.** **The Court should dismiss the case for lack of personal jurisdiction.[6]**

Like Lukis before them, Norvaisas and Brown have failed to plead and cannot make a *prima facie* showing of personal jurisdiction. If in the face of a Rule 12(b)(2) challenge a plaintiff cannot establish a *prima facie* case of personal jurisdiction, the Court may dismiss the case based solely on written materials submitted to the court. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). The arguments for dismissal of the FAC as to Norvaisas and Brown for failure to plead personal jurisdiction are identical to the arguments Whitepages raised with respect to Lukis. *See* ECF 17. Thus, in the interests of efficiency, Whitepages does not repeat those arguments here, but rather incorporates them by reference. *See* ECF 17, at pp. 4-7. For the reasons set forth in that brief, this case should be dismissed for failure to adequately plead personal jurisdiction.

**C.** **The Court should dismiss or transfer the case as to Norvaisas and Brown based on arbitrability.**

**1.** **Legal standards governing motions to dismiss or transfer based on arbitrability and 9 U.S.C. § 4**

Whitepages' Terms require arbitration in Seattle, Washington. (Terms at 12.10). Because

---

[6] Whitepages recognizes that the Court has already found personal jurisdiction over Whitepages for substantially similar claims asserted by Lukis. *See* ECF 37. Whitepages reasserts those arguments here to preserve the issue for appeal.

this Court sits in a district outside of the jurisdiction that the parties selected for dispute resolution, precedent provides that this Court cannot compel arbitration under the FAA. *See, e.g.*, *Faulkenberg v. CB Tax Franchise Sys.*, 637 F.3d 801, 808 (7th Cir. 2011) ("[A] district court cannot compel arbitration outside the confines of its district."). Accordingly, the proper remedy consistent with and pursuant to 9 U.S.C. § 4 is for the Court to dismiss this case under the *forum non conveniens* doctrine and allow Plaintiffs to assert their claims in the proper forum, if they so choose. *See Hunt v. Moore Bros.*, 861 F.3d 655, 657 (7th Cir. 2017) (holding that dismissal was appropriate because a dispute that "belongs in the arbitral forum . . . is analogous to one based on *forum non conveniens*"); *Hynan v. XPO Logistics Freight, Inc.*, 2019 WL 1598156, at *2 (S.D. Ind. Apr. 15, 2019) ("[W]here the appropriate forum is . . . an arbitral forum . . . then the court must dismiss this matter under the common law *forum non conveniens* doctrine"); *Starykowicz v. Int'l Mgmt. Group (UK) Ltd.*, 2014 WL 2514819, *5 (N.D. Ill. June 4, 2014) (granting motion to dismiss on *forum non conveniens* grounds based on parties' forum selection agreement).

Under *forum non conveniens*, a trial court may dismiss a case if it serves the convenience of the parties and the ends of justice. *See Fischer v. Magyar Allamvasutak Zrt*, 777 F.3d 847, 866 (7th Cir. 2015). "When an alternative forum has jurisdiction to hear a dispute, a case can be dismissed if trial in the plaintiff's chosen forum would be more oppressive to the defendant than it would be convenient to the plaintiff or if the forum otherwise creates administrative and legal problems that render it inappropriate." *Id.* at 866. *Forum non conveniens* is the appropriate vehicle to dismiss a case that belongs in an arbitrable forum.

Alternatively, the Court, consistent with 9 U.S.C. § 4, should transfer the case under 28 U.S.C. § 1404(a) to the U.S. Western District of Washington, which was selected by the parties to resolve their non-arbitrable disputes and has the authority to compel arbitration. Section 1404(a)

provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Where a case is pending in a district other than the forum selected by the parties' arbitration agreement, the Court may transfer the case pursuant to Section 1404(a) to the court that has authority to compel arbitration. *See, e.g.*, *Gundrum v. Cleveland Integrity Servs., Inc.*, 2017 WL 414491, *6 (W.D. Wisc. Jan. 31, 2017) (transferring case pursuant to forum selected in arbitration agreement)).

Regardless of whether the Court dismisses based on *forum non conveniens* under Rule 12(b)(3) or transfers under 28 U.S.C. § 1404(a), this motion is brought pursuant to and consistently with 9 U.S.C. § 4 so that arbitration can proceed (if Plaintiffs wish to continue to pursue their claims) in the U.S. Western District of Washington.

### 2. The FAA requires enforcement of Whitepages' arbitration agreement.

Under the FAA, the arbitration provision in Whitepages' Terms is enforceable against Norvaisas and Brown (particularly given the Court's view that it can be presumed from their allegations that they surfed the Whitepages Web site). First, the Court must determine that Whitepages' Terms are a valid and binding agreement between the parties. Federal courts apply state-law principles governing contract formation to determine the existence of an arbitration agreement.[7] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *accord Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, *3 (N.D. Ill. May 15, 2020). Given Plaintiffs'

---

[7] The Terms include a "delegation clause" that provides, "The arbitrator will decide all threshold questions, including but not limited to, issues relating to the enforceability, revocability, or validity of this Section 12.10 and whether either party lacks standing to assert their claims." (Terms at § 12.10.) But the Court must decide whether an agreement to arbitrate exists if the delegation clause does not expressly delegate issues of contract formation to the arbitrator. *See Miracle-Pond*, 2020 WL 2513099, at *3 n.2 (holding that the court was required to address the question of contract formation before deciding to compel arbitration in the face of a similar delegation clause).

domicile in Illinois and presumed access to Whitepages' Web site in Illinois, Illinois law governs the formation of an agreement to arbitrate in this case. Agreements formed on the Internet are analyzed under the same basic "mutual assent" principles that govern general written contracts. The relevant inquiry for contract formation via the Internet is: (1) whether the agreement was adequately communicated by the Web site; and    (2) whether the circumstances support the assumption that the user receives reasonable notice of those terms. *Miracle-Pond*, 2020 WL 2513099, at \*4.

Courts distinguish between "browsewrap" and "clickwrap" agreements that bind users to a site's terms. Browsewrap agreements are formed by the user's navigation or use of the site without any additional step of signing or clicking to "accept" the agreement. *See id.* Browsewrap agreements are enforceable where there is evidence of actual or constructive knowledge of the terms. *Id.* at \*3; *see also Gutierrez v. FriendFinder Networks, Inc.*, 2019 WL 1974900, \*7 (N.D. Cal. May 3, 2019) (granting motion to compel arbitration on browsewrap terms).

In the April 23 Order, the Court found that the language in the complaint describing Lukis's "discovery" of her information on the Web site "clearly conveyed that Lukis had personally visited the Whitepages website" and "all but admitted that Lukis had visited the website." (April 23 Order, pp. 15-16). The FAC uses identical language in describing how Norvaisas and Brown "discovered" their information on the Web site. Accordingly, the Court should conclude that Norvaisas and Brown visited the Web site. In so doing, they would have navigated to a page that made the Terms available, as set forth above. *See supra* p. 5. This should suffice for constructive knowledge, and, at minimum, raises the question of whether Norvaisas and Brown had actual or constructive knowledge of the arbitration provision, meaning the case should proceed no further until this issue is resolved. *See Miracle-Pond*, 2020 WL 2513099, at \*3.

-11-

Clickwrap agreements are formed when a user clicks a button or checks a box that explicitly affirms acceptance to the terms. *Id.* Courts routinely enforce clickwrap agreements as modern-day agreements demonstrating clear notice of terms and manifestation of consent to those terms. *See Treiber & Straub, Inc. v. UPS, Inc.*, 474 F.3d 379, 382 (7th Cir. 2007) ("As is common in Internet commerce, one signifies agreement by clicking on a box on the screen."). Courts hold that terms and conditions available by hyperlink — as Whitepages does on its Web site — constitute reasonable notice. *See e.g., Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, 2018 WL 2933608, *5 (N.D. Ill. June 12, 2018).

Once a user purchases a product or service from Whitepages, a clickwrap agreement is made, and that is the case for Mr. Costales. Under Illinois state-law principles, Mr. Costales accepted and agreed to be bound by the arbitration provision in Whitepages' Terms. On at least two occasions, Mr. Costales purchased products from Whitepages that required Mr. Costales to click a button affirming his acceptance and consent to Whitepages' terms. (Thisselle Decl., ¶¶ 15-17). In both instances, Mr. Costales accepted Whitepages' Terms ***after*** acknowledging that he reviewed the Terms "in detail" and ***after*** Whitepages served its Amended Answer asserting the affirmative defense of arbitrability based on the Terms. (ECF 77-1 at ¶ 7; ECF 59 at p. 21-22). Thus, Mr. Costales indisputably manifested his assent to be bound by Whitepages' Terms and his awareness of the arbitration provision in those Terms.

Mr. Costales's acceptance of the Terms binds Norvaisas and Brown because they chose to retain Mr. Costales (who should have raised this issue). Mr. Costales has already conceded, and the Court has acknowledged, agency as to Lukis. *See supra* pp. 5-6. Just as Mr. Costales is Lukis's agent, he is an agent for Norvaisas and Brown. "Agency is a consensual, fiduciary relationship between two legal entities created by law, where the principal has the right to control the activities

of the agent and the agent has the power to conduct legal transactions in the name of the principal." *Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 539 (Ill. 2004). Attorneys are considered agents for their client. *Hartman v. Lisle Park Dist.*, 158 F. Supp. 2d 869, 876-77 (N.D. Ill. 2009).

Norvaisas and Brown are obligated to arbitrate their claims against Whitepages because Mr. Costales was acting as the agent for his putative class representative clients (including Norvaisas and Brown) when he agreed to be bound by Whitepages' Terms.[8] Mr. Costales admitted in a declaration dated only two days after his purchase of two products from Whitepages that, "**as part of [his] investigation in this matter** [he] personally interacted with Defendant's website, Whitepages.com," and "reviewed in detail the terms of use." (ECF 77-1 at ¶¶ 2, 7) (emphasis added). And that investigation took place approximately seven weeks after Mr. Costales received Whitepages' Amended Answer notifying him that Whitepages was asserting an affirmative defense of arbitrability (ECF 59) and months before Norvaisas and Brown were proposed as new plaintiffs. When Mr. Costales twice clicked a box on Whitepages' Web site to indicate his agreement to be bound by Whitepages' Terms, he bound his clients as well.

Even if the Court were to conclude that Norvaisas and Brown are not bound to the Terms by a browsewrap agreement and that they are not bound via agency, discovery may further demonstrate that Norvaisas and Brown personally interacted with the Whitepages Web site and accepted the Terms. Accordingly, if the Court does not dismiss, transfer, or stay, it should allow the parties to "focus [ ] on the arbitration question—including by conducting any necessary

---

[8] Notably, in opposing Whitepages' arbitrability motion as to Lukis, Plaintiffs did ***not*** dispute agency, as acknowledged by the Court. *See* April 23 Order, at p. 4. Moreover, although the Court suggests in the April 23 Order that it is "dubious" that Mr. Costales's use of the Web site would subject Lukis's claims to arbitration because her claims accrued before the litigation began (*Id.* at p. 4), those doubts should not be a factor here, given that Mr. Costales's acceptances of the Terms occurred well before Norvaisas and Brown appeared in this case.

-13-

discovery—before broaching substantive issues in the case." (April 23 Order, pp. 16-17).

### 3. The Terms delegate the issue of arbitrability to the arbitrator.

Plaintiffs' claims fall within the scope of Whitepages' arbitration agreement and must be submitted to arbitration. The arbitration provision in the Terms governs, in relevant part: "ANY DISPUTE, CLAIM OR CONTROVERSY…RELATING IN ANY WAY TO THIS AGREEMENT OR YOUR ACCESS OR USE OF [WHITEPAGES] SERVICE OR CONTENT." (Terms at § 12.10). The Seventh Circuit has frequently recognized the broad scope of similarly worded arbitration provisions. *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 904-05 (7th Cir. 2004) ("It would be hard to draft a broader [arbitration] clause."). Plaintiffs' claims under IRPA depend entirely on the "access or use" of Whitepages' site. They allege that IRPA is violated when Whitepages displays a "free preview" of their personal information on its Web site and allows users to purchase other products or services from that preview. (FAC at ¶¶ 8-12.) As a result, the plain language of Whitepages' Terms covers Plaintiffs' claims in this action.[9]

Moreover, to the extent that Plaintiffs contest the enforceability of the arbitration agreement or that their IRPA claims fall within its scope (which their counsel did not do with respect to Lukis), resolution of those disputes is for the arbitrator. Under the FAA, "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). The Supreme Court has instructed that when an arbitration agreement "clearly and unmistakably" contains a "delegation provision" — i.e., a clause delegating "threshold issues" of arbitrability to the arbitrator — "the FAA operates on this

---

[9] If there were any doubts concerning the scope of the arbitrable issues, which there aren't, the FAA requires that ambiguities be resolved in favor of arbitration. *IBEW Local 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014).

additional arbitration agreement just as it does any other." *Id.* at 68-70 & n.1 (quotation omitted). In other words, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019).

The delegation clause in Whitepages' arbitration provision is almost identical to the one that the Supreme Court enforced in *Jackson*. There, the agreement provided that "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Jackson*, 561 U.S. at 66. Here, the arbitration provision provides that "THE ARBITRATOR WILL DECIDE ALL THRESHOLD QUESTIONS INCLUDING BUT NOT LIMITED TO, ISSUES RELATING TO THE ENFORCEABILITY, REVOCABILITY, OR VALIDITY OF THIS SECTION 12.10 AND WHETHER EITHER PARTY LACKS STANDING TO ASSERT THEIR CLAIMS." (Terms at § 12.10). As a result, the Court should dismiss or transfer this case so that the appropriate court can compel arbitration if Plaintiffs contend that claims are not arbitrable or that the arbitration agreement is unenforceable.

## III. Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the claims of Lukis, Norvaisas and Brown for lack of subject matter jurisdiction, dismiss the claims of Norvaisas and Brown for failure to adequately plead personal jurisdiction, or dismiss or transfer the claims of Norvaisas and Brown based on the forum selection clause and arbitration provision in Whitepages' Terms. If the Court treats this Motion as a motion to compel arbitration, Defendant respectfully requests that the Court stay the case to allow arbitration to proceed. To the extent the case is not dismissed, transferred, or stayed, Defendant respectfully requests that the Court limit discovery to the arbitration issue and Norvaisas and Brown.

-15-

Dated:  May 4, 2021                     Respectfully submitted,

                                          WHITEPAGES, INC.

                                          By:    */s/ Blaine C. Kimrey*
                                                 One of its attorneys

Blaine C. Kimrey – bkimrey@vedderprice.com
Bryan K. Clark – bclark@vedderprice.com
Jonathon P. Reinisch – jreinisch@vedderprice.com
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
(312) 609-7500

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2021, a copy of the foregoing was electronically filed in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system.

*/s/ Blaine C. Kimrey*
Blaine C. Kimrey
