UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE LUKIS, MANTAS NORVAISAS, and SHAWN BROWN, individually and on behalf of all others similarly situated, | )<br>)<br>) 19 C 4871<br>) |
| Plaintiffs, | ) Judge Gary Feinerman<br>) |
| vs. | )<br>) |
| WHITEPAGES INCORPORATED, | )<br>) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

Stephanie Lukis brought this putative class action against Whitepages Inc. in the Circuit Court of Cook County, alleging violations of the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq*. Doc. 1-1. Whitepages removed the suit under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Doc. 1. Last year, the court denied Whitepages's motion to dismiss for failure to state a claim and lack of personal jurisdiction, Docs. 36-37 (reported at 454 F. Supp. 3d 746 (N.D. Ill. 2020)), and later denied its motions for reconsideration, leave to appeal, and summary judgment, Docs. 87-88 (reported at 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020)). Earlier this year, the court denied Whitepages's motion to compel arbitration of or transfer Lukis's claim and granted Lukis's motion to amend the complaint to add two new plaintiffs, Mantas Norvaisas and Shawn Brown. Docs. 174-175 (reported at __ F. Supp. 3d __, 2021 WL 1600194 (N.D. Ill. Apr. 23, 2021)). Following that ruling, Plaintiffs filed an amended complaint joining Norvaisas and Brown, Doc. 176, and Whitepages invoked § 16(a)(1) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1), to appeal the denial of its motion to arbitrate Lukis's claim, Doc. 181. *See Lukis v. Whitepages Inc.*, No. 21-1798 (7th Cir.).

1

Several motions are before the court. First, Whitepages moves to dismiss all Plaintiffs' claims under Civil Rule 12(b)(1) for lack of standing. Doc. 182. Second, Whitepages moves to dismiss the claims of Norvaisas and Brown under Rule 12(b)(2) for lack of personal jurisdiction. *Ibid*. Third, Whitepages moves to dismiss the claims of Norvaisas and Brown based on an arbitration provision in its Terms of Use or to transfer those claims to the Western District of Washington under 28 U.S.C. § 1404(a) based on a forum selection clause in the Terms. *Ibid*. Finally, Whitepages moves to stay the litigation entirely pending its appeal or, in the alternative, to stay the litigation as to Lukis and limit proceedings on the claims of Norvaisas and Brown to the issue of whether they agreed to arbitrate their claims. Doc. 184. Whitepages moved for a protective order pending the outcome of those motions, Doc. 189, which the court granted in part, limiting discovery (other than certain merits discovery ordered weeks earlier) to arbitrability issues. Doc. 193 (reported at 2021 WL 2012238 (N.D. Ill. May 20, 2021)).

Whitepages's motion to stay the litigation is granted as to Lukis but denied as to Norvaisas and Brown, though discovery will remain limited to arbitrability issues. Whitepages's motions to dismiss based on standing and personal jurisdiction are denied. The court defers ruling on Whitepages's motion to compel arbitration of or transfer the claims of Norvaisas and Brown pending further proceedings on whether they agreed to Whitepages's Terms of Use, and thus to the arbitration provision and forum selection clause.

**Background**

The court assumes familiarity with its prior opinions and reviews the general factual background, which for purposes of the pending motions is undisputed, only briefly. Whitepages operates a website that sells background reports on people. Doc. 76 at ¶¶ 1, 6. Searching the website for a person's name reveals free information tied to that name. *Id*. at ¶ 4. Whitepages

offers more detailed reports for a fee, which it promotes by inviting users to purchase them when viewing a free preview. *Id*. at ¶ 5; Doc. 80 at ¶¶ 20, 29. The complaint alleges that Whitepages violated the IRPA by using Plaintiffs' identities to promote the sale of its paid reports. Doc. 176 at ¶¶ 52-58; *see* 765 ILCS 1075/30(a) ("A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent … ."); *id*. § 1075/5 (defining "commercial purpose" to include "advertising or promoting products, merchandise, goods, or services"). The court will review additional relevant facts as needed in the discussion that follows.

## Discussion

**I.  Motion to Stay**

The court begins with Whitepages's motion to stay, as that motion implicates the court's ability to address the other pending motions. As noted, Whitepages moves to stay this litigation in its entirety based on its appeal of decision denying arbitration of Lukis's claim, or, in the alternative, to stay Lukis's claim and limit proceedings on the claims of Norvaisas and Brown to the question whether they agreed to arbitrate their claims. Doc. 184 at 1; Doc. 185 at 6, 8.

The motion is granted as to Lukis's claim. A notice of appeal under § 16(a) of the FAA "divests the district court of the power to proceed with the aspects of the case that have been transferred to the court of appeals." *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997). There is an exception to this rule: "Either the court of appeals or the district court may declare that the appeal is frivolous, and if it is the district court may carry on with the case." *Ibid*. Lukis opposes a stay of her claim, arguing that Whitepages's appeal is frivolous. Doc. 199 at 1-2.

In the sanctions context, and so in this context as well, "[a]n appeal is frivolous 'when the result is obvious or when the appellant's argument is wholly without merit.'" *BLET GCA UP v.*

3

*Union Pac. R.R. Co.*, 988 F.3d 409, 414 (7th Cir. 2021) (quoting *Arnold v. Villarreal*, 853 F.3d 384, 389 (7th Cir. 2017)). Although the court believes that it correctly denied Whitepages's motion to compel arbitration of Lukis's claim, it hesitates to say that the result was "obvious" or that Whitepages's views were "wholly without merit." Specifically, while it was straightforwardly plain that Whitepages waived its right to arbitrate Lukis's claim through its lengthy and unjustified delay in moving to compel arbitration, the threshold question—whether the parties may or did delegate to the arbitrator the issue of waiver through litigation conduct— was complex, even if the answer was ultimately clear under the FAA and relevant precedents. 2021 WL 1600194, at *3-6. Lukis's claim is therefore stayed pending Whitepages's appeal, and the rest of this opinion addresses only the claims of Norvaisas and Brown.

Norvaisas's and Brown's claims will move forward in this court. There is no question that their claims remain properly within this court's jurisdiction, as the claims do not fall within the "aspects of the case involved in [Whitepages's] appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *cf. Wis. Mut. Ins. Co. v. United States*, 441 F.3d 502, 505 (7th Cir. 2006) (holding that, in a case where multiple litigants intend to file notices of appeal, the filing of an appeal by one litigant does not divest the district court of jurisdiction over the claims involving the other litigants). Analogously, when a district court enters partial final judgment as to one party under Rule 54(b) and an appeal is taken, there is no question that proceedings continue as to the remaining parties before the district court. *See Doe v. City of Chicago*, 360 F.3d 667, 673 (7th Cir. 2004) ("[W]henever there are multiple parties, an order that finally resolves a party's liability is eligible to be made final, and therefore appealable, under Rule 54(b), though the case continues in the district court between the other parties.").

4

In seeking a stay of Norvaisas's and Brown's claims, Whitepages argues that a stay would be more efficient because all three Plaintiffs ultimately intend to move together for class certification. Doc. 185 at 7-8; *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). This argument falters because, as explained below, arbitrability issues concerning the claims of Norvaisas and Brown must be addressed through further proceedings. So the quickest route to "simplify the issues in question and streamline the trial," *In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012), is to work toward resolving those arbitrability issues while Whitepages's appeal pends before the Seventh Circuit.

That said, and by the same token, the court grants Whitepages's request to limit the proceedings to matters concerning arbitrability, absent further court order or the parties' agreement. Indeed, the court already limited discovery on the claims of Norvaisas and Brown in that manner. 2021 WL 2012238, at *2. That limit will remain in place.

**II.    Standing**

A federal court has subject matter jurisdiction over a claim only if the plaintiff has Article III standing to bring it. *See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019). "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that

5

is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560).

A challenge to standing "can take the form of a facial or a factual attack on the plaintiff's allegations." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) (citing *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009)). Whitepages mounts only a facial attack on the claims of Norvaisas and Brown, arguing that they "have failed to plead a concrete injury to establish Article III standing." Doc. 183 at 12. Whitepages thus "tests whether the [complaint's] allegations, taken as true, support an inference that the elements of standing exist." *Bazile*, 983 F.3d at 279.

In evaluating a facial attack on standing, the court must "accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, __ F.4th __, 2021 WL 2644219, at *2 (7th Cir. June 28, 2021). Norvaisas and Brown allege that they discovered that Whitepages used their identities in advertisements, that they never provided consent for Whitepages to do so, that this use caused them emotional distress, and that they do not want Whitepages to use their identities for any commercial purpose. Doc. 176 at ¶¶ 30, 32, 34, 36, 37, 39, 41, 43. Whitepages argues that those alleged injuries "are, at best, abstract and constitute nothing more than … technical statutory violations." Doc. 183 at 12.

To be concrete, the plaintiff's injury "must be *de facto*; that is, it must actually exist," meaning that it must be "real, and not abstract." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks omitted). Both "tangible" and "intangible" injuries, even those that are "difficult to prove or measure," can be concrete. *Id*. at 1549. An "intangible harm" constitutes an injury in fact if it "has a close relationship to a harm that has traditional been regarded as providing a basis for a

lawsuit in English or American courts." *Ibid*.; *see also ibid*. (stating that "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure"). That historical inquiry "asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, __ (2021). For example, in *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020) (Barrett, J.), the Seventh Circuit held that "unwanted text messages can constitute a concrete injury-in-fact" because "[t]he common law has long recognized actions at law against defendants who invaded the private solitude of another by committing the tort of 'intrusion upon seclusion.'" *Id*. at 462-63 (citing *Restatement (Second) of Torts* § 652B (ALI 1977)).

Violations of the IRPA are an easy case under the governing test. The common law recognized a "right of publicity," also called the "appropriation of likeness" tort. *Douglass v. Hustler Mag., Inc.*, 769 F.2d 1128, 1138 (7th Cir. 1985) (referring to "the commercial-appropriation branch of the right of privacy—what is sometimes called the 'right of publicity,'" meaning "the right to prevent others from using one's name or picture for commercial purposes without consent"); *see also Restatement (Second) of Torts* § 652C (ALI 1977) ("One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy."). The IRPA codified that common law tort, providing that "[t]he right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity," 765 ILCS 1075/10, and that "[t]he rights and remedies provided for in this Act are meant to supplant those available under the common law," *id*. § 1075/60. Indeed, when introducing the IRPA in the Illinois General Assembly, its sponsor stated: "[W]hat this legislation does is it codifies the common law right of publicity in Illinois." H.R. Journal, 90th Gen. Assemb., Reg. Sess. 224, 225 (Ill. Apr. 24,

1997). Given this backdrop, the Seventh Circuit and the Appellate Court of Illinois unsurprisingly have recognized the continuity between the common law and the IRPA. *See Dancel v. Groupon, Inc.*, 949 F.3d 999, 1009 (7th Cir. 2019) ("[T]he IRPA has supplanted the common law right of publicity."); *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. 2006) ("To allege a statutory claim of appropriation of likeness under the [IRPA], one must set forth essentially the same three elements that were required for a common-law claim of appropriation of likeness.").

It necessarily follows, under the analysis articulated in *Spokeo* and recently reiterated in *TransUnion*, that an IRPA violation inflicts a concrete injury-in-fact under Article III. This defeats Whitepages's facial attack on Norvaisas's and Brown's standing. (As noted, Whitepages removed the suit under CAFA. Doc. 1. The amended complaint invokes CAFA as well, Doc. 176 at ¶ 3, and its class allegations convey an intent to seek certification of a Rule 23(b)(3) class with Norvaisas and Brown as lead plaintiffs, *id*. at ¶¶ 47 (alleging predominance), 49 (alleging superiority).)

### III. Personal Jurisdiction

Whitepages next argues that the court lacks personal jurisdiction over Whitepages as to the claims of Norvaisas and Brown. Doc. 183 at 13. As Whitepages recognizes, the court rejected a materially identical argument as to Lukis's claim, 454 F. Supp. 3d at 756-60, and so Whitepages reasserts the defense "to preserve the issue for appeal," Doc. 183 at 13 n.6. As explained in the court's prior ruling, exercising personal jurisdiction over Whitepages does not violate due process because "Whitepages purposefully directed its activities towards Illinois; [Norvaisas's and Brown's] alleged injuries arise from its forum-related activities; and exercising personal jurisdiction over it would not offend traditional notions of fair play and substantial justice." 454 F. Supp. 3d at 757. The court adheres to that ruling here.

**IV.     Arbitration Provision and Forum Selection Clause**

Whitepages moves to dismiss or transfer the suit based on certain dispute resolution provisions set forth in the Terms of Use on its website. Doc. 183 at 13-20. Those provisions include an arbitration clause, which states in relevant part: "ANY DISPUTE, CLAIM OR CONTROVERSY BETWEEN YOU AND WHITEPAGES RELATING IN ANY WAY TO THIS AGREEMENT OR YOUR ACCESS TO OR USE OF THE SERVICES OR CONTENT … WILL BE RESOLVED BY BINDING ARBITRATION IF IT CANNOT BE RESOLVED THROUGH NEGOTIATION … ." Doc. 90-1 at p. 14, § 12.10. The provisions also include a forum selection clause directing any non-arbitrable "Dispute"—as "Dispute" is defined in the Terms—to "the courts in the state of Washington, King County, or the United States District Court for the Western District of Washington." *Ibid*.

Before proceeding, the court pauses to consider the appropriate way to understand Whitepages's arbitration motion. In denying Whitepages's motion to compel arbitration of Lukis's claim, the court cited *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008), for the proposition that the motion was properly viewed as a motion to compel arbitration and stay the judicial proceedings. 2021 WL 1600194, at *1. Whitepages takes issue with that characterization, arguing that where, as here, the potential arbitration is to take place outside the judicial district, the district court cannot compel arbitration and instead must dismiss the suit for improper venue under Rule 12(b)(3). Doc. 183 at 14.

There is precedent to support both positions. In *Halim*, the Seventh Circuit affirmed an Illinois district court's decision to compel arbitration and stay the judicial proceedings, reasoning that "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." 516 F.3d at 561. The parties' arbitration agreement in *Halim* directed that the arbitration take place in Georgia, *see Halim v. Great Gatsby's Auction*

9

*Gallery, Inc.*, No. 03 C 8414 (N.D. Ill.), ECF No. 3 at 6 ("[T]he subject agreement … contains a binding arbitration provision that states that all disputes between Halim and Gatsby must be resolved through binding arbitration and such arbitration will be held in Atlanta, Georgia."), so *Halim* supports the view that a district court can compel arbitration and stay the case regardless of the arbitral locale. Other decisions support the contrary view that a Rule 12(b)(3) dismissal is the appropriate course when the arbitral locale is outside the district. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011) ("[W]e have held that a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district."); *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005) ("The district court ultimately dismissed this case because the [agreements] required arbitration in other districts. … [W]e have held that such dismissal properly is requested under Rule 12(b)(3).") (citations omitted).

The Supreme Court's decision in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013), appears to resolve the dispute in favor of *Halim* and against *Faulkenberg* and *Continental Casualty*. A key premise of *Faulkenberg* was that "a motion to dismiss based on a contractual arbitration clause is appropriately 'conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).'" *Faulkenberg*, 637 F.3d at 807 (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007)). But *Atlantic Marine* made clear that only federal venue laws, and not contractual forum selection clauses, govern whether venue is proper in a particular district: "Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper'

10

depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." 571 U.S. at 55. *Atlantic Marine* thus casts substantial doubt on decisions, like *Faulkenberg*, that are premised on the notion that arbitration and forum selection clauses affect the propriety of venue and thus fall within the writ of Rule 12(b)(3) and 28 U.S.C. § 1406(a). *Cf. Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 890 (7th Cir. 2020) (rejecting a party's argument that a motion invoking an arbitration provision must be brought under Rule 12(b)(3), and holding that the "motion to compel arbitration was in substance a motion under § 4 of the FAA," though the arbitration agreement did not indicate any arbitral locale).

Regardless of how to properly style Whitepages's arbitration motion, circumstances make it appropriate to defer resolving the motion. Section 2 of the FAA states, in relevant part:

> A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 2 "mandates enforcement of valid, written arbitration agreements," *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002), and "embodies both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract," *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quotation marks omitted). That said, "because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Ibid.* (internal quotation marks omitted). Accordingly, "[u]nder the FAA, arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017).

Courts "evaluate agreements to arbitrate under the same standards as any other contract," *Tinder*, 305 F.3d at 733, which include "all general principles of state law," *Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787, 791 (7th Cir. 2013). In particular, "[t]o determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore*, 666 F.3d at 1032; *see also Faulkenberg*, 637 F.3d at 809 ("Whether the parties have validly agreed to arbitrate is governed by state-law principles of contract formation."). Whitepages argues that Illinois law governs the issue of contract formation, Doc. 183 at 16, and Norvaisas and Brown do not dispute that assertion, Doc. 198 at 4, so the court will apply Illinois law.

Whitepages presents two grounds for finding that Norvaisas and Brown assented in a contractual sense to its Terms of Use and thus to the arbitration provision. The first ground starts with the fact that in July 2020, Plaintiffs' counsel—Roberto Costales—purchased a Whitepages product and clicked through the Terms while researching Lukis's opposition to Whitepages's summary judgment motion. Doc. 131-2 at 13 (12:19-23). At that time, Lukis was the only plaintiff, and the motion to add Norvaisas and Brown as plaintiffs would not be filed until months later, in early November 2020. Doc. 97. Whitepages nonetheless argues that Costales's actions in July 2020 bound Norvaisas and Brown to the Terms because Costales "was acting as the agent for his putative class representative clients (including Norvaisas and Brown) when he agreed to be bound by Whitepages' Terms." Doc. 183 at 18. Norvaisas and Brown counter that they were not clients of Costales in July 2020, Doc. 198 at 2, and Costales avers that he had not even made their acquaintance at that time, Doc. 198-1 at ¶¶ 2-3.

Norvaisas and Brown have the better of this argument. Before class certification, there is no class and no class counsel. *See Daniels v. Bursey*, 430 F.3d 424, 428 (7th Cir. 2005) ("Since

a class was never certified, appellants were not members of a class, and therefore could not be bound [by a settlement agreement]."); *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002) ("[U]ntil certification there is no class action but merely the prospect of one; the only action is the suit by the named plaintiff[]."). Putative class counsel therefore does not represent absent members of the putative class or act as their agent. *See* ABA Formal Op. 07-445 (2007) ("Before the class has been certified by a court, the lawyer for plaintiff will represent one or more persons with whom a client-lawyer relationship clearly has been established. As to persons who are potential members of a class if it is certified, however, no client-lawyer relationship has been established."). Any contrary rule would have absurd consequences, allowing attorneys to ratify contracts on behalf of hundreds, thousands, or even millions of people just by filing a class action complaint.

In its reply brief, Whitepages substantially shifts gears, arguing that Norvaisas and Brown impliedly ratified all past actions of Costales when they agreed to become his clients and putative class representatives. Doc. 207 at 10-11. That argument is doubly forfeited. First, it appears initially in a reply brief. *See O'Neal v. Reilly*, 961 F.3d 973, 974 (7th Cir. 2020) ("[W]e have repeatedly recognized that district courts are entitled to treat an argument raised for the first time in a reply brief as waived."); *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited."). Second, Whitepages cites no Illinois authority addressing when a principal is bound by the past acts of an agent—and, in particular, by acts taken before the agency relationship even arose—which also forfeits the point. *See Williams v. Bd. of Educ. of Chi.*, 982 F.3d 495, 511 (7th Cir. 2020) ("[P]erfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

Whitepages's second ground for contract formation is that Norvaisas's and Brown's own actions in browsing its website assented to the Terms of Use, and thus to the arbitration provision, because they "would have navigated to a page that made the Terms available." Doc. 183 at 16. The complaint's allegations plainly suggest that Norvaisas and Brown visited the Whitepages website. Doc. 176 at ¶¶ 10, 30, 37. And Whitepages presents evidence that the bottom of every webpage contains a link to the Terms. Doc. 90-1 at ¶ 6.

The question here is whether those facts demonstrate that Norvaisas and Brown assented to the Terms. "Formation of a contract requires mutual assent in virtually all jurisdictions; Illinois courts use an objective approach to that question." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). The inquiry is an objective one, measured from the perspective of "a reasonable person in [the consumer's] shoes." *Id.* at 1035. In terminology some courts have adopted, Whitepages asserts that Norvaisas and Brown entered into "'browsewrap' agreements," which can form when companies "post terms and conditions on a website via a hyperlink at the bottom of the screen" and a person browses the website. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).

Determining whether an internet user has agreed to online terms of service is "a fact-intensive inquiry." *Sgouros*, 817 F.3d at 1034-35. Determining whether a user entered into a browsewrap agreement is especially fact-dependent: "Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of a browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011). Accordingly, as Whitepages suggests, the

proper course is to allow further factual development via discovery concerning Norvaisas's and Brown's use of and activity on the Whitepages website. Doc. 183 at 18-19; Doc. 207 at 13-14.

Section 4 of the FAA anticipates the possibility of factual disputes as to contract formation, providing: "If the making of the arbitration agreement … be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see Deputy v. Lehman Bros.*, 345 F.3d 494, 509-10 (7th Cir. 2003) ("Section 4 … required the court to hold a trial if the making of the arbitration agreement was in issue."); *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, __ (9th Cir. 2021) ("[O]nce a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved."). The court therefore will defer ruling on Whitepages's arbitrability motion pending further proceedings on whether Norvaisas and Brown entered into an agreement to arbitrate. *See Gupta v. Morgan Stanley Smith Barney, LLC*, 2018 WL 2130434, at *3 (N.D. Ill. May 9, 2018) (adopting this procedural approach).

For the same reasons, a ruling on Whitepages's alternative request to transfer the claims of Norvaisas and Brown to the Western District of Washington pursuant to the forum selection clause would also be premature. The forum selection clause can bind Norvaisas and Brown only if they ratified the Terms. *See Atlantic Marine*, 571 U.S. at 62 ("*When the parties have agreed to a valid forum-selection clause*, a district court should ordinarily transfer the case to the forum specified in that clause.") (emphasis added). Because contract formation remains unresolved, the question whether the forum selection clause in fact covers Norvaisas's and Brown's claims is not properly before the court.

Granted, in a prior ruling, the court held that Lukis's IRPA claim is not a "Dispute" covered by the forum selection clause. 2021 WL 16001944, at *10. Unlike Norvaisas and Brown, however, Lukis conceded contract formation, so to resolve whether her suit should be transferred pursuant to the forum selection clause, the court had to determine whether her claim qualified as a "Dispute" within the meaning of the clause. The present motion does not yet present that question because contract formation remains unresolved.

Before concluding, it bears mention that today's result is wholly consistent with the court's denial of Whitepages's motion to compel arbitration of Lukis's claim without allowing for further discovery on contract formation. *Id*. at *7. As just noted, Lukis did not challenge contract formation; rather, as to arbitration, she argued only that Whitepages had waived its right to compel arbitration. Doc. 103 at 1-4. There was thus no possible need for further discovery on the question whether Lukis had assented to the arbitration provision in the Terms of Use.

**Conclusion**

Whitepages's motion to stay pending its appeal is granted as to Lukis's claim and denied as to the claims of Norvaisas and Brown, though litigation on those claims will be limited for the time being to arbitrability issues. Whitepages's motions to dismiss the claims of Norvaisas and Brown based on standing and personal jurisdiction are denied. The court defers ruling on Whitepages's motions based on the arbitration provision and forum selection clause, pending further proceedings on the issue of contract formation between Whitepages, on the one hand, and Norvaisas and Brown, on the other.

July 16, 2021 _____
United States District Judge