IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FATIMA BUTLER and JULIA SCHOLZ-PINGER, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>   v.<br><br>WHITEPAGES, INC.,<br><br>                      Defendant. | Case No. 19-cv-04871<br><br>Hon. Gary S. Feinerman |

**SECOND AMENDED
CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Fatima Butler and Julia Scholz-Pinger ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Whitepages, Inc. ("Whitepages" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

**THE PARTIES**

1.     Plaintiff Fatima Butler is a citizen of Illinois who resides in Chicago, Illinois.

2.     Plaintiff Julia Scholz-Pinger is a citizen of Ohio who resides in Bellbrook, Ohio.

3.     Defendant Whitepages, Inc. is a Delaware corporation with its principal place of business located in Seattle, Washington. Defendant owns and operates the website www.whitepages.com.

1

**JURISDICTION AND VENUE**

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiffs, together with most members of the proposed class, are citizens of states different from Whitepages.

5.     This Court has personal jurisdiction over Defendant because Defendant transacts significant business in this District, misappropriate the identities of people that it knows reside in this District, and because the events giving rise to the cause of action alleged in this complaint resulted from Defendant's contacts with this District.

6.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

**COMMON FACTUAL ALLEGATIONS**

7.     Despite its name, Defendant Whitepages is not affiliated with the once-popular print telephone directory promulgated by AT&T.

8.     Rather, Defendant owns and operates a website that sells "background reports" on people to the general public.

9.     Defendant sells its reports on its website: www.whitepages.com.

10.    Upon accessing Whitepages' website, the public-at-large is free to enter the first and last name of a particular individual via a search bar on the homepage.

11.    After entering this information, any public user of Whitepages' website is provided with a listing of search results. Each search result corresponds to an actual person that Whitepages has located who matches the name provided by the public user.

12. These search results provide a limited, free preview of Defendant's "background reports." This free preview includes the searched individual's name (including middle initials), age range, alleged phone number, current address, the "previous locations" where the searched individual has lived, and other identifying information:

13. Whitepages' free preview provides enough information to identify an individual.

14. The purpose behind Whitepages' free preview is singular: to entice users to purchase Defendant's services. These services include "background reports" and "histories" relating to individuals on its database.

15. Whitepages uses these free previews to advertise its monthly subscription services whereby a user can access and retrieve "background reports" and "histories" on any individual in its database.

16. In order for a user to view a person's "background report" or other background "histories" generated by Defendant, a user needs to purchase Defendant's services. Clicking any of the blue highlighted links on Whitepages' free preview page (e.g., links that say "view results" or "get their background check" or "continue to results" or "view all relatives" or "criminal records") leads users to a pay screen which presents them with an option to pay for Whitepages' monthly subscription services.

17. Whitepages' monthly subscription ranges in cost from $4.99 to $19.99 per month to access and search anyone on its database.

18. Whitepages' monthly subscription allows users to obtain background reports using Whitepages' services on between 20 and 200 different individuals per month, depending on subscription cost.

19. Whitepages compiles and generates the content it sells on its website. According to Whitepages: "we work with over 100 different data providers worldwide and ingest over two billion records a month into our internal database, enabling us to provide a robust search that we have within our products."

20. Neither Plaintiffs nor any member of the Classes (defined below) provided Defendant with written consent to use their identities in Defendant's advertisements. As detailed above, Whitepages uses Plaintiffs' and the Classes' identities to advertise its for-profit services. Thus, Defendant violates the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1, *et seq.* and Ohio's Right of Publicity Law, Ohio Revised Code Sec. 2741.01, *et seq.*

21. It would be extremely easy for Whitepages to maintain its business model while still complying with state law. For example, Whitepages could merely display the names of the searched individuals—without more identifying information—in its advertisements for its services.

22. Whitepages purposefully subjects itself to jurisdiction in this Court by knowingly searching and obtaining private and public records and/or identifying information on Illinois residents with the specific intent of selling that information to its customers. Whitepages also knowingly searches for and obtains private and public records and/or identifying information on Ohio residents with the specific intent of selling that information to its customers.

23. Additionally, Whitepages does, in fact, directly sell its services to consumers in Illinois and Ohio.

## THE PLAINTIFFS' EXPERIENCES

24. Plaintiff Butler discovered that Whitepages uses her name, age, city of domicile, and the identity of her relatives in advertisements on the Whitepages website to advertise and/or

4

actually sell Defendant's products and services. These advertisements were the same or substantially similar to those described in Paragraph 12.

25. Plaintiff Butler believes that it is reasonable for others to identify her because Defendant's advertisements include accurate details about her.

26. Plaintiff Butler never provided Whitepages with written consent to use any attribute of her identity in any advertisement or for any commercial purposes.

27. Plaintiff Butler is not and has never been a Whitepages customer. She has no relationship with Whitepages whatsoever.

28. Plaintiff Butler has not been compensated by Whitepages in any way for its use of her identity.

29. Plaintiff Butler does not want Whitepages to use her identity for any commercial advertising purpose.

30. Like Plaintiff Butler, Plaintiff Scholz-Pinger discovered that Whitepages uses her name, age, and the identity of her relatives in advertisements on the Whitepages website to advertise and/or actually sell Defendant's products and services. These advertisements are the same or substantially similar to those described in Paragraph 12.

31. Plaintiff Scholz-Pinger believes that it is reasonable for others to identify her because Defendant's advertisements include accurate details about her.

32. Plaintiff Scholz-Pinger never provided Whitepages with written consent to use any attribute of her identity in any advertisement or for any commercial purposes.

33. Plaintiff Scholz-Pinger is not and has never been a Whitepages customer. She has no relationship with Whitepages whatsoever.

34. Plaintiff Scholz-Pinger has not been compensated by Whitepages in any way for its use of her identity.

35. Plaintiff Scholz-Pinger does not want Whitepages to use her identity for any commercial advertising purpose.

## CLASS ACTION ALLEGATIONS

36. Plaintiffs bring this action on behalf of themselves and two Classes (collectively the "Classes").

37. Plaintiff Butler seeks to represent a class defined as: All individuals with a primary Illinois residential address whose individual detail pages were displayed on Whitepages.com in response to a search on the website and whose names were clicked on between May 7, 2019 and January 27, 2022 where the searcher during that same site visit purchased a subscription (the "Illinois Class").

38. Plaintiff Scholz-Pinger seeks to represent a class defined as: All individuals with a primary Ohio residential address whose individual detail pages were displayed on Whitepages.com in response to a search on the website and whose names were clicked on between May 7, 2019 and January 27, 2022, where the searcher during that same site visit purchased a subscription (the "Ohio Class")

39. Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

40. The persons in the Classes are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

41. Common questions of law and fact exist as to all members of the Illinois Class and as to all members of the Ohio Class, and those questions predominate over questions affecting only individual members of the respective Classes. Common legal and factual questions include, but are not limited to:

   a. Whether Whitepages uses class members' names and identities in advertisements for its own commercial benefit;

   b. Whether the conduct described herein constitutes a violation of the Illinois Right of Publicity Act 765 ILCS 1075/1, *et seq.*;

   c. Whether the conduct described herein constitutes a violation of Ohio Revised Code Sec. 2741.01, *et. seq.*; and

   d. Whether Plaintiffs and the Classes are entitled to injunctive relief.

42. The claims of the named Plaintiffs are typical of the Classes. Plaintiffs will fairly and adequately represent and protect the interests of the respective Classes, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

43. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Judicial economy will be served by maintaining this lawsuit as a class action because it avoids the burden which would otherwise be placed upon the judicial system by the filing of numerous similar suits. A class action is also superior because the damages suffered

7

by individual class members are relatively small and because the burden upon such individual litigants may make it difficult and impractical for them to pursue their claims against Defendant.

44.     There are no obstacles to effective and efficient management of this lawsuit as a class action by this Court.

**FIRST CAUSE OF ACTION**
**Violation of the Illinois Right of Publicity Act 765 ILCS 1075/1, *et seq.***
**(On behalf of Plaintiff Butler and the Illinois Class)**

45.     Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

46.     Plaintiff Butler brings this claim individually and on behalf of the members of the Illinois Class.

47.     The Illinois Right of Publicity Act prohibits using a person's name, photograph, image, or likeness for the purpose of advertising or promoting products, merchandise, goods, or services without written consent. See 765 ILCS 1075/1, *et seq*.

48.     As described above, Whitepages used Plaintiff Butler's and the Illinois Class members' names and likenesses for the purpose of advertising or promoting its products without written consent.

49.     Defendant intended for Plaintiff Butler's identity to be used in an advertisement without authorization.

50.     Based upon Whitepages' violation of the Illinois Right of Publicity Act, Plaintiff Butler and the Illinois Class members are entitled to (1) an injunction requiring Whitepages to cease using Plaintiff Butler's and Illinois Class members' names and any attributes of their identities to advertise its products and services, (2) the greater of any award of actual damages (including profits derived from the unauthorized use of Plaintiff Butler's and the Illinois Class

8

members' names and identities) or statutory damages of $1,000 per violation to Plaintiff Butler and the Illinois Class members, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees under 765 ILCS 1075/40-55.

## SECOND CAUSE OF ACTION
### Violation of Ohio Revised Code Sec. 2741.01, *et. seq.*
### (On behalf of Plaintiff Scholz-Pinger and the Ohio Class)

51. Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

52. Plaintiff Scholz-Pinger brings this claim individually and on behalf of the members of the Ohio Class.

53. Ohio Revised Code Sec. 2741.01, *et. seq.*, prohibits using an individual's name for advertising or soliciting the purchase of products or services without written consent.

54. As described above, Whitepages used Plaintiff Scholz-Pinger's and the Ohio Class members' names and likenesses for the purpose of advertising or promoting its products without written consent.

55. As the subject of a commercial transaction, the aspects of Plaintiff Scholz-Pinger's persona that Whitepages uses to advertise its product have commercial value. Consumers regularly pay Defendant for this personally identifiable information.

56. Plaintiff Scholz-Pinger is domiciled in Ohio.

57. Defendant had knowledge that Plaintiff Scholz-Pinger's persona was being used in an advertisement without authorization.

58. Based upon Whitepages' violation of Ohio Revised Code Sec. 2741.01, *et. seq.*, Plaintiff Scholz-Pinger and the Ohio Class members are entitled to (1) an injunction requiring Whitepages to permanently cease using Plaintiff Scholz-Pinger's and Ohio Class members' names

and any attributes of their identities to advertise its products and services, (2) statutory damages in an amount between $2,500 and $10,000 per violation to Plaintiff Scholz-Pinger and the Ohio Class members, (3) an award of punitive damages or exemplary damages, and (4) an award of reasonable attorney's fees, court costs, and reasonable expenses under Ohio Revised Code Sec 2741.07.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request that the Court enter an Order:

1. Certifying the class as defined above under Federal Rule of Civil Procedure 23(b)(2) and (3), appointing Fatima Butler as class representative of the Illinois Class, appointing Julia Scholz-Pinger as class representative of the Ohio Class, and appointing their counsel as class counsel;

2. Declaring that Whitepages' actions described herein constitute a violation of the Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq.*, and Ohio Revised Code Sec. 2741.01, *et. seq.*;

3. Awarding injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, prohibiting Whitepages from engaging in the wrongful and unlawful acts described herein;

4. Awarding the greater of actual damages, including the profits derived from the unauthorized use of the Illinois Class's names and identities, or statutory damages in the amount of $1,000 per violation of the Illinois Class's rights under the Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq.*;

5. Awarding statutory damages in an amount between $2,500 and $10,000 per violation of the Ohio Class's rights under Ohio Revised Code Sec. 2741.01, *et. seq.*;

6. Awarding punitive damages where applicable;

7. Awarding Plaintiffs and the Classes their reasonable litigation expenses and attorney's fees;

8. Awarding Plaintiffs and the Classes pre- and post-judgment interest; and

9. Granting such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues for which a jury trial is allowed.

Respectfully submitted,

**FATIMA BUTLER and JULIA SCHOLZ-PINGER**, individually and on behalf of all others similarly situated,

Dated: April 28, 2022

By: /s/ J. Eli Wade-Scott
  One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Ari J. Scharg
ascharg@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Philip L. Fraietta
pfraietta@bursor.com
Julian C. Diamond (*Pro Hac Vice* Forthcoming)
jdiamond@bursor.com
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163

Roberto L. Costales, Esq.
rlc@beaumontcostales.com
William H. Beaumont, Esq.
whb@beaumontcostales.com
BEAUMONT COSTALES LLC
107 W. Van Buren, Suite 209
Chicago, Illinois 60605
Telephone: (773) 831-8000