**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| FATIMA BUTLER and JULIA SCHOLZ-PINGER, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 19-cv-04871 |
| v. | Hon. Gary S. Feinerman |
| WHITEPAGES, INC., | |
| Defendant. | |

**PLAINTIFFS' MOTION FOR AND MEMORANDUM IN SUPPORT OF
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ..........................................2

        A.      The Illinois and Ohio Right of Publicity Acts .......................................2

        B.      Plaintiffs' Allegations ..............................................................................4

        C.      Litigation, Negotiation, and Settlement ................................................5

III.    TERMS OF THE SETTLEMENT AGREEMENT ...........................................8

        A.      Class Definitions ......................................................................................8

        B.      Settlement Payments ................................................................................8

        C.      Prospective Relief ....................................................................................9

        D.      Payment of Settlement Notice and Administrative Costs .................10

        E.      Payment of Attorneys' Fees, Costs, and Incentive Award ...............10

        F.      Release of Liability ................................................................................10

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIEFD FOR
        SETTLEMENT PURPOSES ..............................................................................11

        A.      The Numerosity Requirement is Satisfied ..........................................12

        B.      Common Issues of Fact and Law Predominate ..................................12

        C.      The Typicality Requirement is Satisfied .............................................14

        D.      The Adequacy Requirement is Satisfied .............................................15

        E.      A Class Action is a Superior Method of Resolving the Controversy ..............19

        F.      The Class is Ascertainable ....................................................................22

V.      PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .....23

VI.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
        APPROVAL ........................................................................................................24

**A.**      **Plaintiffs Fatima Butler and Julia Scholz-Pinger and Proposed Class Counsel Have Adequately Represented the Settlement Class** ........................25

**B.**      **The Settlement was Reached as a Result of Arm's Length Negotiations Between the Parties** ...................................................................................31

**C.**      **The Settlement Treats all Settlement Class Members Equally** .....................33

**D.**      **The Relief Secured for the Settlement Class Is Adequate and Warrants Approval** .................................................................................................34

        **1.**      **The cost, risk and delay of further litigations compared to the Settlement's benefits favors final approval** .............................................34

        **2.**      **The method of distributing relief to the Illinois and Ohio Settlement Class Members is effective and supports preliminary approval** ......................................................................................37

        **3.**      **The terms of the requested attorneys' fees are reasonable** .................38

        **4.**      **The individual dismissals of Lukis, Brown, Novarisas, and Kolebuck-Utz have no effect on the relief made available to Settlement Class Members** .............................................................39

**VII.**   **THE PROPOSED NOTICE PLAN SHOULD BE APPROVED IN FORM AND IN SUBSTANCE** ...........................................................................................41

**VIII.**  **CONCLUSION** .........................................................................................43

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...................................................................................11, 22

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
    568 U.S. 455 (2013)..........................................................................................11

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..........................................................................................41

*Frank v. Gaos*,
    139 S. Ct. 1041 (2019).....................................................................................28

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)..........................................................................................33

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)..........................................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..........................................................................................12

**United States Appellate Court Cases**

*Arreola v. Godinez*,
    546 F.3d 788 (7th Cir. 2008) ..........................................................................11

*Beaton v. SpeedyPC Software*,
    907 F.3d 1018 (7th Cir. 2018) ........................................................................15

*Bell v. PNC Bank, Nat'l Ass'n*,
    800 F.3d 360 (7th Cir. 2015) ..........................................................................12

*ETW Corp. v. Jireh Pub., Inc.*,
    332 F.3d 915 (6th Cir. 2003) ............................................................................3

*Fraley v. Batman*,
    638 F. App'x 594 (9th Cir. 2016) ...................................................................29

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ..........................................................................24

*Golan v. FreeEats.com, Inc.*,
   930 F.3d 950 (8th Cir. 2019) ............................................................36

*Gomez v. St. Vincent Health, Inc.*,
   649 F.3d 583 (7th Cir. 2011) ...........................................................23

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ...........................................................24

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) .......................................................20

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...........................................................28

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) .......................................11, 21, 22, 23

*Retired Chi. Police Ass'n v. City of Chi.*,
   7 F.3d 584 (7th Cir. 1993) ...............................................................16

*Spano v. The Boeing Co.*,
   633 F.3d 574 (7th Cir. 2011) ...........................................................15

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) .....................................................13, 22

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ...........................................................25

*Williams v. Rohm & Haas Pension Plan*,
   658 F.3d 629 (7th Cir. 2011) ...........................................................38

**United States District Court Cases**

*Adkins v. Facebook, Inc.*,
   No. 18-cv-05982-WHA (N.D. Cal.) .....................................................2

*Alvarado v. Int'l Laser Prods., Inc.*,
   No. 18-cv-7756 (N.D. Ill. Jan. 24, 2020) ........................................38

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ...........26

*Backowski v. PeopleConnect, Inc.*,
   No. 21-cv-00115 (W.D. Wash.) .......................................................35

*Barnes v. Air Line Pilots Ass'n, Int'l,*
   310 F.R.D. 551 (N.D. Ill. 2015) ................................................................ 12, 20

*Bernal v. NRA Grp. LLC,*
   318 F.R.D. 64 (N.D. Ill. 2016) ........................................................... 19, 21, 22

*Boelter v. Hearst Commc'ns, Inc.,*
   269 F. Supp. 3d 172 (S.D.N.Y. 2017) ............................................................. 18

*Breeden v. Benchmark Lending Grp., Inc.,*
   229 F.R.D. 623 (N.D. Cal. 2005) ................................................................... 20

*Calderon v. GEICO Gen. Ins. Co.,*
   279 F.R.D. 337 (D. Md. 2012) ...................................................................... 20

*Camacho v. TruthFinder, LLC, et al.,*
   No. 3:21-cv-01957 (S.D. Cal.) ....................................................................... 35

*Charvat v. Valente,*
   No. 12-cv-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ....................... 31

*Cornejo v. Amcor Rigid Plastics USA, LLC,*
   No. 1:18-cv-07018 (N.D. Ill. Sept. 10, 2020) ............................................... 38

*Coulter-Owens v. Rodale, Inc.,*
   1:14-cv-12688-RHC-RS (E.D. Mich. Sept. 29, 2016) ..................................... 30

*Dixon v. Washington & Jane Smith Cmty.-Beverly,*
   No. 17-cv-8033 (N.D. Ill. Aug. 20, 2019) ..................................................... 34

*Dobrowolski v. Intelius, Inc.,*
   No. 17-cv-1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018) ....................... 35

*Ebin v. Kangadis Food Inc.,*
   297 F.R.D. 561 (S.D.N.Y. 2014) .................................................................... 17

*Fischer, et al. v. Instant Checkmate LLC,*
   No. 19-cv-04892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ............... *passim*

*Fraley v. Facebook, Inc.,*
   966 F. Supp. 2d 939 (N.D. Cal. 2013) ....................................................... 2, 29

*Gaul v. Truth Now LLC,*
   No. 1:21-cv-01314 (C.D. Ill.) ....................................................................... 35

*Goldsmith v. Tech. Sols. Co.*,
  No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ..........................................34

*Gumm v. Ford*,
  No. 5:15-cv-41-MTT, 2019 WL 479506 (M.D. Ga. Jan. 17, 2019) ..................................25

*Halaburda v. Bauer Publ'g Co., LP*,
  2:12-cv-12831 (E.D. Mich. Jan. 6, 2015) ..........................................................................30

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018).....................................25

*Higgins v. TV Guide Magazine, LLC*,
  No. 15-cv-13769 (E.D. Mich. Dec. 5, 2018) ......................................................................9

*Hudson v. Libre Tech., Inc.*,
  No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. 2020) ................................35

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010)...................................................................................24, 27

*In re AT & T Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011)................................................................................36

*In re Facebook Biometric Info. Priv. Litig.*,
  522 F. Supp. 3d 617 (N.D. Cal. 2021) ..........................................................................9, 30

*In re Google Buzz Priv. Litig.*,
  No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011)...................................28

*In re Google LLC Street View Elec. Commc'ns Litig.*,
  No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)............................2

*In re Relafen Antitrust Litig.*,
  218 F.R.D. 337 (D. Mass. 2003).......................................................................................20

*In re Toyota Motor Corp. Unintended Acceleration Mktg. Litig.*,
  No. 8:10ML 02151 JVS, 2013 WL 3224585 (C.D. Cal. 2013) .........................................37

*Kaufman v. Am. Express Travel Related Servs., Co.*,
  No. 07-CV-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016)............................................27

*Kinder v. Meredith Corp.*,
  1:14-cv-11284 (E.D. Mich. Oct. 5, 2015) .........................................................................30

*Kolebuck-Utz v. Whitepages Inc.*,
No. 21-cv-00053 (W.D. Wash.)................................................................. *passim*

*Kolebuck-Utz v. Whitepages Inc.*,
No. C21-0053-JCC, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021)......................14, 20

*La Fronza v. PeopleConnect, Inc.*,
No. 21-cv-00280 (N.D. Ill.) ................................................................................35

*Lopez-McNear v. Superior Health Linens, LLC*,
No. 19-cv-2390 (N.D. Ill. Apr. 27, 2021) ....................................................33, 38

*Lukis v. Whitepages, Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020) ................................................................35

*Martinez v. Nando's Rest. Grp., Inc.*,
No. 19-cv-07012 (N.D. Ill. Oct. 27, 2020) ........................................................33

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*,
1:15-cv-05671 (S.D.N.Y. Mar. 6, 2019)............................................................29

*Moeller v. American Media, Inc.*,
No. 16-cv-11367 (E.D. Mich. Sept. 28, 2017) ....................................................9

*Muir v. Nature's Bounty (DE), Inc.*,
No. 15 C 9835, 2018 WL 3647115 (N.D. Ill. Aug. 1, 2018) ...........................14

*Osada v. Experian Info. Sols., Inc.*,
290 F.R.D. 485 (N.D. Ill. 2012)........................................................................16

*Pawelczak v. Fin. Recovery Servs., Inc.*,
286 F.R.D. 381 (N.D. Ill. 2012)........................................................................19

*Perez v. Rash Curtis & Associates*,
No. 4:16-cv-03396, 2021 WL 4503314 (N.D. Cal. Oct. 1, 2021) ....................18

*Perlin v. Time Inc.*,
No. 16-cv-10635 (E.D. Mich. Oct. 15, 2018) ..................................................30

*Poulos v. Caesars World, Inc.*,
No. CV-S-94-1126-RLH-RJJ, 2002 WL 1991180 (D. Nev. June 25, 2002)....................21

*Quiroz v. Revenue Prod. Mgmt., Inc.*,
252 F.R.D. 438 (N.D. Ill. 2008)........................................................................16

*Raden v. Martha Stewart Living Omnimedia, Inc., et al.*,
    No. 16-cv-12808 (E.D. Mich. July 17, 2019) ....................................................9

*Ramirez v. GLK Foods, LLC*,
    No. 12-C-210, 2014 WL 2612065 (E.D. Wis. June 11, 2014) .........................................20

*Rowe v. E.I. DuPont de Nemours & Co.*,
    No. CIV. 06-1810 RMB/AMD, 2011 WL 3837106 (D.N.J. Aug. 26, 2011)....................40

*Ruppel v. Consumers Union of United States, Inc.*,
    No. 16-cv-02444 (S.D.N.Y. Dec. 4, 2018) ........................................................9

*Schulte v. Fifth Third Bank*,
    No. 09-CV-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) .......................................32

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................37

*Snyder v. Ocwen Loan Servicing, LLC*,
    No. 14 c 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ...............................25, 26, 32

*Starr v. Chi. Cut Steakhouse*,
    75 F. Supp. 3d 859 (N.D. Ill. 2014) .................................................................16

*Taylor v. Trusted Media Brands, Inc.*,
    No. 16-cv-01812 (S.D.N.Y. Feb. 1, 2018).........................................................30

*Tedesco v. Mishkin*,
    689 F. Supp. 1327 (S.D.N.Y. 1988)..................................................................20

*Thome v. NOVAtime Tech., Inc.*,
    No. 19-cv-6256 (N.D. Ill. Mar. 8, 2021).............................................................9

*Toney v. Quality Res., Inc.*,
    323 F.R.D. 567 (N.D. Ill.)...............................................................................22

*Wright v. Nationstar Mortg. LLC*,
    No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016).........................................31

*Young v. Rolling in the Dough, Inc.*,
    No. 1:17-CV-07825, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020) ...............................27, 32

*Ziemack v. Centel Corp.*,
    163 F.R.D. 530 (N.D. Ill. 1995).......................................................................15

*Zuniga v. Bernalillo Cnty.*,
    319 F.R.D. 640 (D.N.M. 2016) ..................................................................20

**State Appellate Court Cases**

*Trannel v. Prairie Ridge Media, Inc.*,
    987 N.E.2d 923 (Ill. App. Ct.) ...................................................................4

**State Circuit Court Cases**

*Kusinski v. ADP LLC*,
    No. 2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) ...................................9

*Prelipceanu v. Jumio Corp.*,
    2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) ...............................9, 39

*Sekura v. L.A. Tan Enters., Inc.*,
    No. 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) ...................................9

*Svagdis v. Alro Steel Corp.*,
    No. 2017-CH-12566 (Cir. Ct. Cook Cnty.) ....................................................39

*Zepeda v. Intercontinental Hotels Grp., Inc.*,
    No. 2018-CH-02140 (Cir. Ct. Cook Cnty.) ....................................................39

**Miscellaneous Authority**

1 NEWBERG ON CLASS ACTIONS
    § 3:56 (5th ed. 2011) .................................................................................23

2 NEWBERG ON CLASS ACTIONS
    § 4:72 (5th ed. 2011) .................................................................................21

4 NEWBERG ON CLASS ACTIONS
    § 13:1 (5th ed. 2011) .................................................................................24
    § 13:53 (5th ed. 2011) ...............................................................................37
    § 13:55 (5th ed. 2011) ...............................................................................39

5 NEWBERG ON CLASS ACTIONS
    § 15:83 (5th ed. 2011) ...............................................................................39

28 U.S.C. § 1292 ...........................................................................................5, 31

28 U.S.C. § 1715 ...............................................................................................43

740 ILCS 14 ......................................................................................................30

765 ILCS 1075 ................................................................................................ *passim*

Fed. R. Civ. P. 23 ......................................................................................... *passim*

R.C. § 2741 .................................................................................................. *passim*

Diana Novak Jones, *Illinois Powerhouse: Edelson PC*,
        Law360 (Aug. 28, 2018), https://www.law360.com/articles/1076447/illinois-
        powerhouse-edelson-pc ................................................................................ 17

Diana Novak Jones, *Illinois Powerhouse: Edelson PC*,
        Law360 (October 5, 2017), https://edelson.com/wp-content/uploads/2016/05/Illinois-
        Powerhouse-Edelson-PC.pdf ....................................................................... 17

*Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*,
        Federal Trade Commission (Sept. 2019), available at
        https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-
        retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf 11 ......28

Grace Dixon Hanson, *Class Action Group Of The Year: Edelson*,
        Law360 (Dec. 3, 2020), https://www.law360.com/articles/1328395/class-action-group-
        of-the-year-edelson ......................................................................................17

Joyce Hanson, *Cybersecurity & Privacy Group Of The Year: Edelson*,
        Law360 (Dec. 8, 2020), https://www.law360.com/articles/1327009/cybersecurity-
        privacy-group-of-the-year-edelson ...............................................................17

Lauraann Wood, *Illinois Powerhouse: Edelson*,
        Law360 (Sept. 3, 2019), https://www.law360.com/articles/1193728/illinois-powerhouse-
        edelson ........................................................................................................ 17

*Law360 Names Practice Groups of the Year*,
        Law360 (Nov. 29, 2020), https://www.law360.com/articles/1327476/law360-names-
        practice-groups-of-the-year.........................................................................17

## I.     INTRODUCTION

Plaintiff Fatima Butler and Plaintiff Julia Scholz-Pinger (together, the "Plaintiffs"), on behalf of the Illinois and Ohio Settlement Classes defined below, request that the Court grant preliminary approval to their class-wide Settlement reached with Defendant Whitepages, Inc. ("Defendant" or "Whitepages").[1] This case—like numerous other pending class action lawsuits against "people search" websites that utilize "free preview" advertising—alleges that Whitepages' website generates free preview ads of background reports on individuals in violation of Illinois' and Ohio's state right of publicity statutes. Just as the issues and rulings in this litigation have laid the groundwork for the similar cases that have followed, the proposed Settlement likewise sets a high bar for any future class settlements in these cases by providing meaningful monetary and injunctive relief for all Settlement Class members.

Leveraging the substantial efforts made by plaintiffs Stephanie Lukis, Shawn Brown, Mantas Norvaisas, Angela Kolebuck-Utz, and their attorneys—which included successive Rule 12 motion practice, a motion for summary judgment, written and oral discovery, and a formal mediation session with the Honorable Sidney I. Schenkier (Ret.) of JAMS—the Parties have reached a settlement that, if approved, would set a strong precedent for class settlements in cases like this one. Whitepages has agreed to pay $4,072,640 total into two non-reversionary Settlement Funds, which will be distributed to two settlement classes: an Illinois Settlement Class comprised of 30,211 individuals, and an Ohio Settlement Class comprised of 28,642 individuals (together, the "Settlement Classes"). Each Settlement Class Member who files a valid Claim Form will be entitled to a *pro rata* share of the respective Illinois or Ohio Settlement Funds, which, assuming a claims rate of 10 to 20%, will amount to payments of approximately

---

[1]     The capitalized terms used in this motion are those used in the Class Action Settlement Agreement (the "Settlement" or "Agreement"), attached hereto as Exhibit 1.

$125–$245 to each Illinois Settlement Class Member and $315–$630 to each Ohio Settlement Class Member, after costs and any fees are deducted.

Compared against other privacy cases, this Settlement provides an exceptional amount of monetary relief to Class Members. Many privacy cases have historically been settled for very little meaningful monetary relief, if any is provided to the class at all. *E.g.*, *In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11-14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA, Dkts. 350, 369 (N.D. Cal. May 6, 2021 and July 13, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs). Indeed, before this case, the only other statutory right of publicity class action settlement provided a scant $15 payment to claiming class members, and—like the cases identified above—reserved the remainder for a *cy pres* distribution. *See Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013).

Given the relief proposed by the Settlement Agreement, the Court should not hesitate to find that the Settlement is well within the range of possible approval. Accordingly, Plaintiffs respectfully request that the Court grant their motion for preliminary approval in its entirety, certify the proposed Settlement Classes, appoint their attorneys as Class Counsel, direct that the proposed Notice be disseminated to the Settlement Classes, and set a Final Approval Hearing.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Illinois and Ohio Right of Publicity Acts.

The Illinois Right of Publicity Act ("IRPA") establishes that "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having

obtained previous written consent" from that individual. 765 ILCS 1075/30(a). The statutory

definition of "identity" includes "any attribute of an individual that serves to identify that

individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii)

signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS 1075/5. A

"commercial purpose," in turn, is "the public use or holding out of an individual's identity,"

which can be "(i) on or in connection with the offering for sale or sale of a product, merchandise,

goods, or services" or "(ii) for purposes of advertising or promoting products, merchandise,

goods, or services." *Id.* In passing the IRPA, the Illinois legislature codified the common law tort

of "appropriation of likeness," providing that "[t]he right to control and to choose whether and

how to use an individual's identity for commercial purposes is recognized as each individual's

right of publicity." 765 ILCS 1075/10.

     The central issue of liability under the Ohio Right of Publicity Act ("ORPA") is

essentially the same. R.C. § 2741.02 ("a person shall not use any aspect of an individual's

persona for a commercial purpose … [without] first obtain[ing] … written consent."). The only

material difference is that the ORPA requires a plaintiff's misappropriated persona to have

"commercial value." *See* R.C. § 2741.01(A). Like the IRPA, the ORPA reflects the state

legislatures codification of the common law tort. *ETW Corp. v. Jireh Publ'g Inc.*, 332 F.3d 915,

954 (6th Cir. 2003) (Clay, C.J. dissenting) (discussing history of the ORPA).

     Both statutes feature similar recovery provisions. Under the IRPA, an individual may

obtain actual damages, profits flowing from a defendant's use of his or her identity, or $1,000.

765 ILCS 1075/40. The ORPA provides a statutory minimum payment of $2,500 and allows for

damages up to $10,000, in the event of willful violations or instances of severe reputational

harm. *See* R.C. § 2741.07(A)(1)(b). Neither statute ties its statutory damages provision to an

independent showing of out-of-pocket loss. In a non-celebrity publicity case (i.e., where a plaintiff might opt to recover actual damages or profits flowing from the use of his or her identity), then, the likely recovery for any individual plaintiff is the statutory minimum. *See, e.g.*, *Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 932 (Ill. App. Ct.) (awarding statutory minimums and explaining that to recover profits under the IRPA, a plaintiff must prove the claimed profits are "directly attributable" to the defendant's use of the plaintiff's identity).

### B. Plaintiffs' Allegations.

The Plaintiffs' IRPA and ORPA claims rely on the same alleged factual premise. Whitepages operates a "people search" website at whitepages.com. When a visitor to the site performs a search, Whitepages returns a list of matched results, which include specific, identifying information on people in its databases. When any of these search results are clicked, a user is taken to a more detailed, "free preview" page specific to a single individual. These detailed pages, in turn, encourage users to obtain more information on the searched-for individual by purchasing additional products or services—such as a "premium" membership (which allows paying users to obtain information beyond what is provided in the free previews) and a "Smart Check Background Report" (which also provides additional information on the searched-for individual).

The claims brought under the IRPA and ORPA similarly allege that Whitepages' use of the Plaintiffs' and other users' identities to solicit purchases on the website violates the IRPA, which prohibits the "use an individual's identity for commercial purposes . . . without having obtained previous written consent," 765 ILCS 1075/30(a); and the ORPA, which similarly prohibits the "use [of] any aspect of an individual's persona for a commercial purpose . . . [without] first obtain[ing] . . . written consent," R.C. § 2741.02.

4

### C.    Litigation, Negotiation, and Settlement

On June 20, 2019, Stephanie Lukis filed her putative class action complaint against Whitepages in the Circuit Court of Cook County, Illinois, alleging that Whitepages' website violated the IRPA. The case was timely removed by Whitepages to this Court. (Dkt. 1.)

Whitepages then moved to dismiss, contending, *inter alia*, that the Court lacked personal jurisdiction over it, that the IRPA did not apply to the free previews used on its website (or that Whitepages was otherwise exempt under the Act's various exceptions), that the content on its website was protected speech under the First Amendment, and that the claim was barred by Section 230 of the Communications Decency Act. (Dkts. 16, 17.) After full briefing, (Dkts. 24, 25), the Court denied the motion in full on April 16, 2020, (Dkt. 37).

On August 8, 2020, Whitepages moved the Court (i) to reconsider its April 16, 2020 Order denying Whitepages' motion to dismiss (Dkt. 40), (ii) for leave to appeal pursuant to 28 U.S.C. § 1292(b) (Dkt. 43), and (iii) to stay the proceedings during the pendency of its motion for reconsideration and/or appeal, (Dkt. 46). The motion to stay was denied, but the motions to reconsider and for leave to appeal were briefed, (Dkts. 53, 58), and taken under advisement, (Dkt. 60). Three weeks later, Whitepages moved for summary judgment (Dkt. 61), and shortly thereafter, moved to stay the litigation until its summary judgment motion was resolved, (Dkt. 70). The Court denied the motion to stay and took the motion for summary judgment under advisement. (Dkt. 71.)

The Parties then began conducting significant discovery, which included the production of thousands of pages of documents, a two-day deposition of Stephanie Lukis, and four depositions of Whitepages' personnel. (*See* Dkts. 154, 191.) During that time, the Parties also

filed and briefed three motions to compel discovery (Dkts. 106, 127, 136), and a motion for discovery-related sanctions, (Dkt. 149).

On October 27, 2020, the Court denied Whitepages' motion to reconsider, its motion for leave to appeal, and its motion for summary judgment. (Dkt. 88.) That same day, Whitepages filed a motion to dismiss or transfer based on arbitrability. (Dkt. 89.) That motion was also fully briefed, (Dkts. 90, 103, 109), taken under advisement on March 9, 2021, (Dkt. 166), and denied on April 23, 2021, (Dkt. 174). Plaintiff Lukis then filed an amended complaint on April 26, 2021, which added Shawn Brown and Mantas Norvaisas as additional plaintiffs to this action. (Dkt. 176.)

On May 4, 2021, Whitepages filed a notice of its appeal of the Court's April 23, 2021 Order pursuant to 9 U.S.C. §§ 16(a)(1)(A) and (B), (Dkt. 181), along with a renewed motion to dismiss the complaint for lack of jurisdiction, (Dkt. 182), and a motion to stay, (Dkt. 184). The Court granted in part, and denied in part, the motion to stay two weeks later, and the Parties continued conducting discovery on the issue of arbitrability. (Dkt. 193.)

Around this same time, parallel litigation against Whitepages was proceeding in the Western District of Washington, in the matter captioned *Kolebuck-Utz v. Whitepages, Inc*., No. 21-cv-00053 (W.D. Wash.). That case, like this one, concerned Whitepages' "free preview" advertising, alleging that it violated Ohio's right of publicity law, R.C. § 2741.01, *et seq. See generally Kolebuck-Utz*, No. 21-cv-00053, Dkt. 1 (W.D. Wash. Jan. 15, 2021). Whitepages moved to dismiss that lawsuit on February 25, 2021, generally relying on the same theories and arguments raised in this case. *Id.* at Dkt. 12. The motion was fully briefed and denied on April 22, 2021. *Id.* at Dkts. 12, 13, 15, 18.

6

In July 2021, the Parties began exploring the possibility of a global settlement addressing both the instant action and the *Kolebuck-Utz* matter.[2] To facilitate their discussions, the Parties agreed to formally mediate the case with the Honorable Sidney Schenkier (Ret.) of JAMS. (*See* Dkt. 217, ¶ 1.) Over the course of those proceedings, the Parties exchanged mediation briefs and participated in a full-day mediation session with Judge Schenkier on September 21, 2021. (*See* Dkt. 225.) The mediation did not result in any settlement, but the Parties agreed to continue working with Judge Schenkier toward resolution. (*Id.*) After considerable arm's-length negotiations over the next several months, including through additional conferences held with Judge Schenkier and the informal sharing of information about potential class compositions, the Parties ultimately agreed to resolve both actions through a single class action settlement.

In accordance with their Settlement Agreement, on April 28, 2022, Plaintiffs Fatima Butler (an Illinois resident) and Julia Scholz-Pinger (an Ohio resident) filed, pursuant to Fed. R. Civ. P. 15(a)(2) and the consent of all Parties, a Second Amended Class Action Complaint ("SAC") on behalf themselves and an Illinois Class and an Ohio class. (Dkt. 249.) To facilitate the Settlement, the former named representatives in this and the *Kolebuck-Utz* action (Stephanie Lukis, the heirs of Shawn Brown (J.B.1, J.B.2, J.B.3, and J.B.4), Mantas Norvaisas, and Angela Kolebuck-Utz) voluntarily dismissed their individual claims pursuant to individual settlement agreements with Whitepages on the same day. (Dkt. 248.) As discussed below, these individual claims were dismissed because the former class representatives are not members of the proposed Settlement Classes, which are narrower than the classes alleged in the original complaints.

---

[2]     The Parties notified Judge Coughenour of their intention to resolve the *Lukis* and *Kolebuck-Utz* lawsuits before this Court. *Kolebuck-Utz*, Dkt. 30 ¶¶ 2-3.

## III.     TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth in the Stipulation of Class Action Settlement, and are briefly summarized here:

### A.     Class Definitions

The Settlement calls for two Settlement Classes, defined as follows:

- **Illinois Settlement Class:** All individuals with a primary Illinois residential address whose individual detail pages were displayed on Whitepages.com in response to a search on the website and whose names were clicked on between May 7, 2019 and January 27, 2022, where the searcher during that same site visit purchased a subscription. (Agreement § 1.14.)

- **Ohio Settlement Class:** All individuals with a primary Ohio residential address whose individual detail pages were displayed on Whitepages.com in response to a search on the website and whose names were clicked on between May 7, 2019 and January 27, 2022, where the searcher during that same site visit purchased a subscription. (*Id.* § 1.23.)

Excluded from both Settlement Classes are: (1) any Judge or Magistrate presiding over this action and members of their families, (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, (3) persons who properly execute and file a timely request for exclusion from the class, and (4) the legal representatives, successors, or assigns of any such excluded persons. (*Id.* §§ 1.14, 1.23.)

### B.     Settlement Payments

Pursuant to the Settlement, Whitepages will establish two non-reversionary Settlement Funds: an Illinois Settlement Fund in the amount of $1,208,440, (*id.* § 1.17), and an Ohio Settlement Fund in the amount of $2,8674,200, (*id.* § 1.26). Illinois and Ohio Settlement Class Members will be entitled to submit claims against the Illinois and Ohio Settlement Funds, respectively. (*Id.* §§ 2.1, 2.2.) All Settlement Class Members that submit a valid claim will be entitled to a *pro rata* portion of the appropriate Fund after payment of Settlement Administration

8

Expenses, attorneys' fees and costs, and any incentive award, if approved by the Court. (*Id.*) Assuming a 10–20% claims rate,[3] Class Counsel estimate that each claiming Illinois Settlement Class Member will receive a net payment of $125–$245, and each claiming Ohio Settlement Class Member will receive a net payment of $315–$630.

Any uncashed checks or electronic payments unable to be processed within 180 days of issuance shall revert to the Illinois or Ohio Settlement Funds, to be distributed *pro rata* to claiming Illinois or Ohio Settlement Class Members, if practicable, or in a manner otherwise directed by the Court upon application made by Class Counsel. (*Id.* §§ 2.1(e), 2.2(e).) No portion of either Settlement Fund will revert to Defendant should the settlement be approved. (*Id.* §§ 1.17, 1.26.)

## C. Prospective Relief

For a period of three years after the Settlement is finally approved, Whitepages will not display the name of any Illinois or Ohio Settlement Class Member whose residence, according to

---

[3]     Given that this is the first "free preview" right of publicity class settlement, there is no precedent on which to estimate claims rates. However, the 10–20% claims rate has proven typical for several recent class settlements addressing alleged violations of privacy statutes carrying statutory damages, such as those arising under the Illinois Biometric Information Privacy Act. *See*, *e.g.*, *In re Facebook Biometric Info. Priv. Litig.*, No. 15-cv-3747-JD, 522 F. Supp. 3d 617, 620 (N.D. Cal. 2021) (22% claims rate) *appeal dismissed*, No. 21-15555, 2021 WL 2660668 (9th Cir. June 22, 2021), and *aff'd*, No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022); *Sekura v. L.A. Tan Enters., Inc.*, No. 2015-CH-16694 (Cir. Ct. Cook Cnty. Dec. 1, 2016) (15% claims rate); *Kusinski v. ADP LLC*, No. 2017-CH-12364 (Cir. Ct. Cook Cnty. Feb. 10, 2021) (13% claims rate); *Thome v. NOVAtime Tech., Inc.*, No. 19-cv-6256, Dkt. 90 (N.D. Ill. Mar. 8, 2021) (10% claims rate); *Prelipceanu v. Jumio Corp.*, No. 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (5% claims rate). Recent settlements under Michigan's Preservation of Personal Privacy Act saw similar rates. *See*, *e.g.*, *Higgins v. TV Guide Mag., LLC*, No. 15-cv-13769, Dkt. 79 at 1 (E.D. Mich. Dec. 5, 2018) (15% claims rate for PPPA settlement); *Raden v. Martha Stewart Living Omnimedia, Inc., et al.*, No. 16-cv-12808, Dkt. 52 at 1 (E.D. Mich. July 17, 2019) (13% claims rate for PPPA settlement); *Ruppel v. Consumers Union of United States, Inc.*, No. 16-cv-02444, Dkt. 111 (S.D.N.Y. Dec. 4, 2018) (16.8% claims rate for PPPA settlement); *Moeller v. American Media, Inc.*, No. 16-cv-11367, Dkt. 42 (E.D. Mich. Sept. 28, 2017) (10% claims rate for PPPA settlement).

Defendant's records, remains in Illinois or Ohio on any page of its website that includes an offer to purchase Defendant's products or services. (Agreement §§ 2.3(a)–(c).)

### D. Payment of Settlement Notice and Administrative Costs

All Settlement notice and administration costs shall be paid from the Illinois and Ohio Settlement Funds on a proportional basis. This includes all expenses incurred by the Settlement Administrator in, or relating to, administering the Settlement, providing Notice, creating and maintaining the Settlement Website, receiving and processing Claim Forms, dispersing settlement payments, and any other related expenses. (*Id.* § 1.32.) Proportional payments means that expenses incurred equally by both Settlement Classes shall be paid equally from both funds, but expenses incurred by one fund or the other will be paid from that fund alone.

### E. Payment of Attorneys' Fees, Costs, and Incentive Award

As part of the Settlement, Defendant has agreed that Class Counsel are entitled to reasonable attorneys' fees in an amount to be determined by the Court by petition. (*Id.* § 8.1.) Proposed Class Counsel has agreed to limit its request for fees to 35% of the Settlement Fund, with no consideration from Defendant and Defendant may challenge the amount requested. (*Id.*) Defendant has also agreed to pay Plaintiffs each an incentive award in the amount of $1,000 from the Settlement Fund, subject to Court approval, in recognition of their efforts as Class Representatives. (*Id.* § 8.3.) Plaintiffs will move for these payments via a separate request after preliminary approval and prior to the deadline to object.

### F. Release of Liability

In exchange for the relief described above, each Illinois and Ohio Settlement Class Member will release Whitepages, and its related entities from all claims relating to Whitepages' use of his or her name, age, contact information, former residence locations, list of possible

relatives, likeness, photograph, image, or other identifying information to advertise, promote, or in connection with an offer for sale any products or services, including any violation of the IRPA or the ORPA. (*Id.* § 1.29.)

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Before the Court can preliminarily approve the proposed Settlement and direct notice to the Settlement Classes, it must certify the classes for settlement purposes, which requires a finding that the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). District courts are given broad discretion to determine whether class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

To merit certification, the Settlement Classes must first satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, because the Settlement provides for monetary relief, the Settlement Classes must also satisfy the requirements of Rule 23(b)(3): that (i) common questions of law or fact predominate over individual issues and (ii) a class action is the superior device to resolve the claims. *Amchem*, 521 U.S. at 615–16. Finally, a certified class must be ascertainable; that is, "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). As explained below, the proposed Settlement Classes satisfy all the Rule 23(a) and 23(b)(3) prerequisites and is ascertainable, and thus, should be certified for settlement purposes.

### A.      The Numerosity Requirement is Satisfied.

A class action may proceed when the proposed class "is so numerous as to render joinder impractical." Fed R. Civ. P. 23(a)(1). "A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), and the court may make common sense assumptions to determine numerosity." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (citing collected Seventh Circuit cases). While there is no magic number at which joinder becomes unmanageable, courts have typically found that numerosity is satisfied when the class comprises forty (40) or more people. *See, e.g.*, *id.* (certifying class of 120 members). Here, the proposed Settlement Classes are sufficiently numerous. Defendant has confirmed that the Illinois Settlement Class includes 30,211 individuals, and the Ohio Settlement Class includes 28,642 individuals. (Agreement Recitals ¶ L.) The numerosity requirement is readily satisfied.

### B.      Common Issues of Fact and Law Predominate.

Rule 23(a)(2) instructs that a class may be certified only if there exist "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Where, as here, the class seeks monetary relief, the common questions must "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). *See also Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("[T]he question of commonality and predominance overlap in ways that make them difficult to analyze separately"). Common questions are those "capable of class-wide resolution" such "that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "What matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*,

564 U.S. at 350 (internal quotations omitted). As such, "the critical point is the need for *conduct* common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (internal quotations omitted). When "the defendant's allegedly injurious conduct differs from plaintiff to plaintiff . . . no common answers are likely to be found." *Id.* But when "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members," class treatment is appropriate. *Id.*

Here, and as the Court recently found with respect to the related case brought against Instant Checkmate LLC, *Fischer, et al. v. Instant Checkmate LLC*, No. 19-cv-04892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ("*Fischer*"),[4] common issues of law and fact certainly predominate this litigation. Plaintiffs' and the proposed Settlement Classes' claims are based upon the same common contentions and course of alleged conduct by Defendant: that it allegedly violated the IRPA and ORPA by using their names and other identifying characteristics on its website to sell its products and services. (*See* SAC ¶¶ 8-16, 20.) This contention raises several of issues of law and fact common to the Settlement Classes, most prominently including: whether the information displayed on the Whitepages website is sufficient to identify an individual to an ordinary, reasonable viewer of the website, *see Fischer*, 2022 WL 971479, at *8; and whether the display of individuals' names and other information on the Whitepages website constitutes a "public use or holding out" of a person's identity, either in connection with the offering for sale of a product or service, or for the purposes of advertising, pursuant to 765 ILCS 1075/5. These requirements are essentially the same under the ORPA, except the statute does not have a "public use or holding out" requirement. R.C. §§ 2741.01(B), 2741.02(B). Likewise, the ORPA presents

---

[4]     The Court granted a motion to relate the *Instant Checkmate* matter to this action under Local Rule 40.4 on August 8, 2019. (Dkt. 15.)

an additional common question of whether Whitepages' identical use of Ohio Class Members' information demonstrates the "commercial value" of those individuals' names, as Judge Coughenour held in the *Kolebuck-Utz* matter. *See Kolebuck-Utz v. Whitepages Inc.*, No. C21-0053-JCC, 2021 WL 1575219, at \*2 (W.D. Wash. Apr. 22, 2021).

Apart from these central liability questions, the case also raises a host of issues—all common ones—pertaining to Whitepages' defenses, including whether its use of names and other information on its website falls under one the IRPA's or ORPA's statutory exceptions or whether the First Amendment or Communication Decency Act exempts that use. As the Court held in *Fischer*, because Whitepages used the Plaintiffs' and Settlement Class Members' information in the exact same way, whether the Plaintiffs can prove their case or whether the Defendant's defenses apply will determine the validity of *every* Settlement Class Members' claim in a single stroke. *See Fischer*, 2022 WL 971479, at \*8–9 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)) (finding that IRPA elements of identity and commercial purpose would turn on common proof in similar "free preview" case). And because answering each of these questions would resolve all Settlement Class Members' claims in one stroke, and no individualized issues (to the extent there are any) could defeat this overwhelming commonality, predominance is also satisfied. *See Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at \*9 (N.D. Ill. Aug. 1, 2018) (predominance requires that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating individual issues.") (internal quotations omitted).

## C. The Typicality Requirement is Satisfied.

The next prerequisite—typicality—requires that a class representative has claims that are typical of those of the putative class members. Typicality examines whether there is "enough

14

congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). Where a named plaintiff's claim "arise[s] from the same events or course of conduct that gives rise to the putative class members' claims," typicality is satisfied. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). In other words, when the basis of the suit is the defendant's systematic business practices toward the named plaintiff and the members of the proposed class, typicality is generally satisfied.

Here, there is nothing separating Plaintiff Butler's IRPA claim or Plaintiff Scholz-Pinger's ORPA claim from that of any other Illinois or Ohio Settlement Class member. Both Plaintiffs learned that their names and identifying attributes appeared on the Whitepages' website in "free preview" displays that encouraged site visitors to purchase Whitepages' products or services. (SAC ¶¶ 24–25, 30–31.) Neither Plaintiff had any prior relationship with Whitepages, and neither Plaintiff provided written consent for the use her identity on the Whitepages website. (*Id.* ¶¶ 26–29, 32–35.) In short, because Plaintiffs Butler and Scholz-Pinger were subject to the same conduct and practices by Whitepages as everyone else, Plaintiffs' IRPA and ORPA claims will "stand or fall on the same facts as the claims of the putative class members." *Ziemack v. Centel Corp.*, 163 F.R.D. 530, 534 (N.D. Ill. 1995). Plaintiffs' claims are therefore typical of the Settlement Classes' claims.

### D. The Adequacy Requirement is Satisfied.

The final Rule 23(a) prerequisite—adequacy—requires a finding that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is twofold: "'adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest[s]'

of the class members." *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014)

(quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993)). To assess

adequacy, courts examine whether "the named plaintiff has [(1)] antagonistic or conflicting

claims with other members of the class; or (2) has a sufficient interest in the outcome of the case

to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and

able to vigorously conduct the litigation." *Osada v. Experian Info. Sols., Inc.*, 290 F.R.D. 485,

490 (N.D. Ill. 2012) (quoting *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D.

Ill. 2008)) (internal quotation marks omitted).

Here, both Plaintiffs and proposed Class Counsel have and will continue to adequately

represent the Settlement Class. Because Plaintiffs suffered the same alleged injury as every other

member of the Settlement Classes—the alleged use of their identities for commercial purposes

on Defendant's website without consent, (SAC ¶¶ 8–16, 20)—their interest in redressing

Defendant's alleged violations of the IRPA and ORPA is identical to the interests of all other

members of the Settlement Classes. Thus, Plaintiffs do not have any interests antagonistic to

those of the Settlement Classes. Consequently, Plaintiffs' interests are entirely representative of

and consistent with the interests of the Settlement Classes.

Additionally, each of the law firms proposed as Class Counsel here satisfy the adequacy

requirement. Proposed Class Counsel Edelson PC has extensive experience in litigating class

actions of similar size, scope, and complexity to the instant action. Edelson PC is a national

leader in high stakes plaintiffs' work ranging from class and mass actions to public client

investigations and prosecutions. (*See* Firm Resume of Edelson PC, attached as Exhibit 2-A to the

Declaration of J. Eli Wade-Scott ("Wade-Scott Decl."), attached hereto as Exhibit 2.) The firm

holds records for the largest jury verdict in a privacy case ($925 million), the largest consumer

privacy settlement ($650 million), and the largest Telephone Consumer Protection Act ("TCPA")

settlement ($76 million). (*Id.*) The firm has litigated, tried, and settled numerous high-profile

class action cases involving statutes much like the IRPA and ORPA. (*Id.*) The firm was

recognized by Law360 as a "Practice Group of the Year" for 2020 in two categories—Class

Action and Cybersecurity[5]—and for three years running as an "Illinois Powerhouse," alongside

Kirkland & Ellis, Sidley Austin, Mayer Brown, Dentons, and Jenner & Block.[6] Edelson has been

the only plaintiffs' firm, as well the only firm with fewer than 100 attorneys, to make the latter

list. Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial

resources to the claims in this action and will continue to do so throughout its pendency. (Wade-

Scott Decl. ¶ 2.)

Likewise, proposed Class Counsel Bursor & Fisher, P.A. has extensive experience

litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm

Resume of Bursor & Fisher, P.A., attached as Exhibit 3-A to the Declaration of Philip L. Fraietta

("Fraietta Decl."), attached hereto as Exhibit 3.) "The firm has been appointed class counsel in

dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or

recoveries in [six] class action jury trials since 2008." *Ebin v. Kangadis Food Inc.*, 297

---

[5]     *Law360 Names Practice Groups of the Year*, Law360 (Nov. 29, 2020),
https://www.law360.com/articles/1327476/law360-names-practice-groups-of-the-year; Grace
Dixon Hanson, *Class Action Group Of The Year: Edelson*, Law360 (Dec. 3, 2020),
https://www.law360.com/articles/1328395/class-action-group-of-the-year-edelson; Joyce
Hanson, *Cybersecurity & Privacy Group Of The Year: Edelson*, Law360 (Dec. 8, 2020),
https://www.law360.com/articles/1327009/cybersecurity-privacy-group-of-the-year-edelson.

[6]     Lauraann Wood, *Illinois Powerhouse: Edelson*, Law360 (Sept. 3, 2019),
https://www.law360.com/articles/1193728/illinois-powerhouse-edelson; Diana Novak Jones,
*Illinois Powerhouse: Edelson PC*, Law360 (Aug. 28, 2018),
https://www.law360.com/articles/1076447/illinois-powerhouse-edelson-pc; Diana Novak Jones,
*Illinois Powerhouse: Edelson PC*, Law360 (October 5, 2017), https://edelson.com/wp-
content/uploads/2016/05/Illinois-Powerhouse-Edelson-PC.pdf.

F.R.D. 561, 566 (S.D.N.Y. 2014). In 2019, the firm won its sixth jury verdict in *Perez v. Rash Curtis & Associates*, No. 4:16-cv-03396-YGR (N.D. Cal.), a TCPA case, for $267 million. The *Perez* case ultimately settled for $75.6 million. *See Perez v. Rash Curtis & Assocs.*, No. 4:16-cv-03396, 2021 WL 4503314 (N.D. Cal. Oct. 1, 2021). The firm has also litigated, tried, and settled numerous high-profile class action cases involving statutes like the IRPA and the ORPA. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017) (granting named plaintiff's motion for summary judgment in PPPA case ultimately resulting in $50 million settlement). Bursor & Fisher has diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency. (Fraietta Decl. ¶ 18.)

Finally, proposed Class Counsel Beaumont Costales LLC has extensive experience litigating complex class actions in both state and federal courts. (*See* Declaration of Roberto Luis Costales ("Costales Decl."), attached hereto as Exhibit 4.) Beaumont Costales has proven a zealous and capable advocate for the class in its pursuit of this case, as well as in the litigation of *Fischer, supra*, where it successfully advanced a novel theory of IRPA liability and ultimately secured class certification. Beaumont Costales LLC has diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency. (*Id.* ¶ 6.)

Accordingly, because Plaintiffs will fairly and adequately protect the interests of the class, and because they and the Settlement Classes are amply represented by qualified counsel, the adequacy requirement is satisfied.

**E.     A Class Action is a Superior Method of Resolving the Controversy.**

Rule 23(b)(3) additionally requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule sets forth four criteria germane to this requirement. All counsel in favor of certification.

The first factor, individual class members' interest in individually controlling the action, Fed. R. Civ. P. 23(b)(3)(A), weighs in favor of certification. There is no indication any Class Member has brought an individual IRPA or ORPA suit against Whitepages and there is scant likelihood any "class members [are aware] of their rights under [the IRPA or ORPA]." *Bernal v. NRA Grp. LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016). Both considerations support that class members' interests in individual suits is minimal. *Id.* Further, while the IRPA and ORPA provide for liquidated damages, the relatively modest recoveries ($1,000 or $2,500), compared to the high costs of retaining adequate counsel "is unlikely to provide sufficient incentive for individual members to bring their own claims." *Fischer*, 2022 WL 971479, at * 13 (quoting *Pawelczak v. Fin. Recovery Servs., Inc.*, 286 F.R.D. 381, 387 (N.D. Ill. 2012); *see also Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) (discussing the FDCPA's $1,000 statutory damages provision)).

The second factor, the extent and nature of other proceedings, Fed. R. Civ. P. 23(b)(3)(B), also weighs in favor of certification. With the dismissal of the *Kolebuck-Utz* action, as contemplated by the Settlement, there are no other known actions addressing the conduct alleged here. Thus, "'the extent and nature of any litigation concerning the controversy already begun by or against class members' is not a factor" counseling against certification. *Bernal*, 318 F.R.D. at 76 (quoting Fed. R. Civ. P. 23(b)(3)(B)).

Third, it makes good sense to concentrate the litigation—and to undergo the settlement approval process—in this forum. *See* Fed. R. Civ. P. 23(b)(3)(C). Initially, this Court is a particularly desirable forum given its familiarity with the facts and issues of the IRPA side of this case—which are essentially identical to the issues present in the ORPA litigation, *see generally Kolebuck-Utz*, 2021 WL 1575219—having presided over the matter since the outset. *Zuniga v. Bernalillo Cnty.*, 319 F.R.D. 640, 682 (D.N.M. 2016) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004) (Rule 23(b)(3)(C) consideration includes specific district judge's familiarity with the case, including whether he or she "has already made several pre-certification preliminary rulings")). Likewise, the fact that all litigation pending against Whitepages regarding its free preview advertising is now before this Court "increase[s] the 'desirability . . . of concentrating the litigation of the claims' . . . in this forum." *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 347 (D. Mass. 2003) (citing Fed. R. Civ. P. 23(b)(3)(C)).

Resolving the case here also makes sense as a matter of geographical convenience. The majority of Illinois Settlement Class Members, along with counsel for Plaintiffs and Defendant, reside here. *See Barnes*, 310 F.R.D. at 562 (third factor met where defendant conducted business and the events giving rise to plaintiffs' claims occurred within the court's district); *Ramirez v. GLK Foods, LLC*, No. 12-C-210, 2014 WL 2612065, at *9 (E.D. Wis. June 11, 2014) (events in forum giving rise to lawsuit support concentration in the forum); *Tedesco v. Mishkin*, 689 F. Supp. 1327, 1337 (S.D.N.Y. 1988) (forum appropriate where "[t]he vast majority of class members" resided); *Calderon v. GEICO Gen. Ins. Co.*, 279 F.R.D. 337, 347 (D. Md. 2012) (considering location of attorneys). And while the *Kolebuck-Utz* case was initiated in the Western District of Washington, Illinois is a much closer and far more convenient forum for any members of the Ohio Settlement Class that may desire to appear in any proceedings. *See Breeden*

*v. Benchmark Lending Grp., Inc.*, 229 F.R.D. 623, 631 (N.D. Cal. 2005) ("[S]ince the parties, evidence, and witnesses are all likely to be located relatively close to this particular forum, this Court does not perceive any reason why section (b)(3)(C) counsels against certifying the putative class."). At the same time, the fact that Whitepages is headquartered in Washington is a non-factor, given Defendant's consent to have the ORPA claims brought to this Court via amendment. *Cf. Poulos v. Caesars World, Inc.*, No. CV-S-94-1126-RLH-RJJ, 2002 WL 1991180, at *12 (D. Nev. June 25, 2002), *aff'd in part, appeal dismissed in part*, 379 F.3d 654 (9th Cir. 2004) ("In addition, it was Defendants who sought to have this case transferred from the district in which it was filed to the District of Nevada.").

Finally, the fourth factor—"the likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D)—also weighs in favor of certification, as no management problems ought to arise here. There is clear predominance of common issues, as explained above, and every member of the Settlement Classes can be identified through Defendant's records, streamlining the notice process.[7] *Bernal*, 318 F.R.D. at 76; 2 NEWBERG ON CLASS ACTIONS § 4:72 (5th ed. 2011) ("Courts generally hold that if the predominance requirement is met, then the manageability requirement is met, as well."). Thus, consolidating class members' claims in one proceeding will generate economies of time and expense and promote legal uniformity.

More generally, Rule 23's superiority standard requires that the court recognize "the costs *and benefits* of the class device." *Mullins*, 795 F.3d at 663 (emphasis in original). Here, requiring individual cases "would make no sense," because "each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases

---

[7]     The ability of Defendant to conclusively identify Illinois and Ohio Settlement Class members sets this case apart from the unidentifiable "Search Results" class proposed in *Fischer*, at least from a manageability perspective. *See Fischer*, 2022 WL 971479, at *12.

21

for recovery." *Bernal*, 318 F.R.D. at 76. The class action device, on the other hand, allows the Court to swiftly evaluate common issues surrounding Whitepages' alleged violations of the IRPA and ORPA in a single proceeding, generating a uniform result that will apply to all similarly situated persons. *Suchanek*, 764 F.3d at 759 (stating that "promot[ing] uniformity of decision as to persons similarly situated" is a goal of class actions) (quoting *Amchem*, 521 U.S. at 615). Without class-wide adjudication of these claims, thousands of individuals would have to sue one-by-one to recover on these relatively modest individual claims. The cost of litigating IRPA or ORPA claims on an individual basis—including the cost of discovery, motion practice, and trial—would be prohibitively expensive. Moreover, such individual claims would clog the courts with an influx of separate actions, further delaying the possibility of relief. Rule 23's superiority requirement is satisfied.

### F.     The Class Is Ascertainable.

Finally, the proposed Settlement Class definition meets Rule 23's implicit requirement of "ascertainability," which requires that a class "be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. "Whether a class is ascertainable depends on 'the adequacy of the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class,'" although Plaintiffs here would meet both standards. *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 581 (N.D. Ill.) (citing *Mullins*, 795 F.3d at 658).

Here, the Illinois and Ohio Settlement Class definitions are based solely on objective criteria: either an individual's "detail" page on Whitepages' website was viewed and resulted in a sale, or it was and did not. (Agreement §§ 1.14, 1.23.) Moreover, Illinois and Ohio Settlement Class members can be readily identified through Defendant's records. (*See id.* Recitals ¶ L.)

Because the class is "defined clearly [and] membership [is] defined by objective criteria," it is ascertainable. *Mullins*, 795 F.3d at 657.

For these reasons, maintenance of this action as a class action is appropriate. The Court should therefore certify the Settlement Class for settlement purposes.

## V.     PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [with the] ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers proposed Class Counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed above,[8] proposed Class Counsel have extensive experience in litigating consumer privacy class actions; have thoroughly investigated the claims at issue; and have the resources necessary to conduct this litigation. (*See* Wade-Scott Decl. ¶ 2.) And because of their efforts here, proposed Class Counsel have secured the first-of-its-kind class settlement under two states' right of publicity statutes that compares favorably to the leading statutory privacy class action settlements that came before it. And if there were any doubt, the Court recently appointed the same attorneys presented here as class counsel in the *Fischer* case. *Fischer*, 2022 WL 971479, at *15 (appointing attorneys from Beaumont Costales, Edelson PC, and Bursor &.

---

[8]     Courts frequently analyze counsel's adequacy under both 23(a)(4) and 23(g), which is why it is discussed twice here. 1 NEWBERG ON CLASS ACTIONS § 3:56 (5th ed. 2011); *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592–93 (7th Cir. 2011), *as modified* (Sept. 22, 2011) (reviewing counsel's adequacy under Rule 23(a)(4) but mentioning the Rule 23(g) factors in its analysis).

Fisher, P.A. as class counsel under Rule 23(g).) Thus, the Court should appoint Roberto Luis Costales and William Beaumont of Beaumont Costales LLC, J. Eli Wade-Scott of Edelson PC, and Philip L. Fraietta of Bursor & Fisher, P.A. as Class Counsel.

## VI.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval of all proposed class action settlements. The procedure for review of a proposed class action settlement is a familiar two-step process— preliminary and final approval—which was codified under Rule 23(e) relatively recently. Fed. R. Civ. P. 23(e)(1)–(2) (eff. Dec. 1, 2018); *see* 4 Newberg on Class Actions § 13:1 (5th ed. 2011). The first step—preliminary approval—is a pre-notification inquiry to determine whether the court "will likely be able to approve the proposal under Rule 23(e)(2)," finding that it is sufficiently fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(B). In other words, at this stage, the Court needs to determine whether the proposed settlement is "within the range of possible approval" such that there is "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Once preliminary approval is granted, class members are notified of the settlement, and the court and parties proceed to the second step: the final fairness determination. *Id.* at 621.

While "[f]ederal courts naturally favor the settlement of class action litigation," a multi-factor test must be used to determine whether the proposed settlement is likely to be found fair, reasonable, and adequate. *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)) (internal quotations omitted). Rule 23(e)(2) directs courts to consider whether: (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's-length; (3) the settlement treats class members equitably relative to each other; and (4) the

24

relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see*, *e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).[9]

The proposed Settlement in this case—which creates a $1,208,440 Illinois Settlement Fund, a $2,864,200 Ohio Settlement Fund, and provides for targeted prospective relief that ensures Whitepages' compliance with the IRPA and ORPA—easily satisfies these factors.

**A.** **Plaintiffs Fatima Butler and Julia Scholz-Pinger and Proposed Class Counsel Have Adequately Represented the Settlement Class.**

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). The focus of this analysis is "on the actual performance of counsel acting on behalf of the class" throughout the litigation and in settlement negotiations. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment; *see Gumm v. Ford*, No. 5:15-cv-41-MTT, 2019 WL 479506 at *3 (M.D. Ga. Jan. 17, 2019). In considering this factor, courts are to examine whether plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account (i) the nature and amount of discovery completed, whether formally or informally, and (ii) the "actual outcomes" of other, similar cases. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment. Ultimately, this factor is generally satisfied where the named plaintiff participated

---

[9]     Notably, the factors to be considered under the amended Rule 23 "overlap with the factors previously articulated by the Seventh Circuit, which include: (1) the strength of the plaintiff's case compared to the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings and the amount of discovery completed." *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *2 (S.D. Ill. Dec. 16, 2018) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006)); *see also* Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). For this reason, decisions prior to the amendment can still provide guidance to the Court.

in the case diligently, and where class counsel fought hard on behalf of plaintiff and the class throughout the litigation. *See Snyder*, 2019 WL 2103379, at *4.

Here, while Plaintiffs Butler and Scholz-Pinger are new to the case in their role as Class Representatives, they have taken all possible steps to represent the interests of their respective classes. To that end, both Plaintiffs have helped their attorneys investigate their IRPA and ORPA claims; have assisted preparing and reviewing the Second Amended Complaint before filing; have become familiar with the cases more generally; have taken all steps to preserve documents should the case return to discovery; and have reviewed and approved the Settlement Agreement before signing it. (Wade-Scott Decl. ¶ 3.) Given the narrowed class definitions presented in the SAC—which *do not* include any of the former class representatives in this or the *Kolebuck-Utz* action—without Ms. Butler and Ms. Scholz-Pinger stepping up to represent the class as the lead plaintiffs, the relief secured for the Settlement Classes wouldn't have been possible. Given their efforts and aligned interest with the class, there can be no doubt that Ms. Butler and Ms. Scholz-Pinger have only acted in the best interest of the Settlement Classes and have adequately represented—and will continue to adequately represent—them.

Likewise, proposed Class Counsel's performance in this case demonstrates that their representation has been beyond adequate, especially when considering (i) the investigation and discovery conducted and (ii) the benefits of the Settlement compared to similar privacy settlements. First, the considerable amount of investigation and discovery completed by Plaintiffs' counsel ensured that they had adequate information to assess the strength of the case and engage in settlement discussions. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the court and parties

have enough information "to evaluate the merits of this case"). As the docket reflects, this case is well-developed, with substantial written and oral discovery having been conducted—both as a matter of course and through motions to compel filed by Plaintiffs' counsel. (*See* Dkts. 106, 127.) All this groundwork inures to the benefit of the ORPA litigation as well, given that both cases address the exact same business practices, and that the conduct prohibited by the IRPA and ORPA is substantially identical. And finally, to supplement this information, the Parties informally exchanged information in connection with their settlement efforts, which helped Plaintiffs' counsel propose and fully understand the scope of the classes now reflected in the Settlement Agreement and SAC. This knowledgebase was more than sufficient to allow counsel to "fully evaluate the claims and defenses" asserted in these cases. *See Young v. Rolling in the Dough, Inc.*, No. 1:17-CV-07825, 2020 WL 969616, at *5 (N.D. Ill. Feb. 27, 2020); *see also In re AT & T Mobility*, 270 F.R.D. at 350 (approving settlement where "the focus of th[e] litigation appears to be more on legal than factual issues, and there is no indication that [more] formal discovery would have assisted the parties in devising the [p]roposed [s]ettlement [a]greement.").

In short, the issues in this litigation have crystallized sufficiently for Plaintiffs and their counsel to assess the strengths and weaknesses of their negotiating position (based upon the litigation to date, the anticipated outcomes of oral fact discovery and expert discovery, and additional motion practice) and evaluate the appropriateness of any proposed resolution. *See Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-CV-1707, 2016 WL 806546, at *10 (N.D. Ill. Mar. 2, 2016) (concluding that "extensive formal discovery, when measured against the cost that would be incurred," would not place the parties in a better position than they are now to determine an appropriate settlement value).

27

Second, the Settlement achieved by Plaintiffs' counsel is expected to provide exceptional per-claimant payments compared to other statutory privacy cases. Defendant has agreed to settle this case for $1,208,440 for a class of approximately 30,211 Illinois residents, and $2,864,200 for a class of approximately 28,642 Ohio residents. These amounts will be split equally—with no reversion to Whitepages—among claiming Illinois and Ohio Settlement Class Members. (*See* Agreement §§ 1.17, 1.26.) Assuming a claims rate of 10–20%,[10] the Settlement will result in a *net* payment (meaning after all fees and costs are deducted) of approximately $125–$245 for each Illinois Settlement Class Member and approximately $315–$615 for each Ohio Settlement Class Member, which represent around 12.5% to 25% of the maximum recoveries each claimant might realistically achieve at trial, given the IRPA's provision of $1,000 in statutory damages and the ORPA's provision of $2,500. These amounts dwarf the payments recovered in many other statutory privacy class actions, particularly against a backdrop where settlements have commonly secured no relief to the class or only *cy pres* relief. *See*, *e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic Communications Privacy Act ["ECPA"] for a $9.5 million *cy pres*-only settlement—amounting to pennies per class member—where $10,000 in statutory damages were available per claim); *In re Google Buzz Priv. Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011) (resolving tens of millions of claims, again under the ECPA, for $8.5 million *cy pres*-only settlement); *see also Frank v. Gaos*, 139 S. Ct. 1041, 1047–48 (2019) (Thomas, J., dissenting)

---

[10]   Plaintiffs' counsel are committed to reaching this claims rate but, of course, note that a typical claims rate for consumer class actions is much lower. *See Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FEDERAL TRADE COMMISSION, at 11 (Sept. 2019), available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf ("Across all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.*, cases weighted by the number of notice recipients) was 4%.").

("Whatever role *cy pres* may permissibly play in disposing of unclaimed or undistributable class funds . . . *cy pres* payments are not a form of relief to the absent class members and should not be treated as such (including when calculating attorney's fees). And the settlement agreement here provided no other form of meaningful relief to the class.").

The anticipated payments here also compare favorably to recent privacy settlements that have resulted in direct payments to class members. The most apt comparison is *Fraley v. Facebook, Inc.*, which, to our knowledge, is the only other class settlement brought under a state's (California) right of publicity statute. There, the district court finally approved a class settlement resulting in $15 payments to claimants, which represented 2% of the $750 in statutory damages that claiming class members could have obtained at trial, *Fraley*, 966 F. Supp. 2d at 944, and still, as affirmed by the Ninth Circuit, represented a fair and reasonable compromise of class members' claims, *Fraley v. Batman*, 638 F. App'x 594, 597 (9th Cir. 2016) ("The district court did not abuse its discretion in approving a class action settlement which awarded $15 to each claiming class member, notwithstanding the possibility of a $750 statutory penalty. The monetary award of $15 was reasonable in light of the minimal (if any) harm suffered by the plaintiffs."). Here, of course, the anticipated payments are substantially higher than the payment achieved in *Fraley*, both in an absolute sense and in relation to the amounts that class members could potentially achieve at trial.

The payments also meet or exceed those found in other recent privacy class settlements. A score of class settlements emerging from Michigan's Preservation of Personal Privacy Act—which, at the time, provided $5,000 in statutory damages for violations—resulted in payments to claimants of between $40 and $82 (i.e., 0.8%–1.65% of a complete recovery under the statute) at a 10–20% claims rate among settlement class members. *See, e.g.*, *Moeller v. Advance Mag.*

29

*Publishers, Inc. d/b/a Condé Nast*, No. 15-cv-05671, Dkt. 143 (S.D.N.Y. Mar. 6, 2019)

(approving PPPA settlement where claiming class members received approximately $82 each);

*Halaburda v. Bauer Publ'g Co., LP*, No. 12-cv-12831, Dkt. 68 (E.D. Mich. Jan. 6, 2015) ($74

per claiming class member); *Kinder v. Meredith Corp.*, No. 14-cv-11284, Dkt. 72 (E.D. Mich.

Oct. 5, 2015) ($50 per claiming class member); *Perlin v. Time Inc.*, No. 16-cv-10635, Dkt. 55

(E.D. Mich. Oct. 15, 2018) ($50 per claiming class member); *Coulter-Owens v. Rodale, Inc.*, No.

14-cv-12688, Dkt. 54 (E.D. Mich. Sept. 29, 2016) ($44 per claiming class member); *Taylor v.*

*Trusted Media Brands, Inc.*, No. 16-cv-01812, Dkt. 87 (S.D.N.Y. Feb. 1, 2018) ($41 per

claiming class member). And more recently, a district court finally approved an enormous class

settlement involving Facebook's alleged violation of two sections of the Illinois Biometric

Information Privacy Act ("BIPA") (concerning Facebook's allegedly unlawful collection and

storage of biometric identifiers), which the district court noted would result in payments of at

least $345 to class members, or 17% of the $2,000 those individuals could have recovered at

trial.[11] *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d at 627 (discussing

reasonableness of payout). The amounts that claimants stand to receive here either meet (as in *In*

*re Facebook*) or greatly exceed (as in the Michigan cases discussed above) these approved class

settlements.

Finally, aside from the monetary relief, the non-monetary benefits created by the

Settlement also demonstrate Plaintiffs' and proposed Class Counsel's outstanding representation

of the class. (*See* Agreement § 2.3.) Specifically, as part of this Settlement, Whitepages has

---

[11]     The BIPA provides for $1,000 per violation of the statute, including for an entity's
unlawful collection *and* retention of biometric identifiers. *See* 740 ILCS 14/15(a) (retention), (b)
(collection), both of which were at issue in *In re Facebook*, and also provides $5,000 per
intentional or reckless violations of the statute, 740 ILCS 14/20.

agreed to stop the *exact* conduct that is at the center of this case—i.e., its use of Illinois and Ohio

Settlement Class Members' names in connection with its commercial solicitations. This

prospective relief aligns perfectly with the goals of the IRPA, the ORPA, and those of this

lawsuit, as it will ensure that class members are protected as the Illinois and Ohio legislatures

intended.

If the Settlement is approved, the Settlement Classes will reap its valuable benefits thanks

to Plaintiffs' and proposed Class Counsel's hard work pursuing this case and representing their

interests. This factor is well satisfied.

**B.      The Settlement Was Reached as a Result of Arm's-Length Negotiations
Between the Parties.**

The second Rule 23(e)(2) factor looks to whether the parties negotiated the settlement at

arm's-length. Fed. R. Civ. P. 23(e)(2)(B). The answer here is easy: yes. Unlike many class action

settlements "in which settlement negotiations begin before discovery even takes place," this case

was contested through an adversarial and contentious process. *Charvat v. Valente*, No. 12-cv-

05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019). After actively litigating this case for

two years—which included fully briefing motions to dismiss (in both this and the *Kolebuck-Utz*

litigation), a motion to reconsider, a motion for leave to appeal under 28 U.S.C. § 1292(b), a

motion for summary judgment, discovery motions, and a motion to dismiss or transfer based on

arbitrability—the Parties agreed in July 2021 that it was an appropriate time to explore

meaningful settlement discussions. (*See* Dkt. 217, ¶ 1.) *See Wright v. Nationstar Mortg. LLC*,

No. 14 C 10457, 2016 WL 4505169, at *11 (N.D. Ill. Aug. 29, 2016) (finding no collusion or

unfairness where "the parties have vigorously defended their positions throughout the litigation,

participated in two prior mediations, and engaged in discovery" prior to reaching settlement).

Over the next several months, the Parties attended a formal mediation at JAMS and, thereafter,

31

continued arm's-length negotiations by, for example, informally exchanging information regarding the size and composition of the class and attending conference calls with Judge Schenkier to help reach an agreement. (*See* Dkts. 225, 227.) As a result of these efforts—both in litigation and in settlement negotiations—the Parties were finally able to reach an agreement on a proposed class settlement. *See Young*, 2020 WL 969616, at *4 (finding the settlement agreement is "clearly" the product of arm's-length negotiations after it was agreed to after a contested motion, extensive discovery and discovery disputes, and a settlement conference).

The arm's-length nature of these negotiations is further confirmed by the Settlement itself: it is non-reversionary, provides significant cash payments to Illinois and Ohio Settlement Class Members who submit a simple Claim Form, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (approving settlement where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's-length negotiation").

For these reasons, there should be no question that the Settlement here was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered") (internal citations omitted).

### C.     The Settlement Treats All Settlement Class Members Equally.

The next Rule 23(e)(2) factor considers whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, every Illinois and

Ohio Settlement Class Member has essentially the same claim and, in turn, is entitled to a fair, *pro rata* share of his or her respective Illinois or Ohio Settlement Fund. (Agreement §§ 2.1, 2.2.) The Fund sizes are also exactly proportional to each other, with the differing amounts being a result of (i) the confirmed size of each Settlement Class and (ii) the amount of statutory damages provided by the IRPA ($1,000) and ORPA ($2,500). (*Id.* Recitals ¶ L; *id.* §§ 1.17, 1.26.) *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). In other words, the recoveries of each Illinois and Ohio Settlement Class Member is identically positioned with respect to the relief provided under the IRPA or ORPA. The Settlement also provides for identical prospective relief, requiring Whitepages to treat Illinois and Ohio Settlement Class Members' names and information identically. (Agreement § 2.3.) Because the Settlement treats each member of the Settlement Classes equally, this factor is well satisfied.

Likewise, the provision of modest service awards to Ms. Butler and Ms. Scholz-Pinger for serving as Class Representatives is consistent with the equitable treatment of class members. The requested $1,000 service awards appropriately reflect the work they have done for their respective Settlement Classes, which as described above, included helping their attorneys investigate their and the classes' claims, preparing and reviewing the Second Amended Complaint, conferring with their counsel, and reviewing the Settlement Agreement. Moreover, awards of this size are squarely in line with, and in most instances lower than, other service awards given to class representatives in other privacy cases. *See Lopez-McNear v. Superior Health Linens, LLC*, No. 19-cv-2390, Dkt. 69 (N.D. Ill. Apr. 27, 2021) (Pallmeyer, J.) ($5,000 service award); *Martinez v. Nando's Rest. Grp., Inc.*, No. 19-cv-07012, Dkt. 63 (N.D. Ill. Oct.

27, 2020) ($7,500 service award) (Ellis, J.); *Dixon v. Washington & Jane Smith Cmty.-Beverly*,
No. 17-cv-8033, Dkt. 103 (N.D. Ill. Aug. 20, 2019) ($10,000 service award) (Kennelly, J.).
Given that securing the Illinois and Ohio Settlement Funds could not have happened without Ms.
Butler's and Ms. Scholz-Pinger's help, the modest proposed service awards are fully consistent
with equity.

> **D.     The Relief Secured for the Settlement Class Is Adequate and Warrants
> Approval.**

The final and most substantive factor under Rule 23(e)(2) examines whether the relief
provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination,
Rule 23 instructs courts to consider several sub-factors, including (i) the cost, risks, and delay of
trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class;
(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv)
any agreements made in connection with the proposed settlement. *Id.* As explained below, each
of these sub-factors demonstrate that the relief provided by the Settlement is excellent—well
beyond adequate—and should be approved.

> **1.     The cost, risk, and delay of further litigation compared to the
> Settlement's benefits favors final approval.**

In evaluating the adequacy of the relief provided to the class, courts should first compare
the cost, risks, and delay of pursing a litigated outcome to the settlement's immediate benefits.
Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment.

The Settlement here warrants approval because it provides immediate relief to the
Settlement Classes while avoiding potentially years of complex litigation and appeals and the
risk that comes along with it. *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594,
at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is
worth more than a dollar obtained after a trial and appeals years later."). Should the case proceed

on an adversarial basis, the costs and risks of continued litigation are readily apparent. In addition to the risks of taking any case to trial, the application of states' right of publicity statutes to the conduct alleged here is a relatively new issue. While the Court has characterized Whitepages' conduct as a "textbook example under the IRPA of using a person's identity for a commercial purpose," *Lukis v. Whitepages, Inc.*, 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020), *each* of the many defendants in this space continues to argue that Judge Shah's holding in *Dobrowolski v. Intelius, Inc.*, No. 17-cv-1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018), demonstrates that "free preview" advertising does not run afoul of any state's right of publicity statute. *See*, *e.g.*, *La Fronza v. PeopleConnect, Inc.*, No. 21-cv-00280, Dkts. 51, 58, 61 (N.D. Ill.) (moving to dismiss IRPA claims); *Gaul v. Truth Now LLC*, No. 1:21-cv-01314, Dkts. 8, 15, 17 (C.D. Ill.) (same); *Backowski v. PeopleConnect, Inc.*, No. 21-cv-00115, Dkts. 10, 16, 18 (W.D. Wash.) (moving to dismiss ORPA claims); *Camacho v. TruthFinder, LLC, et al.*, No. 3:21-cv-01957, Dkts. 19, 22, 23 (S.D. Cal.) (moving to dismiss claims under the California and Alabama right of publicity statutes). Given the number of pending and new actions being filed in this space, appellate review of this and any of the other potentially dispositive issues in this case (*e.g.*, the applicability of the publicity statutes' numerous exceptions, or the application of the First Amendment, CDA, or Dormant Commerce Clause to the facts at issue in this and every other "free preview" advertising case) is inevitable. Thus, a negative appellate decision on *any* of these issues could singlehandedly doom this lawsuit.

Likewise, the Parties also would have been forced to litigate the issue of class certification adversarially. *See* Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment (instructing courts to consider the likelihood of certifying the class for litigation in evaluating this sub-factor); *see also Hudson v. Libre Tech., Inc.*, No. 3:18-cv-1371-GPC-KSC,

2020 WL 2467060, at *6 (S.D. Cal. 2020) ("Proceeding in this litigation in the absence of

settlement poses various risks such as failing to certify a class[.]"). This Court's class

certification decision in the *Fischer* matter—the first class certification decision in this space—

readily demonstrates the risk that class members face. There, the Court certified two classes, but

declined to certify the third class of individuals appearing in search results. *Fischer*, 2022 WL

971479, at *3, *15. While the Court's decision turned on the facts of that particular case and the

specific class definition proposed for certification, *id.* at *15, for present purposes it

demonstrates that class status in this action is by no means guaranteed. This Settlement, in

contrast, provides excellent relief to the members of the Settlement Classes now, avoiding

months or even years of delay to resolve these questions.

Finally, even if Plaintiffs succeed at class certification, summary judgment and/or trial,

they fully expect that Defendant would raise arguments requesting a reduction in damages based

on due process in light of the significant potential statutory damages at issue. *See, e.g.*, *Golan v.

FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) (statutory award in TCPA class action of $1.6

billion reduced to $32 million). Given the significant exposure that Whitepages faces, it is an

essentially foregone conclusion that these and other issues (*e.g.*, those flagged above) would be

pressed on appeal, further delaying relief.

Protracted litigation would also consume significant resources, including the time and

costs associated with completing oral discovery in these actions, along with additional motion

practice, trial, and any appeals. It is possible that "this drawn-out, complex, and costly litigation

process . . . would provide Class Members with either no in-court recovery or some recovery

many years from now[.]" *In re AT & T Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill.

2011). Because the proposed Settlement offers immediate—and substantial—monetary relief to

the Settlement Classes while avoiding the need for extensive and drawn-out litigation, preliminary approval is appropriate. *See*, *e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 2. The method of distributing relief to the Illinois and Ohio Settlement Class Members is effective and supports preliminary approval.

The next sub-factor evaluates whether the settlement's proposed method of distributing relief to the class is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while also ensuring that only "legitimate claims" are paid. 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed. 2011). Courts have held that requiring a claimant to fill out a short and simple claim form is an appropriate way to balance these concerns, especially in settlements with non-reversionary funds. *See In re Toyota Motor Corp. Unintended Acceleration Mktg. Litig.*, No. 8:10ML 02151 JVS, 2013 WL 3224585, at *18 (C.D. Cal. 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous."); *Schulte*, 805 F. Supp. 2d at 591 ("[T]he Court has reviewed the claim form and concludes that it is not unduly burdensome, long, or complex. All information called for on the form is required of the claims administrator in order for it to process claims."); 4 NEWBERG ON CLASS ACTIONS § 13:53.

The proposed Settlement here satisfies this factor by relying on well-established, effective methods for processing class members' Claim Forms and distributing the proceeds of the Settlement. The Illinois and Ohio Settlement Funds will be distributed to class members who submit a short and simple approved Claim Form, by mail or online, to the Settlement Administrator, Simpluris—an independent third party with extensive experience handling the

administration of settlement funds. (Agreement §§ 1.2, 1.3, 1.33, 2.1(b), 2.2(b).) The online

Claim Form also lets class members select to receive their settlement payment by Venmo, Zelle,

Paypal, or check. (*Id.* § 1.5.) The Settlement Administrator will provide class members with

resources (including a website, mailing address, and toll-free phone number) to contact the

Settlement Administrator or Class Counsel directly, review and process the Claim Forms, and

then disperse to class members their *pro rata* share of the respective Illinois or Ohio Settlement

Funds upon approval of the Court. (*Id.* §§ 2.1, 2.2, 5.1.)

### 3. The terms of the requested attorneys' fees are reasonable.

The third sub-factor considers the adequacy of the relief provided to the class, taking into

account "the terms of any proposed award of attorney's fees, including timing of payment…"

Fed. R. Civ. P. 23(e)(2)(C)(iii). If the Settlement is preliminarily approved, proposed Class

Counsel plans to petition the Court for an award of reasonable attorneys' fees after the

Settlement Classes have received notice of the Settlement. The Settlement's contemplated

method of calculating attorneys' fees (i.e., the percentage-of-the-fund method), and its limit on

attorneys' fees (i.e., no more than 35% of the non-reversionary Illinois and Ohio Settlement

Funds) is reasonable and predicated on the outstanding relief provided to the Settlement Classes.

(Agreement § 8.1.) To be sure, courts in this district routinely use the percentage-of-the-fund

method to determine a reasonable fee award in statutory damage settlements like this one, and a

35% award will adequately capture the hypothetical *ex ante* agreement that the Settlement

Classes would have entered into with proposed Class Counsel had they sought them out in the

market, given the risks in the case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629,

635 (7th Cir. 2011); *e.g.*, *Alvarado v. Int'l Laser Prods., Inc.*, No. 18-cv-7756, Dkt. 70 (N.D. Ill.

Jan. 24, 2020) (awarding 35% of fund); *Lopez-McNear*, No. 19-cv-2390, Dkt. 69 (awarding 35%

of fund); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv-07018, Dkt. 57 (N.D. Ill. Sept.

10, 2020) (awarding 35% of fund); *Prelipceanu*, No. 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) (awarding 40% of fund); *Zepeda v. Intercontinental Hotels Grp., Inc.*, No. 2018-CH-02140 (Cir. Ct. Cook Cnty.) (awarding 40% of fund); *Svagdis v. Alro Steel Corp.*, No. 2017-CH-12566 (Cir. Ct. Cook Cnty.) (awarding 40% of fund); *see also* 5 NEWBERG ON CLASS ACTIONS § 15:83 (5th ed. 2011) (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund"). Accordingly, that Class Counsel intend to seek no more than 35% of the fund in attorneys' fees is more than appropriate.[12] Finally, if approved, the Settlement allows Class Counsel to elect to be paid their portion of attorneys' fees within seven days after the Court's entry of a final approval order; otherwise, fees will be paid within five business days after final judgment, including any appeals. (Agreement §§ 1.13, 8.2, Exs. G-1, G-2.) These terms are reasonable and should be preliminarily approved.

### 4. The individual dismissals of Lukis, Brown, Novarisas, and Kolebuck-Utz have no effect on the relief made available to Settlement Class Members.

Finally, Rule 23(e)(2) requires the identification of "any agreement made in connection with the settlement." Fed. R. Civ. P. 23(e)(2), (3). The Rule ensures that the Court is aware of any "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2003 Amendment. The Rule obviously requires disclosure of the class settlement agreement but may also touch on matters such as separate fee or incentive award agreements, or undisclosed "blow-up" provisions. 4 NEWBERG ON CLASS ACTIONS § 13:55 (5th ed. 2011).

---

[12] To be clear, Defendant may oppose the amount of attorneys' fees requested by proposed Class Counsel, as there is no "clear-sailing" provision in the Agreement. (Agreement § 8.1.)

Here, all the terms affecting the Settlement Classes are contained within the Settlement Agreement. But out of an abundance of caution, Plaintiffs identify that the former named representatives—Stephanie Lukis, the heirs of Shawn Brown (J.B.1, J.B.2, J.B.3, and J.B.4), Mantas Novarisas, and Angela Kolebuck-Utz (the "Dismissed Plaintiffs")—have each signed modest individual settlement agreements and dismissed their individual claims. (Agreement Recitals ¶ L.) The need for these dismissals is straightforward: The Settlement Classes proposed here and reflected in the SAC are narrower than the ones originally pleaded, and none of the Dismissed Plaintiffs are members of those classes. Accordingly, the individual settlements have no effect on the Settlement Classes because they only "release . . . individual claims . . . that [are not presented here] for class treatment." *Rowe v. E.I. DuPont de Nemours & Co.*, No. CIV. 06-1810 RMB/AMD, 2011 WL 3837106, at *5 (D.N.J. Aug. 26, 2011) (reviewing class representatives' agreements to dismiss individual claims and confirming they did not present any "evidence of collusion or threat of conflict"). Further, none of the individual settlements are paid from or otherwise take money away from the Illinois and Ohio Settlement Funds, none are "predicate[d] . . . on the Court's approval of the class settlement or otherwise implicate the class settlement," and none provide Plaintiff Butler or Plaintiff Scholz-Pinger—the proposed representatives of the Settlement Classes—with any additional relief above what every other Illinois and Ohio Settlement Class Member stands to recover. *See id.* In short, apart from being a necessary step in reaching the class Settlement, the Dismissed Plaintiffs' individual settlements have no detrimental impact on the relief made available to the Settlement Classes.[13]

---

[13] The former class representatives—Stephanie Lukis, Shawn Brown's heirs (J.B.1, J.B.2, J.B.3, and J.B.4), Mantas Novarisas, and Angela Kolebuck-Utz—will present their individual settlement agreements for *in camera* inspection on the Court's request.

For all these reasons, Plaintiffs and proposed Class Counsel submit that the monetary and prospective relief provided by the Settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and well within the range of possible approval. The Court should grant preliminary approval.

## VII.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

Rule 23 and Due Process require that for any "class proposed to be certified for purposes of settlement under Rule 23(b)(3)[,] the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a [proposed settlement, voluntary dismissal, or compromise.]" Fed. R. Civ. P. 23(e)(1). Notice may be provided to the class via "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B) (eff. Dec. 1, 2018). The substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23(c)(2)(B).

But even an excellent settlement provides no value to class members unless they are informed of the benefits and their rights to participate, exclude themselves, or object. Here, the Settlement contemplates a comprehensive Notice Plan that focuses on providing direct notice to all members of the Illinois and Ohio Settlement Classes through both U.S. Mail and email. To that end, Whitepages is going to provide the Settlement Administrator with a list of all U.S Mail

and email addresses for the identified class members. Once the Class List is provided, the Settlement Administrator will update the addresses through the National Change of Address database and send direct Notice, which will include a fold-over postcard Claim Form attached, by First Class U.S. Mail. (Agreement §§ 4.2(a), (b); *see* Exs. 1-B, 1-C.) If any Notice by mail is returned as undeliverable, the Settlement Administrator will forward it to any forwarding addresses provided by the U.S. Postal Service, and if none are provided, the Settlement Administrator will make all reasonable efforts to locate the most recent addresses for such Settlement Class Members. (*Id.* § 4.2(b).)

The Settlement Administrator will also send an email notice with link to the online Claim Form to each class member for whom an email address is available. (*Id.* § 4.2(a).) Two subsequent reminder notices will be automatically sent to the class members via email reminding them of the claims deadline and Objection/Exclusion Deadline. And should the number of claims filed be less than 10% of each respective class, a third and final reminder notice will be sent two days before the deadline to file claims expires. (*Id.* § 4.2 (c).)

The direct notice documents are tailored to the respective Illinois and Ohio Settlement Classes and all of the Notice documents are written in plain, easily-understood language. To ensure a comprehensive Notice, the mail Notice will direct class members to a Settlement Website, which will provide class members 24-hour access to further information about the case, including important court documents and the ability to submit Claims Forms online. (*Id.* §§ 1.34, 4.2(d); *see* Exs. 1-B, 1-C.) Supporting the mail notices and Settlement Website will be a toll-free telephone line through which class members can contact Class Counsel and the Settlement Administrator to obtain additional information about the Settlement. (*Id.* § 5.1(f).) Finally, the

Settlement Administrator will provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (*Id.* § 4.2(e).)

Because the proposed Notice Plan effectuates direct Notice to all members of the Settlement Classes reasonably identified through Whitepages' records and fully apprises them of their rights, it comports with both Rule 23 and Due Process. Consequently, the Court should approve the Parties' proposed Notice Plan.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (i) granting preliminary approval of the Parties' proposed Class Action Settlement Agreement, (ii) certifying the proposed Settlement Classes for settlement purposes, (iii) approving the form and content of the Notice to the members of the Settlement Classes, (iv) appointing Plaintiff Fatima Butler as Class Representative of the Illinois Settlement Class and Plaintiff Julia Scholz-Pinger as Class Representative of the Ohio Settlement Class, (v) appointing Roberto Luis Costales and William Beaumont of Beaumont Costales LLC, J. Eli Wade-Scott of Edelson PC, and Philip L. Fraietta of Bursor & Fisher, P.A. as Class Counsel, (vi) scheduling a final fairness hearing in this matter, and (vii) providing such other and further relief as the Court deems reasonable and just.[14]

Respectfully submitted,

**FATIMA BUTLER** and **JULIA SCHOLZ-PINGER**, individually and on behalf of all others similarly situated,

Dated: April 28, 2022

By: /s/ J. Eli Wade-Scott
          One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Ari J. Scharg

---

[14] Plaintiffs intend to submit a proposed Preliminary Approval order for the Court's convenience and to propose future case deadlines.

43

ascharg@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163

Roberto L. Costales, Esq.
rlc@beaumontcostales.com
William H. Beaumont, Esq.
whb@beaumontcostales.com
BEAUMONT COSTALES LLC
107 W. Van Buren, Suite 209
Chicago, Illinois 60605
Telephone: (773) 831-8000