# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

FATIMA BUTLER and JULIA SCHOLZ-
PINGER, individually and on behalf of all
others similarly situated,

Plaintiffs,

      v.

WHITEPAGES, INC.,

Defendant.

Case No. 19-cv-04871

Hon. Gary S. Feinerman

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW
## FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND ................................................................................................ 3

      A.    The Illinois and Ohio Right of Publicity Acts .................................. 3

      B.    *Dobrowolski* and the Instant Claims ................................................ 4

      C.    Litigation History and the Work Performed for the Settlement Classes ........ 6

      D.    The Settlement Secures Excellent Relief for the Settlement Classes .............. 10

III.  THE REQUESTED ATTORNEYS' FEES, EXPENSES, AND INCENTIVE
      AWARDS ARE REASONABLE AND SHOULD BE APPROVED .......................... 11

      A.    Percentage-of-the-Fund Should be Used to Determine Fees Here ................. 14

      B.    A 35% Fee Award Is Appropriate Here. ......................................... 15

            1.    This case presented serious obstacles to recovery, and Class Counsel
                  litigated the case mindful of the high possibility that the classes might
                  recover nothing ................................................................ 17

            2.    Class Counsel achieved an excellent result for the Settlement
                  Classes ........................................................................... 20

            3.    A lodestar cross-check confirms the reasonableness of the requested
                  fees ................................................................................. 22

IV.   THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE
      AWARDS ......................................................................................................... 25

V.    CONCLUSION ................................................................................................. 26

## <u>TABLE OF AUTHORITIES</u>

### <u>United States Supreme Court Cases</u>

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)............................................................... 12

*Frank v. Gaos*,
    139 S. Ct. 1041 (2019)........................................................... 20

*Hall v. Cole*,
    412 U.S. 1 (1973)................................................................... 22

### <u>United States Circuit Court of Appeals Cases</u>

*Americana Art China, Co., Inc. v. Foxfire Printing & Packaging Inc.*,
    743 F.3d 243 (7th Cir. 2014) .......................................... 12, 20

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ....................................... 22, 25

*Daniels v. Fanduel, Inc.*,
    909 F.3d 876 (7th Cir. 2018) ............................................... 18

*ETW Corp. v. Jireh Publ'g Inc.*,
    332 F.3d 915 (6th Cir. 2003) ............................................. 3, 4

*Florin v. Nationsbank of Ga. N.A.*,
    34 F.3d 560 (7th Cir. 1994) .......................................... 11, 14

*Golan v. FreeEats.com, Inc.*,
    930 F.3d 950 (8th Cir. 2019) ............................................... 19

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ........................................ 14, 24

*In re Google Referrer Header Privacy Litig.*,
    869 F.3d 737 (9th Cir. 2017) ............................................... 20

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ..................................... 2, 12, 16

*In re Trans Union Corp. Privacy Litig.*,
    629 F.3d 741 (7th Cir. 2011) ............................................... 12

*Montgomery v. Aetna Plywood*,
    231 F.3d 399 (7th Cir. 2000) ........................................ 15

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ........................................ 16

*Pickett v. Sheridan Health Care Ctr.*,
    813 F.3d 640 (7th Cir. 2016) ........................................ 22

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) .................................... 12, 16

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ........................................ 12

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ........................................ 12

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ........................................ 16

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) ........................................ 22

*United States v. Dish Network L.L.C.*,
    954 F.3d 970 (7th Cir. 2020) ........................................ 19

## United States District Court Cases

*Adkins v. Facebook, Inc.*,
    No. 18-cv-05982-WHA (N.D. Cal. May 6, 2021 and July 13, 2021) ........................ 20, 21

*Alvarado v. Int'l Laser Prods., Inc.*,
    No. 18-cv-7756 (N.D. Ill. Jan. 24, 2020) ........................................ 26

*Barnes v. Aryzta*,
    No. 1:17-cv-07358, 2019 WL 277716 (N.D. Ill. 2019) .................................... 23

*Bedford v. Lifespace Communities, Inc.*,
    No. 20-cv-04574 (N.D. Ill. May 12, 2021) ........................................ 3

*Bonilla v. Ancestry.com Operations Inc.*,
    574 F. Supp. 3d 582 (N.D. Ill. 2021) ............................................ 19

*Dancel v. Groupon, Inc.*,
    No. 18 C 2027, 2019 WL 1013562 (N.D. Ill. Mar. 4, 2019) .......................... 18

*Davis v. Heartland Emp. Servs.*,
    No. 19-cv-00680 (N.D. Ill. Oct. 25, 2021) ...............................................................15, 26

*Dobrowolski v. Intelius, Inc.*,
    No. 17-cv-1406, 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) ............................... *passim*

*Farias v. R.R. Donnelley & Sons Co.*,
    No. 20-cv-07468 (N.D. Ill. July 20, 2022)......................................................................... 23

*Fraley v. Facebook, Inc.*,
    966 F. Supp. 2d 939 (N.D. Cal. 2013) ............................................................................... 21

*Gabiola v. Sarid*,
    No. 16-CV-02076, 2017 WL 4264000 (N.D. Ill. Sept. 26, 2017) .................................... 18

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016)........................................................................ 13, 16, 25

*Goodman v. Hangtime, Inc.*,
    No. 14-cv-01022 (N.D. Ill. Sept. 29, 2015) ...................................................................... 23

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    No. 12-0660-DRH, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018)..................................... 15

*In re Akorn, Inc. Secs. Litig.*,
    No. 1:15-cv-01944 (N.D. Ill. June 5, 2018)................................................................... 3, 26

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) .................................................................... 15, 17, 21

*In re Facebook Biometric Info. Privacy Litig.*,
    No. 3:15-CV-03747-JD, 522 F. Supp. 3d 617 (N.D. Cal. 2021) ...................................... 22

*In re Google LLC Street View Elec. Commc'ns Litig.*,
    No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)........................... 20

*In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*,
    733 F. Supp. 2d 997 (E.D. Wis. 2010).............................................................................. 24

*In re Nat'l Collegiate Athletic Ass'n*,
    332 F.R.D. 202 (N.D. Ill. 2019)........................................................................................ 24

*Kolebuck-Utz v. Whitepages Inc.*,
    No. 21-cv-00053 (W.D. Wash.).............................................................................9, 10, 18

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015)...................................................................... *passim*

*Krause v. RocketReach, LLC*,
    561 F. Supp. 3d 778 (N.D. Ill. 2021) ............................................................... 19

*Leung v. XPO Logistics, Inc.*,
    326 F.R.D. 185 (N.D. Ill. 2018)................................................................... 17, 21

*Nistra v. Reliance Tr. Co.*,
    No. 1:16-cv-04773 (N.D. Ill. June 19, 2020).................................................. 26

*Perez v. Rash Curtis & Assocs.*,
    No. 16-cv-03396, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020)..................... 23

*Perkins, et al v. LinkedIn Corp.*,
    No. 5:13-cv-04303 (N.D. Cal. Feb. 16, 2016) ................................................ 21

*Perlin v. Time Inc.*,
    237 F. Supp. 3d 623 (E.D. Mich. 2017).......................................................... 19

*Pratt v. Everalbum, Inc.*,
    283 F. Supp. 3d 664 (N.D. Ill. 2017) .............................................................. 18

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ......................................................... 24, 26

*Siegel v. Zoominfo Techs., LLC*,
    No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021)....................... 19

*Spicer v. Chicago Bd. Options Exch., Inc.*,
    844 F. Supp. 1226 (N.D. Ill. 1993) ................................................................. 24

*Vrdolyak v. Avvo, Inc.*,
    206 F. Supp. 3d 1384 (N.D. Ill. 2016) ............................................................ 18

*Wright v. Southern New Hampshire Univ.*,
    561 F. Supp. 3d 211 (D.N.H. Sept. 22, 2021)................................................. 23

**Illinois Circuit Court Cases**

*Miracle-Pond v. Shutterfly*,
    2019-CH-07050 (Cir. Ct. Cook Cnty. Sept. 9, 2021) ..................................... 21

*Rosenbach v. Six Flags Ent. Corp.*,
    2016-CH-00013 (Cir. Ct. Lake Cnty. Oct. 29, 2021) ..................................... 21

## Miscellaneous Authority

1 Rights of Publicity and Privacy
     § 1:3 (2d ed) ........................................................................................... 4
     § 6:61 (2d ed) ....................................................................................... 18

740 ILCS 14 ................................................................................................ 16

765 ILCS 1075 ...................................................................................... passim

5 William Rubenstein, NEWBERG ON CLASS ACTIONS
     § 15.83 (6th ed.) .................................................................................16
     § 15.87 (6th ed.) .................................................................................24

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*,
     7 J. EMPIRICAL L. STUD. 811 (2010) ................................................... 15

Fed. R. Civ. P. 23 ...................................................................................... 11

H.B. 559, 102nd Gen. Assembly (Ill. 2021) ...................................................19

H.B. 560, 102nd Gen. Assembly (Ill. 2021) ...................................................19

H.B. 1764, 102nd Gen. Assembly (Ill. 2021) .................................................19

H.B. 3112, 102nd Gen. Assembly (Ill. 2021) .................................................19

H.B. 3304, 102nd Gen. Assembly (Ill. 2021) .................................................19

H.B. 3414, 102nd Gen. Assembly (Ill. 2021) .................................................19

R.C. § 2741 ........................................................................................ passim

S.B. 56, 102nd Gen. Assembly (Ill. 2021) .....................................................19

S.B. 300, 102nd Gen. Assembly (Ill. 2021) ...................................................19

S.B. 1607, 102nd Gen. Assembly (Ill. 2021) .................................................19

S.B. 3874, 102nd Gen. Assembly (Ill. 2022) .................................................19

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs:*
     *An Empirical Study*, 53 UCLA L. Rev. 1303 (2006) ........................................ 3

## I.      INTRODUCTION

Plaintiffs Fatima Butler and Julia Scholz-Pinger (together, "Plaintiffs") brought this class action lawsuit alleging that Defendant Whitepages, Inc. ("Defendant" or "Whitepages")—the operator of a "people search" website—used their and thousands of other Illinois and Ohio residents' identities to solicit subscription purchases on its website in violation of the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/30(a), and the Ohio Right of Publicity Act ("ORPA"), R.C. § 2741.02. When the complaint was first filed in 2019, the risks of Plaintiffs' case were high and palpable: the only substantive opinion in a right-of-publicity action in this District against a "people search" website found that advertisements adjacent to the "free previews" at issue here did not violate the IRPA. *See Dobrowolski v. Intelius*, No. 17-cv-1406, 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017). And there was virtually no case law concerning ORPA's application in similar circumstances. Nevertheless, firmly believing in the merits of their claims, Plaintiffs and their counsel litigated this Action against strong headwinds for three years, which included defeating three separate motions to dismiss, defeating a motion for summary judgment, conducting significant written and oral discovery, and successfully moving to compel crucial discovery from Whitepages.[1] Finally, after a mediation with the Honorable Sidney Schenkier (Ret.) and following months of subsequent negotiations, the Parties reached the first-ever class settlement under either the IRPA or the ORPA.

The Settlement resolves the claims of two settlement classes: an Illinois Settlement Class of 30,211 members and an Ohio Settlement Class of 28,642 members (together, the "Settlement Classes"). The monetary relief secured by the Agreement is exceptional, as it creates two non-

---

[1]      Capitalized terms used in this motion are those used in the Class Action Settlement Agreement ("Settlement" or "Agreement") attached hereto as Exhibit 1.

reversionary settlement funds for the benefit of each respective class: a $1,208,440 Illinois Settlement Fund and a $2,864,200 Ohio Settlement Fund (together, the "Settlement Funds"). (Agreement §§ 1.17, 1.26.) After any fees and cost are deducted, and assuming final claims rates of 30% for the Ohio Settlement Class and 35% for the Illinois Settlement Class, each Ohio claimant will receive a cash payment of about $200 and each Illinois claimant about $65. The Settlement also includes non-monetary relief: Defendant has agreed to stop displaying the name of any class member on any page on its website that includes a subscription offer to Defendant's products or services. (*Id.* § 2.3.) This Settlement, achieved by years-long efforts of Plaintiffs and Class Counsel, sets a high bar for what meaningful relief looks like in any future right of publicity class action.

In light of this pioneering result, Class Counsel respectfully moves the Court to award 35% of each Settlement Fund (less the total amount paid notice and administration costs and the proposed incentive awards) as attorneys' fees and expenses. Specifically, from the Illinois Settlement Fund, after subtracting $112,860 in notice and administration costs designated to the Illinois Settlement Class and the requested $1,000 incentive award to Ms. Butler, Class Counsel request $383,103 in attorneys' fees and expenses. From the Ohio Settlement Fund, after subtracting $107,140 in notice and administration costs designated to the Ohio Settlement Class and the requested $1,000 incentive award to Ms. Scholtz-Pinger, Class Counsel request $964,621 in attorneys' fees and expenses. The requested fee awards accurately reflect the fee arrangement that a class member would have entered into with Class Counsel had they made an *ex ante* bargain before heading into litigation like this, given the risks in the case. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001). Moreover, the requested percentage fee award is well in line with or less than common fund fee awards in similarly-sized statutory privacy cases

2

in this District. (*See* Exhibit 2, Chart 1.) The reasonableness of this request is further confirmed by a lodestar cross-check: Class Counsel spent over three years of time and effort litigating this case, totaling $971,518.50 in appropriate hourly billings, which results in a modest lodestar multiplier of 1.39.

Plaintiffs' requested $1,000 incentive awards are similarly reasonable. Incentive awards in class action settlements frequently exceed $10,000. *See In re Akorn, Inc. Secs. Litig.*, No. 1:15-cv-01944, dkt. 182 (N.D. Ill. June 5, 2018) (Feinerman, J.) (awarding three $10,000 incentive awards); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1348 (2006) (finding that "[t]he average award per class representative was $15,992"). Plaintiffs' requested awards reflect their participation in this case, including their willingness to step up as named plaintiffs when the former plaintiffs could no longer serve, and are far less than what has been awarded in several similar privacy cases in this District. *See, e.g.*, *Bedford v. Lifespace Communities, Inc.*, No. 20-cv-04574, dkt. 31 (N.D. Ill. May 12, 2021) (incentive award of $10,000 in BIPA case).

Plaintiffs' requested fees and incentive awards are reasonable and warrant the Court's approval.

## II.    BACKGROUND

A brief summary of the underlying facts and law will lend context to the instant motion and demonstrate the reasonableness of the requested fees and incentive awards.

### A.    The Illinois and Ohio Right of Publicity Acts

Right of publicity statutes—state laws that codify the common law tort of "appropriation of likeness"—recognize a right inherent to everyone to control the commercial use of their identity and persona. *See* 765 ILCS 1075/10 (defining "right of publicity" under IRPA); *ETW*

*Corp. v. Jireh Publ'g Inc.*, 332 F.3d 915, 954 (6th Cir. 2003) (Clay, C.J. dissenting) (discussing history of the ORPA). These statutes are enacted not merely to protect famous celebrities but also ordinary people whose information, in the age of increasingly intrusive technologies, easily becomes a source of profits for corporations and technology companies. *See* 1 Rights of Publicity and Privacy § 1:3 (2d ed.).

The Illinois Right of Publicity Act and the Ohio Right of Publicity Act are exemplars of these statutes. The IRPA establishes that "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent" from that individual. 765 ILCS 1075/30(a). The statutory definition of "identity" includes "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS 1075/5. A "commercial purpose," in turn, is "the public use or holding out of an individual's identity," which can be "(i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services" or "(ii) for purposes of advertising or promoting products, merchandise, goods, or services." *Id.* Similarly, the ORPA prohibits the "use any aspect of an individual's persona for a commercial purpose … [without] first obtain[ing] … written consent." R.C. § 2741.02. Compared to the IRPA, the Ohio statute sets a higher bar for plaintiffs to recover by requiring that the misappropriated persona have "commercial value." *See* R.C. § 2741.01(A).

### B. *Dobrowolski* **and the Instant Claims**

At the time this Action commenced in 2019, the merits of Plaintiffs' claims were questionable and the risks of succeeding here high, given that *Dobrowolski v. Intelius* was the only action in the District challenging "people search" websites under a right of publicity

4

statute—a case that didn't survive past the pleadings. No. 17 CV 1406, 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017). There, the plaintiffs alleged that defendants, also operators of "people search" websites, paid Google to display advertisements within Google's search results when someone entered a particular name into the Google search engine. *Id.* at *2. The Google search result link led to a "marketing page" on defendants' websites which displayed identifying information about the plaintiffs and other people with the same name. *Id.* at *1-2. A user of the defendants' websites could then elect to purchase "information[al] reports" about any of the individuals who showed up on the marketing page. *Id.* The *Dobrowolski* court found these facts insufficient to state an IRPA claim because (1) the defendants were only using plaintiffs' identities to advertise the sale of the plaintiffs' "informational reports" (as opposed to advertising a separate product); and (2) it was impossible to say which identically-named individual on defendants' marketing page—if any—the paid Google search result was advertising on behalf of. *Id.* at *5.

Facing an up-hill battle given *Dobrowolski's* reasoning, Class Counsel brought this case against Whitepages. Like the defendants in *Dobrowolski*, Defendant Whitepages also operates a "people search" website, at whitepages.com. (Dkt. 249 ¶ 9.) When a user types in a first and last name in the website's search bar, a list of persons returns, which includes specific and personally identifying information about each profile in its databases such as the middle initial, age range, phone number, and current address. (*Id.* ¶¶ 11-12.) If a user clicks on a result, they are taken to a more detailed, "free preview" page specific to that individual. (*Id.* ¶ 13.) These advertising previews, Plaintiffs allege, impermissibly display their identity as advertisements for Defendant's monthly subscription services, which, if purchased, enables the subscriber to view background reports of any person in Whitepages' database. (*Id.* ¶¶ 15, 20.) Plaintiffs allege that

this "free preview" uses their identity (and that of other Illinois and Ohio residents) for commercial uses without their consent in violation of both the IRPA, 765 ILCS 1075/30(a), and the ORPA, R.C. § 2741.02. (*Id.* ¶¶ 45–58.)

### C.      Litigation History and the Work Performed for the Settlement Classes

This Action commenced on June 19, 2019, when then-Plaintiff Stephanie Lukis filed her putative class action complaint against Whitepages in the Circuit Court of Cook County, Illinois, alleging that Defendant violated IRPA by using her and other Illinois residents' personally identifying information in "free preview" ads without their written consent. Defendant timely removed the case to this Court. (Dkt. 1.).

Three years of contentious litigation followed. Defendant filed its first motion to dismiss in August 2019, arguing that the Court lacked personal jurisdiction over it, that IRPA did not apply to the alleged conduct, that its free preview ads are protected under the First Amendment, and that the claims are barred under Section 230 of the Communications Decency Act. (*See* dkt. 17.) Defendant relied heavily on *Dobrowolski*, contending that since the court there declared that the plaintiffs' identities were "not used to promote a separate product," they were not used for "commercial purposes" under the meaning of IRPA, and therefore the alleged advertisements did not violate IRPA. (*See id.* at 8.) Class Counsel vigorously opposed the motion, arguing *inter alia* that the "free preview" of Lukis' identifying information was used by the Defendant to solicit purchase of services *separate* from her background report, namely its subscription packages that allowed users a number of background reports on *anyone*, which qualifies as a "commercial use" under IRPA. (Dkt. 24 at 2.) In addition, the previews were posted on Whitepages' own website where it was abundantly clear that they corresponded to a distinct person—that was not the case, the *Dobrowolski* court found, on a Google search results page. (*Id.*) After full briefing, the Court

denied the motion in full on April 16, 2020, agreeing with Class Counsel on the legal and factual differences between this Action and *Dobrowolski* and allowing the case to go forward. (Dkt. 37 at 18.)

Three weeks later, Whitepages moved the Court (i) to reconsider the denial (dkt. 40), (ii) to certify five questions for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (dkt. 43), and (iii) to stay proceedings pending its motion for reconsideration and/or request for interlocutory appeal (dkt. 46). Class Counsel opposed the motions, arguing that there was no new evidence or manifest errors of fact or law to warrant reconsideration, and appeal would be improper given the issues were not contestable or otherwise appealable. (Dkt. 53.) The Court denied the motion to stay and took the remaining motions under advisement. (Dkts. 53, 58, 60.)

Meanwhile, Whitepages moved for summary judgment on June 25, 2020. (Dkt. 64.) Once again relying heavily on *Dobrowolski*, which Whitepages claimed was a "nearly identical claim" to the instant Action (*id.* at 13), Defendant asked the Court to grant summary judgment in its favor based on IRPA exemptions and First Amendment protection. (*Id.*) Again, Class Counsel opposed, arguing (1) that Defendant's background reports were not "book[s]" or "article[s]" exempt from IRPA, because instead of offering proprietary information, they merely aggregated data shared by third parties into a single online report; (2) that Defendant's reports were not "news" or "public affairs" exempt from IRPA, because they contained a host of non-newsworthy information, such as a person's cell phone number or address history; (3) that the preview using Lukis' identity was "commercial speech" because it was used to entice the purchase of membership services, subject to IRPA's consent requirements, and (4) that there was no constitutional conflict with the First Amendment here, since Lukis' IRPA claims concerned the free preview of a background report to solicit other purchases, not the report itself. (Dkt. 78 at 2–

6.)

While the Court took Defendant's summary judgment motion under advisement, the Parties began discovery by exchanging written discovery requests. Plaintiff Lukis and Class Counsel responded to 350 written discovery requests from Defendant, including 242 requests for admission, produced documents, and Stephanie Lukis sat for a 14-hour deposition over two days, which Class Counsel defended. (*See* Dkts. 154, 191.) On the flip side, Plaintiff Lukis and Class Counsel obtained hundreds of pages of documents from Whitepages and deposed three of Whitepages' personnel. But obtaining that discovery was not easy: it required Class Counsel to move to compel discovery from Defendant twice and move to hold Defendant in contempt for failure to produce Court-ordered discovery. (*See* dkts. 106, 127, 192.)

On October 27, 2020, the Court denied Whitepages' motion to reconsider, its motion for leave to appeal, and its motion for summary judgment. (Dkt. 88.) That same day, Whitepages filed its second motion to dismiss, this time based on arbitrability. (Dkt. 89, 90.) Defendant argued that Plaintiff Lukis, by using and accessing Defendant's website, was bound by its Terms of Use that contained a mandatory arbitration provision and moved the Court to dismiss or transfer the action so that the parties could arbitrate. (*Id.*) Class Counsel opposed the motion, arguing that Defendant had waived any right it had to arbitrate and that forcing Lukis to arbitrate her claims at that point—after she'd already defeated several dispositive motions—would unfairly prejudice her. (Dkt. 103.) The Court denied Defendant's motion to compel arbitration on April 23, 2021, which Defendant appealed. (Dkt. 174, 181.)

On April 26, 2021, Plaintiff Lukis amended the complaint to add Shawn Brown and Mantas Norvaisas as additional plaintiffs. (Dkt. 176.) This prompted Defendant to file a third motion to dismiss based on standing, personal jurisdiction over the new plaintiffs' claims, and

the arbitrability of their claims. (Dkt. 182.) Defendant also moved to (1) stay the case pending resolution of the appeal and the motion to dismiss, or alternatively, (2) limit discovery to arbitrability issues. (Dkt. 184.) Two weeks later, the Court granted Defendant's motion to stay in part, but allowing the Parties to continue discovery as to the arbitrability of the new plaintiffs' claims. (Dkt. 193.) The Court then denied Defendant's motion to dismiss based on standing and personal jurisdiction and deferred ruling on the arbitrability issues pending further proceedings. (Dkt. 219.)

Around this same time, Class Counsel was also litigating parallel action against Whitepages in the Western District of Washington, in the matter captioned *Kolebuck-Utz v. Whitepages, Inc.*, No. 21-cv-00053 (W.D. Wash.). That case, like this one, concerned Whitepages' "free preview" advertising, alleging that it violated Ohio's right of publicity law, R.C. § 2741.01, *et seq. See generally Kolebuck-Utz*, No. 21-cv-00053, dkt. 1 (W.D. Wash. Jan. 15, 2021). Whitepages moved to dismiss that lawsuit on February 25, 2021, generally relying on the same theories and arguments raised in this case. *Id.* at dkt. 12. The motion was fully briefed and denied on April 22, 2021. *Id.* at dkts. 12, 13, 15, 18.

After Class Counsel defeated Defendant's third motion to dismiss in this action and its first motion to dismiss in *Kolebuck-Utz*, the Parties began discussing the possibility of a global settlement resolution in July 2021. (Declaration of J. Eli Wade-Scott ("Wade-Scott Decl."), attached as Exhibit 3, ¶ 3.) The Parties exchanged informal discovery regarding the size and composition of the classes in Illinois and Ohio, as well as initial settlement offers. (*Id.* ¶¶ 5, 6.) The comprehensive, back-and-forth negotiations proved fruitful as the Parties agreed to participate in a formal mediation session. (*See* dkt. 217, ¶ 1.) On September 21, 2021, the Parties attended a full-day mediation session with the Honorable Sidney Schenkier (Ret.) of JAMS in

Chicago. (*See* dkt. 225.) The Parties' settlement negotiations lasted throughout the day but did not result in a settlement. (*Id.*) However, the Parties agreed to continue working with Judge Schenkier toward resolution. (*Id.*) After considerable arm's-length negotiations over the next several months, including through additional conferences held with Judge Schenkier and the informal sharing of information about the proposed settlement classes, the Parties ultimately agreed to resolve both actions through a single class action settlement. After four months of additional negotiation on the outstanding material terms and the exchange of additional informal discovery, the Parties executed the Settlement Agreement now before the Court. (Wade-Scott Decl. ¶¶ 5, 6.)

On April 28, 2022, in accordance with the terms of the final Settlement Agreement, Plaintiffs Fatima Butler (an Illinois resident) and Julia Scholz-Pinger (an Ohio resident) filed a Second Amended Class Action Complaint ("SAC") on behalf themselves and an Illinois Class and an Ohio class. (Dkt. 249.) On the same day, the former named representatives in this action and the *Kolebuck-Utz* action (Stephanie Lukis, the heirs of Shawn Brown (J.B.1, J.B.2, J.B.3, and J.B.4), Mantas Norvaisas, and Angela Kolebuck-Utz) voluntarily dismissed their individual claims pursuant to individual settlement agreements with Whitepages. (Dkt. 248.) Plaintiffs Butler and Scholz-Pinger then promptly moved for preliminary approval of the class action settlement (dkt. 251), which the Court granted on June 16, 2022 (dkt. 260).

### D. The Settlement Secures Excellent Relief for the Settlement Classes

As detailed in Plaintiffs' motion for preliminary approval, the relief to the two Settlement Classes is an outstanding result, especially as a pioneering settlement with a "people search" website under two different right-of-publicity statutes. The Settlement creates two non-reversionary funds: a $1,208,440 Illinois Settlement Fund for the benefit of 30,211 Illinois

Settlement Class members, and a $2,864,200 Ohio Settlement Fund for the benefit of 28,642 Ohio Settlement Class members—together, the funds total $4,072,640. Every Illinois and Ohio Settlement Class Member who submits a valid Claim Form will be entitled to a *pro rata* share of their respective Class's fund, after Court-approved fees and costs are paid.

Based on current and expected claims rates across the two classes,[2] and after payment of all fees and costs, Class Counsel estimates that each Ohio Settlement Class Member who submitted an Approved Claim will receive a Settlement Payment of around $200 and each Illinois Settlement Class Member with an Approved Claim around $65. These figures, the result of resilient years-long litigation efforts from Plaintiffs and Class Counsel, are no small feat. In the landscape of other privacy settlements securing little (if any) meaningful monetary relief, discussed further below, this Settlement raises the bar by every measure.

## III. THE REQUESTED ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS ARE REASONABLE AND SHOULD BE APPROVED.

Rule 23 authorizes courts to "award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In common fund settlements like this one, the attorneys' fee award is typically made as a share of the fund. The common fund doctrine "is based on the notion that not one plaintiff, but all 'those who have benefitted from litigation should share its costs.'" *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) (citation omitted). By awarding fees payable from the common fund created for the benefit of the entire class, the court spreads litigation costs proportionately among those who will benefit from

---

[2]     The current claims rate is 31.5% for the Illinois Settlement Class and 26.9% for the Ohio Settlement Class, and there are still two weeks to submit claims before the August 24th Claims Deadline. The estimated payments per claimant are based on estimated final claims rates of 35% for the Illinois Settlement Class and 30% for the Ohio Settlement Class. Plaintiffs will update the Court on the final claims rates and payments per claimant in their motion for final approval of the settlement, which is due September 7, 2022.

the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

The Seventh Circuit has consistently directed "that attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services," *Silverman v. Motorola Sols.*, *Inc.*, 739 F.3d 956, 957 (7th Cir. 2013), taking into account "the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007); *see also In re Synthroid*, 264 F.3d at 719 (cautioning that "any method other than looking to prevailing market rates assures random and potentially perverse results"). In making this determination, "the judge must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members." *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014).

Ultimately, district courts "must set a fee by approximating the terms that [the class and class counsel] would have been agreed to *ex ante*, had negotiations occurred." *Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 246-47 (7th Cir. 2014) (internal quotation marks omitted). Because "[s]uch [an] estimation is inherently conjectural," *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011), and the Seventh Circuit does not prescribe a preferred method of calculation, "in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court." *Americana Art*, 743 F.3d at 247.

Finally, courts in the Seventh Circuit do not include notice and administration costs or incentive awards as part of the fund in making percentage-of-the-fund fee awards. *See Redman*, 768 F.3d at 630 ("The ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members

received.") Here, the Settlement Administrator has agreed to cap its expenses at $112,860 for the Illinois Settlement Class and $107,140 for the Ohio Settlement Class (or, $220,000 in total), so that the Court may award attorneys' fees without unexpected additional expenses coming up later that change the ratio. *See Gehrich v. Chase Bank USA, N.A*., 316 F.R.D. 215, 238 (N.D. Ill. 2016) (Feinerman, J.) (explaining that *total* notice and administration expenses must be deducted from the fund before calculating attorneys' fees).

Class Counsel took this case on a contingent basis despite the high risks of no recovery at the outset. (Wade-Scott Decl. ¶ 8.) Now that Class Counsel has achieved the results they did for the Settlement Classes and set a strong precedent for future right of publicity class action settlements, they respectfully request that, after deducting the capped amount of notice and administration costs and the proposed incentive awards from each Settlement Fund, the Court award Class Counsel 35% of each Settlement Fund in attorneys' fees and expenses, or $383,103 from the Illinois Settlement Fund[3] and $964,621 from the Ohio Settlement Fund.[4] The requested fee amounts are inclusive of the $19,995.44 in costs fronted by Class Counsel—i.e., Class Counsel is not requesting costs separately. (*See* Wade-Scott Decl. ¶ 15; Declaration of Philip Fraietta ("Fraietta Decl."), attached as Exhibit 4, ¶ 16; Declaration of Roberto Luis Costales (Costales Decl."), attached as Exhibit 5, ¶ 18.) The requested fee amount is well in line with what other courts in this District have found a hypothetical *ex ante* bargain to be in cases brought

---

[3]      The $383,103 amount represents 35% of the *net* Illinois Settlement Fund, that is, after deducting from the Illinois Settlement Fund (1) $112,860 in total notice and administration costs, and (2) a $1,000 proposed incentive award to Plaintiff Butler. (*See* Wade-Scott Decl. ¶ 17.)

[4]      The $964,621 amount represents 35% of the *net* Ohio Settlement Fund, that is, after deducting from the Ohio Settlement Fund (1) $107,140 in total notice and administration costs, and (2) a $1,000 proposed incentive award to Plaintiff Scholtz-Pinger. (*See* Wade-Scott Decl. ¶ 17.)

under privacy statutes. Indeed, the fee request accurately tracks Class Counsel's uncompensated outlay of time litigating the case and negotiating the Settlement: 35% of each fund reflects only a modest 1.39 multiplier on Class Counsel's lodestar.

### A.  Percentage-of-the-Fund Should be Used to Determine Fees Here.

In the Seventh Circuit, district courts deciding common fund cases may choose one of two methods for awarding attorneys' fees: (1) percentage-of-the-fund or (2) lodestar approach. *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500 (N.D. Ill. 2015). Under the percentage-of-the-fund approach, "plaintiffs' attorneys . . . petition the court to recover its fees" as a percentage of the total fund. *Florin*, 34 F.3d at 563. In contrast, the lodestar approach requires district courts to determine the reasonable value of the services rendered and increase that amount by a multiplier that factors in various considerations. Under the lodestar approach, the court first determines a "reasonable hourly rate allowable for each attorney . . . involved in the case." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). Then, the court multiplies "the hours reasonably expended by the reasonable hourly rates" to produce the lodestar. *Id.* Finally, the court increases the lodestar by a multiplier that accounts for other relevant considerations, such as the attorneys' amount of risk in bringing the case or the complexity of the issues. *See id.* (holding that courts should consider from an *ex ante* perspective "what size risk the attorney assumed at the outset by taking this type of case").

While the court has discretion over whether to use the percentage-of-the-fund or lodestar approach, courts typically select a method by looking "to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred." *Kolinek*, 311 F.R.D. at 501. The normal practice in consumer class actions "is to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery." *Id.* Therefore, the percentage-of-the-

14

fund approach best mirrors typical contingency agreements, and "the vast majority of courts in the Seventh Circuit" use it in common fund cases. *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *7 (S.D. Ill. Dec. 16, 2018) (quotation omitted); *see also* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811, 814 (2010) ("Most federal judges chose to award fees by using the highly discretionary percentage-of-the-settlement method.").

A percentage-of-the-fund, contingent approach is what the class would have negotiated with Class Counsel at the outset in a hypothetical *ex ante* bargain; in fact, it has been used to determine a reasonable fee award in virtually every class action settlement under a privacy statute in both federal and state courts in the District. *E.g.*, *Davis v. Heartland Emp. Servs., LLC*, No. 19-cv-00680, dkt. 130 (N.D. Ill. Oct. 25, 2021) (BIPA settlement with $5,418,000 fund); *Kolinek*, 311 F.R.D. 483 (TCPA settlement with $11 million fund). (*See* Exhibit 2, Charts 1 & 2.) The lodestar method would have "required a level of monitoring the class members were not interested in or capable of providing," and the percentage approach best "align[s] the incentives of the class[es] and [their] counsel." *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015). Consequently, this Court should apply the percentage-of-the-recovery method here.

### B. A 35% Fee Award Is Appropriate Here.

The Seventh Circuit has instructed district courts to award reasonable attorneys' fees, and that "the measure of what is reasonable is what an attorney would receive from a paying client in a similar case." *Montgomery v. Aetna Plywood*, 231 F.3d 399, 408 (7th Cir. 2000). "[I]n consumer class actions . . . the presumption should . . . be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class

members and their counsel." *Gehrich*, 316 F.R.D. at 235 (citing *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014)); *see also* 5 William Rubenstein, NEWBERG ON CLASS ACTIONS § 15.83 (6th ed.) (noting that, generally, "50% of the fund is the upper limit on a reasonable fee award from any common fund"). Courts consider, against that presumption, the benefit achieved for the class, the fee awards made in similar cases, the risks that the particular case presented, the quality of the legal work provided, the anticipated work necessary to resolve the litigation, and the stakes of the case. *See Redman*, 768 F.3d at 633 ("[T]he central consideration is what class counsel achieved for the members of the class"); *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) ("[A]ttorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees awarded by the district court."); *see also In re Synthroid*, 264 F.3d at 721.

The Settlement here is first of its kind, as it is the first class action settlement under either the IRPA or the ORPA, and the first right of publicity settlement ever against a people search company like Whitepages (though there are dozens like it pending against other people search companies). Though there is no perfect comparator, a survey of settlements under similar privacy statutes that also provide for statutory damages provides helpful guidance. Under the Illinois Biometric Information Privacy Act (BIPA), 740 ILCS 14/1, *et seq.*, at least four courts in this District have awarded the same 35% requested here. (*See* Exhibit 2, Chart 1.) The *ex ante* negotiation could have well resulted in an agreement *higher* than the requested 35%, as numerous other Illinois courts have awarded as much as 40% of the fund in BIPA cases and this case originated in state court. (*See id.*, Chart 2.) Similarly, courts in the Seventh Circuit have awarded percentages of the fund higher than 35% in other similar cases involving privacy statutes, like the TCPA, where, as here, the case was "riskier than the typical [statutory privacy]

16

class action" and thus warranted a "risk multiplier" above the Seventh Circuit's 30% baseline for such cases. *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d at 792 (awarding 36% of first $10 million of the fund in TCPA case, where, like here, the large class size presented manageability problems, the parties had "engaged in substantial motion practice and discovery," and they had done significant class-wide discovery during mediation); *Kolinek*, 311 F.R.D. at 503 (awarding 36% of fund in TCPA case, where the court originally dismissed the plaintiff's claims "before reversing course on his motion to reconsider," which "demonstrate[d] that the risks ... were real and significant"); *see also Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 201 (N.D. Ill. 2018) ("[A] typical contingency agreement in this circuit might range from 33% to 40% of recovery.") Accordingly, the requested award is more than appropriate and is what the class would have agreed to in an *ex ante* negotiation.

The appropriateness of a 35% fee award here is further justified by (1) the substantial risk that Class Counsel took on in accepting the case, (2) the excellent relief Class Counsel ultimately obtained for the Settlement Classes, and (3) the discount that the requested fees represent when compared to Class Counsel's actual lodestar.

> **1. This case presented serious obstacles to recovery, and Class Counsel litigated the case mindful of the high possibility that the classes might recover nothing.**

In a hypothetical *ex ante* negotiation, it would be apparent to the client that a 35% contingent fee would be appropriate considering the significant risk Class Counsel took on in litigating a case mired in issues of first impression. (Wade-Scott Decl. ¶ 7) Although these risks are inherent in any contingent-fee litigation, class actions especially, there are particularly acute risks in this case due to the unfavorable right-of-publicity case law in the Seventh Circuit at the time of filing.

17

At the time former-plaintiff Lukis filed her complaint in 2019, there were only a handful of class action lawsuits brought under any right-of-publicity statute in the Seventh Circuit, and among those, most hadn't survived the pleading stage. *See Dobrowolski*, 2017 WL 3720170, at *1 (people search defendant's motion to dismiss granted); *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1389 (N.D. Ill. 2016) (defendant's motion to dismiss granted); *Daniels v. Fanduel, Inc.*, 909 F.3d 876, 878 (7th Cir. 2018) (same); *Gabiola v. Sarid*, No. 16-CV-02076, 2017 WL 4264000, at *7 (N.D. Ill. Sept. 26, 2017) (defendant's motion to dismiss granted under both Illinois and Florida's right of publicity statutes); *Pratt v. Everalbum, Inc.*, 283 F. Supp. 3d 664, 670 (N.D. Ill. 2017) (defendant's motion for judgment on the pleading granted). Other right of publicity cases had faltered at class certification. *Dancel v. Groupon, Inc.*, No. 18 C 2027, 2019 WL 1013562, at *4 (N.D. Ill. Mar. 4, 2019), *aff'd*, 949 F.3d 999 (7th Cir. 2019) (class certification denied). Despite this legal landscape, Class Counsel forged ahead and secured the first opinion establishing that a people search company's use of state residents' identifying information on "free previews" as advertisements violated IRPA and was not protected by the First Amendment. (*See* dkt. 37); *cf. Dobrowolski*, 2017 WL 3720170; *Vrdolyak*, 206 F. Supp. 3d at 1388 (finding advertisements for attorneys' commercial speech "akin to the yellow pages directory" and protected by the First Amendment).

Had Whitepages prevailed on any of its four motions to dismiss across this case and the *Kolebuck-Utz* matter, or its motion for summary judgment, Plaintiffs' case would have been defeated entirely, sinking Class Counsel's substantial investment of time and effort in this case. Taking on this risk and prevailing at every step not only benefits the Settlement Classes here, but also sets the stage for future, similar right of publicity actions given the favorable case law created. *See* 1 Rights of Publicity and Privacy § 6:61, n.8 (2d ed) ("Subsequent cases from the

18

Illinois federal courts [arising under the IRPA] have followed the *Lukis* opinion."); *see, eg.*, *Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778, 782-85 (N.D. Ill. 2021) (citing this Court's order denying Defendant's motion to dismiss); *Siegel v. Zoominfo Techs., LLC*, No. 21-cv-2032, 2021 WL 4306148, at *3 (N.D. Ill. Sept. 22, 2021) (same); *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 591 (N.D. Ill. 2021) (same).

Aside from the merits, the classes could face serious obstacles in actually recovering—post-trial—what could be substantial damages against Whitepages. *See, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million); *but see United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020), *cert. dismissed*, 141 S. Ct. 729 (2021) (statutory award of $280 million for violating various telemarketing statues over 65 million times did not violate due process). Furthermore, it is not unprecedented for legislation to be amended while a class action is pending in a way that threatens the class's entire recovery. *See Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 629-30 (E.D. Mich. 2017) (evaluating the retroactive effect of legislative amendment on pending class action).[5]

Class Counsel accepted this case understanding that a single loss on any of these fronts would decimate the classes'—and Class Counsel's—ability to get paid. In light of those risks, it is appropriate to award 35% of the fund in attorneys' fees. *See In re Capital One Tel. Consumer Protection Act Litig*, 80 F. Supp. 3d 781, 805–06 (N.D. Ill. 2015) (in TCPA case, adding 6% risk

---

[5]     For example, over the past year, at least ten bills have been introduced in the Illinois Legislature to either repeal BIPA or amend it in a way that guts its protections. *See* H.B. 559, 102nd Gen. Assembly (Ill. 2021); H.B. 560, 102nd Gen. Assembly (Ill. 2021); H.B. 1764, 102nd Gen. Assembly (Ill. 2021); H.B. 3112, 102nd Gen. Assembly (Ill. 2021); H.B. 3304, 102nd Gen. Assembly (Ill. 2021); H.B. 3414, 102nd Gen. Assembly (Ill. 2021); S.B. 56, 102nd Gen. Assembly (Ill. 2021); S.B. 300, 102nd Gen. Assembly (Ill. 2021); S.B. 1607, 102nd Gen. Assembly (Ill. 2021); S.B. 3874, 102nd Gen. Assembly (Ill. 2022).

premium to 30% baseline attorneys' fee based on risk of non-payment when case was filed); *Kolinek*, 311 F.R.D. at 502 (same).

### 2. Class Counsel achieved an excellent result for the Settlement Classes.

Given the unfavorable legal landscape and the possibility that the Settlement Classes would recover nothing at all, the relief secured by Class Counsel is exceptionally strong. It is appropriate, too, for the Court to consider the actual result achieved—both as a function of the quality of Class Counsel's work, and because litigants often consider the ultimate degree of success in determining a fee schedule. *See Americana Art*, 743 F.3d at 247.

As explained in Plaintiffs' motion for preliminary approval, the Settlement's per-person relief excels compared to other statutory privacy cases, as it creates a $1,208,440 fund for 30,211 Illinois residents, and a $2,864,200 fund for 28,642 Ohio residents. After fees and costs are paid, and assuming a claims rate of 30% for the Ohio Settlement Class and 35% for the Illinois Settlement Class, claiming Ohio Settlement Class Members will receive individual payments of approximately $200 each, and claiming Illinois Settlement Class Members will receive approximately $65 each. Against a backdrop where many privacy claims under similar statutes settled for pennies on the dollar or no monetary relief at all, this is an exceptional result. *See, e.g.*, *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 740 (9th Cir. 2017), *vacated on other grounds by Frank v. Gaos*, 139 S. Ct. 1041 (2019) (approving 25% award of attorneys' fees on *cy pres*-only fund with not a penny to class members); *In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11–14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of the Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA, dkts. 350, 369 (N.D. Cal. May 6, 2021 and

July 13, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs).

Even when compared to the few other right of publicity or privacy statute settlements that have provided cash payments to class members, the per-person relief that Class Counsel achieved for the Settlement Classes here raises the bar. *See*, *e.g.*, *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013) (approving settlement under California's right of publicity statute that resulted in $15 payments to claimants, representing 2% of possible statutory damages); *Perkins, et al v. LinkedIn Corp.*, No. 5:13-cv-04303, dkt. 134 (N.D. Cal. Feb. 16, 2016) (approving $13 million settlement under California's right of publicity statute for approximately 20.8 million class members). The relief per person also surpasses most TCPA settlements in this District*, see, e.g., Leung*, 326 F.R.D. at 196 ($7 million fund for 311,013 class members); *Kolinek*, 311 F.R.D. at 493 ($11 million fund for 9.2 million class members); *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. at 787 ($75.5 million fund for 17.5 million class members), as well as many consumer BIPA settlements in Illinois, *see, e.g., Miracle-Pond v. Shutterfly*, 2019-CH-07050 (Cir. Ct. Cook Cnty. Sept. 9, 2021) ($6.75 million fund for potentially millions of class members); *Rosenbach v. Six Flags Ent. Corp.*, 2016-CH-00013 (Cir. Ct. Lake Cnty. Oct. 29, 2021) ($36 million reversionary fund for approximately 1,110,000 class members, capping claimant payments at $200 or $60 depending on date of finger scan, and reverting residual funds to defendant).

Finally, aside from the monetary relief, the non-monetary benefits created by the Settlement further support a 35% fee award. Whitepages has agreed to stop the very conduct that gave rise to Plaintiffs' claims, *i.e.*, its use of Illinois and Ohio Settlement Class Members' names in "free previews" that solicit purchases of its subscription services. (*See* Agreement § 2.3.)

21

Class Counsel's pursuit of this case undoubtedly achieved the goals of the state laws enacted to protect state citizens' right of publicity, and this non-monetary result may be properly considered for purposes of determining fees. *See Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973).

Ultimately, the monetary and non-monetary relief recovered on behalf of the Settlement Classes warrants approving the requested 35% of the monetary benefits of the Net Combined Fund as attorneys' fees.

### 3. A lodestar cross-check confirms the reasonableness of the requested fees.

While the Settlement Classes would not have agreed to calculate fees using the lodestar method, and the Court need not perform a lodestar "cross-check" to confirm the reasonableness of the fee award, analyzing the fee award under the lodestar method further confirms its reasonableness. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("[C]onsideration of a lodestar check is not an issue of required methodology.") (citing *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach."))).

A lodestar analysis is properly based on Class Counsel's current hourly rates. *See Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 647 (7th Cir. 2016). The rates charged by attorneys at Beaumont Costales LLC, Edelson PC, and Bursor & Fisher, P.A. correlate to their respective experience and are consistent with rates of attorneys with similar backgrounds and experience practicing in the Chicago legal market. Class Counsel's rates have been consistently approved by courts in the Seventh Circuit, as well as in federal courts across the country. *See In re Facebook Biometric Info. Priv. Litig.*, 3:15-cv-03747-JD, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021) (finding Edelson PC's hourly rates reasonable for their experience and locality); *id.* at dkt. 499-3 at ¶¶ 25–33 (Declaration of Professor William B. Rubenstein finding that "the hourly rates

22

[Edelson PC] utilize are entirely consistent with the rates judges in [the Northern District of California] explicitly approved in overseeing class action settlements in 2019, and the average, or blended, hourly rate—while above the median—appropriately reflects the level of lawyering required for a case of this magnitude"); *Barnes v. Arzyta, LLC*, No. 1:17-cv-07358, 2019 WL 277716, at *4 (N.D. Ill. 2019) (finding Edelson PC's rates "reasonable given the market rate that hourly clients are willing to pay, judicial approval of their rates, and their level of reputation and expertise in the area"); *Goodman v. Hangtime, Inc.*, No. 14-cv-01022, dkt. 124 (N.D. Ill. Sept. 29, 2015) (granting Edelson PC's fee request in full, the reasonableness of which was demonstrated under the lodestar method); *Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396, 2020 WL 1904533, at *20 (N.D. Cal. Apr. 17, 2020) (finding Bursor & Fisher, P.A.'s rates are "within the reasonable range" for "complex, high-stakes litigation"); *Farias v. R.R. Donnelley & Sons Co.*, No. 20-cv-07468, dkt. 38 (N.D. Ill. July 20, 2022) (approving Bursor & Fisher, P.A.'s fee request in full, which was supported by lodestar); *Wright v. Southern New Hampshire Univ.*, 561 F. Supp. 3d 211, 214 (D.N.H. Sept. 22, 2021) (approving Bursor & Fisher, P.A.'s motion for attorneys' fees, which was supported by lodestar). Class Counsel's experience and expertise in consumer class action litigation is further detailed in their declarations and Firm Resumes (*See* Exhibit 3-A attached to the Wade-Scott Decl.; Exhibit 4-A attached to the Fraietta Decl; Costales Decl. ¶¶ 13-15.)

Class Counsel performed substantial work in this litigation, totaling 1,649 attorney and staff hours already. The individuals primarily responsible for the case, along with their years of experience, rates and hours worked are provided in the Declarations of J. Eli Wade-Scott, Philip L. Fraietta and Roberto Costales. (Wade-Scott Decl. ¶ 13; Fraietta Decl. ¶ 13; Costales Decl. ¶¶ 11-12, 14,16.) As those declarations demonstrate, the value of Class Counsel's services to the

classes amounts to $971,518.50 through the present.[6] [7] (*Id.*) Class Counsel has also incurred unreimbursed expenses of $19,995.44, which are encompassed in the attorneys' fee request—i.e., Class Counsel are not seeking expenses separately. (Wade-Scott Decl. ¶ 15; Costales Decl. ¶ 18; Fraietta Decl. ¶ 16.)

Calculating Class Counsel's base lodestar amount is only one part of the inquiry, however, in determining a reasonable fee award under this approach. The base lodestar amount is increased by a "multiplier . . . designed to reflect the fact that, no matter how many hours were invested, there was, at the outset, the possibility of no recovery." *Harman*, 945 F.2d at 976. A multiplier, accordingly, should be added to reflect the risk that Class Counsel faced in undertaking the litigation, which is discussed above. *See id.* Typically, courts apply a risk multiplier of between 1 and 4. *See id.*; 5 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 15:87 (6th ed.)*; see, e.g.*, *In re Nat'l Collegiate Athletic Ass'n*, 332 F.R.D. 202, 225 (N.D. Ill. 2019) (1.5); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011) (2.5); *In re Lawnmower Engine Horsepower Mktg. & Sales Pracs. Litig.*, 733 F. Supp. 2d 997, 1015 (E.D. Wis. 2010) (2.07).

Here, Class Counsel request a total of $1,347,724.00 in attorney fees ($383,103 from the Illinois Settlement Fund and $964,621 from the Ohio Settlement Fund), which amounts to a

---

[6]      The attorney and staff time spent on this fee petition and its supporting documents has been excluded from Class Counsel's submitted lodestar. *Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1247 (N.D. Ill. 1993) ("As we have noted in our past opinions determining fee awards, we do not feel that it is appropriate to compensate attorneys for the time spent preparing the fee petition and supporting documentation.").

[7]      Class Counsel will supply detailed billing records for *in camera* review upon request. For the sake of clarity, Class Counsel Edelson PC and Bursor & Fisher, P.A have kept contemporaneous billing records, and Class Counsel Beaumont Costales LLC have reconstructed their time records as set forth in their declaration.

multiplier on their base lodestar of 1.39. This multiplier is on par with multipliers awarded in similar cases and thus confirms the reasonableness of the 35% of the common fund requested. The Court should approve Class Counsel's fee request.

## IV.    THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE AWARDS.

The Settlement Agreement also provides for an incentive award of $1,000 each to Plaintiff Fatima Butler and Plaintiff Julia Scholz-Pinger for serving as class representatives. Incentive awards are appropriate in class actions to compensate individuals for stepping up to protect the interests of a broader class, spending their own time to achieve benefits for the class as a whole. *Cook*, 142 F.3d at 1016.

Here, Ms. Butler and Ms. Scholz-Pinger's participation was critical to the case's ultimate resolution, and they request only modest service awards. *Gehrich*, 316 F.R.D. at 239 (describing $1,500 service awards as "truly nominal"). Plaintiffs Butler and Scholz-Pinger became actively involved in the litigation after informal discovery revealed that the former named plaintiffs (Lukis, Brown, Novarisas, and Kolebuck-Utz) did not fall within the ascertainable settlement class definitions being negotiated by counsel—that is, people whose names were 1) searched, 2) clicked on, and 3) resulted in the searcher purchasing a Whitepages subscription during that same site visit. Since Ms. Butler (an Illinois resident) and Ms. Scholz-Pinger (an Ohio resident) did fall within that group, they willingly stepped up to represent their respective classes as the lead plaintiffs at a crucial juncture in the case. Had they not done so, the relief secured for the Settlement Classes wouldn't have been possible.

Upon entering the case, Plaintiffs expended time and effort helping Class Counsel investigate their IRPA and ORPA claims, providing information to Class Counsel to prepare the Second Amended Complaint, reviewing that complaint before filing, reviewing and approving

the Settlement Agreement before signing it, and conferring with Class Counsel throughout. (Wade-Scott Decl. ¶ 18.) As a direct result of Plaintiffs' participation, Class Counsel was able to secure substantial monetary relief for the Settlement Classes, which is readily available for class members to take advantage of, as evidenced by the thousands of claims already submitted, and fully justifies the requested incentive awards. (*Id.* ¶ 19.) Plaintiffs were also willing to attach their names to this high-profile litigation against Whitepages and allow it to be transmitted via class notice to over sixty thousand people, subjecting themselves to "scrutiny and attention" which is "certainly worth some remuneration." *Schulte*, 805 F. Supp. 2d at 601.

As a monetary matter, Ms. Butler and Scholz-Pinger's requested incentive awards are eminently reasonable, as they're a fraction of the amounts routinely awarded to named plaintiffs in this District. *See Alvarado v. Int'l Laser Prods., Inc.*, No. 18-cv-7756, dkt. 70 (N.D. Ill. Jan. 24, 2020) ($5,000 service award in BIPA case) (Pallmeyer, J.); *Davis*, No. 1:19-cv-00680, dkt. 130 ($10,000 service award in BIPA case) (Valderrama, J.); *In re Akorn, Inc. Secs. Litig.*, No. 1:15-cv-01944, dkt. 182 (Feinerman, J.) (awarding three $10,000 incentive awards in securities case); *Nistra v. Reliance Tr. Co.*, No. 1:16-cv-04773, dkt. 291 (N.D. Ill. June 19, 2020) (Feinerman, J.) ($25,000 incentive award in ERISA case). Because Plaintiffs requests are modest and reflect their efforts in stepping up for the Settlement Classes, they should be approved.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs Fatima Butler and Julia Scholz-Pinger respectfully request that this Court enter an order (1) granting Class Counsel's requested fee awards in the amount of $383,103 (for the Illinois Settlement Class) and $964,621 (for the Ohio Settlement Class); (2) awarding Plaintiff Butler and Scholz-Pinger each a $1,000 incentive award; and (3) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**FATIMA BUTLER** and **JULIA SCHOLZ-PINGER**, individually and on behalf of all others similarly situated,

Dated: August 11, 2022

By: /s/ J. Eli Wade-Scott
                One of Plaintiffs' Attorneys

J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163

Roberto L. Costales, Esq.
rlc@beaumontcostales.com
William H. Beaumont, Esq.
whb@beaumontcostales.com
BEAUMONT COSTALES LLC
107 W. Van Buren, Suite 209
Chicago, Illinois 60605
Telephone: (773) 831-8000