## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FATIMA BUTLER and JULIA SCHOLZ-PINGER, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 19-cv-04871 |
| | Hon. Gary S. Feinerman |
| v. | |
| WHITEPAGES, INC., | |
| Defendant. | |

## PLAINTIFFS' MOTION FOR AND MEMORANDUM IN SUPPORT OF
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.     INTRODUCTION................................................................................................1

II.    BACKGROUND ................................................................................................2

    A.    Nature of the Litigation ........................................................................2

    B.    The Claims .............................................................................................3

    C.    Procedural History ...............................................................................3

III.    TERMS OF THE SETTLEMENT AGREEMENT ........................................6

    A.    Class Definitions ...................................................................................6

    B.    Monetary Relief ....................................................................................7

    C.    Prospective Relief .................................................................................8

    D.    Payment of Settlement Administration Expenses ...............................8

    E.    Attorneys' Fees and Incentive Award .................................................9

    F.    Release ...................................................................................................9

IV.    THE CLASS NOTICE FULLY SATISFIED DUE PROCESS ......................9

V.    THE SETTLEMENT WARRANTS FINAL APPROVAL..........................11

    A.    Plaintiff and Class Counsel have Adequately Represented the Class ............12

    B.    The Settlement Is the Product of Arm's-Length, Non-Collusive
        Negotiations ........................................................................................14

    C.    The Settlement Treats Class Members Equally ................................15

    D.    The Relief Secured for the Settlement Classes is Adequate and Warrants
        Final Approval ....................................................................................16

        1.    *The Relief Provided by the Settlement is Excellent* ................17

        2.    *The Cost, Risk, and Delay of Further Litigation Compared to the
            Settlement's Benefits Favors Final Approval* ...........................19*

*3.*      *The Method of Distributing Relief to the Illinois and Ohio Settlement Class Members is Effective and Supports Final Approval* ...................... 22

*4.*      *The Terms of the Requested Attorneys' Fees are Reasonable* ............... 23

*5.*      *The Individual Dismissals of Lukis, Brown, Novarisas, and Kolebuck-Utz have No Effect on the Relief Made Available to Settlement and Class Members* .................... 24

**E.**      **The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement** ................................................. 25

*1.*      *The Reaction of the Settlement Classes Favors Approval* ...................... 26

*2.*      *Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval* ................................. 27

*3.*      *The Settlement Raises No Red Flags* ...................................... 28

**VI.**      **CONCLUSION** ................................................................ 29

## <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court Cases**

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)......................................................................................................9

**United States Appellate Court Cases**

*ETW Corp. v. Jireh Publ'g Inc*.,
    332 F.3d 915 (6th Cir. 2003) .......................................................................................3

*Eubank v. Pella Corp*.,
    753 F.3d 718 (7th Cir. 2014). ................................................................................28, 29

*Golan v. FreeEats.com, Inc*.,
    930 F.3d 950 (8th Cir. 2019) .....................................................................................21

*Knapke v. PeopleConnect, Inc*.,
    38 F. 4th 824 (9th Cir. 2022) ....................................................................................20

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019) ...................................................................................21

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) .....................................................................................11

*Redman v. RadioShack Corp*.,
    768 F.3d 622 (7th Cir. 2014) .....................................................................................11

*Synfuel Techs., Inc. v. DHL Express (USA), Inc*.,
    463 F.3d 646 (7th Cir. 2006) .....................................................................................12

*Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*,
    309 F.3d 978 (7th Cir. 2002) .....................................................................................11

*United States v. Dish Network L.L.C.*,
    954 F.3d 970 (7th Cir. 2020) .....................................................................................21

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ........................................................................... *passim*

**United States District Court Cases**

*Alvarado v. Int'l Laser Prods., Inc.*,
    No. 18-cv-7756 (N.D. Ill. Jan. 24, 2020) .................................................................23

iv

*Am. Int'l Grp., Inc., v. ACE INA Holdings, Inc.*,
  Nos. 07 CV 2898, 09 C 2026, 2012 WL 651727 (N.D. Ill. 2012)....................................26

*Backowski v. PeopleConnect, Inc.*,
  No. 21-cv-00115 (W.D. Wash.)....................................................................................20

*Bensen et al. v. InfoPay, Inc. & Intermedia Ventures LLC*,
  No. 21-cv-12061-ADB (D. Mass.) ................................................................................20

*Chambers v. Together Credit Union*,
  No. 19-CV-00842-SPM, 2021 WL 1948453 (S.D. Ill. May 14, 2021) ..........................13

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
  No. 18-cv-7018 (N.D. Ill Sept. 20, 2020) ......................................................................23

*Crumpton v. Octapharma Plasma, Inc.*,
  No. 19-cv-08402 (N.D. Ill. Feb. 16, 2022) ...............................................................22, 27

*Drazen v. GoDaddy.com, LLC*,
  No. CV 1:19-00563-KD-B, 2020 WL 8254868 (S.D. Ala. Dec. 23, 2020) .....................18

*Fischer, et al. v. Instant Checkmate LLC*,
  No. 19-cv-04892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) .......................................21

*Fraley v. Facebook, Inc.*,
  966 F. Supp. 2d 939 (N.D. Cal. 2013) ............................................................................18

*Goldsmith v. Tech. Sols. Co.*,
  No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995).........................................19

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) .........................................................................17, 22

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ..........................................................................18, 23

*In re Google LLC Street View Elec. Commc'ns Litig.*,
  No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. 2020) .......................................17

*In re NCAA Student-Athlete Concussion Injury Litig.*,
  332 F.R.D. 202 (N.D. Ill. 2019).....................................................................................12

*Kolebuck-Utz v. Whitepages, Inc.*,
  No. 21-cv-00053 (W.D. Wash.)............................................................................. *passim*

*Kolinek v. Walgreen Co.*,

311 F.R.D. 483 (N.D. Ill. 2015)...................................................................18, 27

*Leung v. XPO Logistics,Inc.*,
326 F.R.D. 185 (N.D. Ill. 2018)...........................................................18

*Lopez-McNear v. Superior Health Linens, LLC*,
No. 19-cv-2390 (N.D. Ill. Apr. 27, 2021).........................................23

*Lukis v. Whitepages, Inc.*,
454 F. Supp. 3d 746 (N.D. Ill. 2020) ...............................................20

*McDaniel v. Qwest Commc'ns Corp.*,
No. CV 05 C 1008, 2011 WL 13257336 (N.D. Ill. Aug. 29, 2011) ................................26

*Neals v. ParTech, Inc.*,
No. 19-cv-05660 (N.D. Ill. July 20, 2022).................................24, 27

*Perkins, et al. v. LinkedIn Corp.*,
No. 5:13-cv-04303 (N.D. Cal. Feb. 16, 2016) ................................18

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ...................................26, 28

*Rowe v. E.I. DuPont de Nemours & Co.*,
No. CIV. 06-1810 RMB/AMD, 2011 WL 3837106 (D.N.J. Aug. 26, 2011) .................25

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ..............................................9, 28

*Schulte v. Fifth Third Bank*,
No. 09-CV-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) .......................................15

*Snyder v. Ocwen Loan Servicing, LLC*,
No. 14 C 8461, 2018 WL 4659274 (N.D. Ill. Sept. 28, 2018)..........................................13

*Snyder v. Ocwen Loan Servicing, LLC*,
No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) .............................12, 15, 27

*Vrdolyak v. Avvo, Inc.*,
206 F. Supp. 3d 1384 (N.D. Ill. 2016) .............................................20

**State Circuit Court Cases**

*Carroll v. Crème de la Crème, Inc.*,
2017-CH-01624 (Cir. Ct. Cook Cnty. June 6, 2018).......................................18

*Miracle-Pond v. Shutterfly*,
   2019-CH-07050 (Cir. Ct. Cook Cnty. Sept. 9, 2021) ......................................................18

*Prelipceanu v. Jumio Corp.*,
   2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020).......................................................19

**Miscellaneous Authority**

4 NEWBERG ON CLASS ACTIONS
   § 13:55 (5th ed. 2011) ..................................................................................................22, 24

765 ILCS 1075 ...................................................................................................... *passim*

*Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns,*
   FED. TRADE COMM'N, (Sept. 2019) ...............................................................................27

Fed. R. Civ. P. 23 ................................................................................................. *passim*

Federal Judicial Center,
   *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*
   (2010), available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf. ..........................9

R.C. § 2741 ........................................................................................................... *passim*

## I.    INTRODUCTION

Plaintiffs Fatima Butler and Julia Scholz-Pinger (together, "Plaintiffs") filed this class action against Defendant Whitepages, Inc. ("Defendant" or "Whitepages"), the operator of a "people search" website. Plaintiffs alleged that Whitepages used their and thousands of other Illinois and Ohio residents' identities to solicit subscription purchases on its website in violation of the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/30(a), and the Ohio Right of Publicity Act ("ORPA"), R.C. § 2741.02. After three years of contentious litigation that required extensive motion practice, significant formal and informal discovery, and a mediation with the Honorable Sidney Schenkier (Ret.) of JAMS in Chicago, the Parties reached what is now the first class action settlement of IRPA and ORPA claims—and it sets the bar high. The Court granted preliminary approval of the settlement on May 20, 2022, notice has been disseminated, and Plaintiffs now request that the Court grant final approval to this exceptional Settlement.[1]

The Settlement creates two settlement classes: an Illinois Settlement Class of 29,279 members and an Ohio Settlement Class of 27,802 members (together, the "Settlement Classes"). Under the Agreement, Defendant has created two non-reversionary settlement funds for the benefit of each class: a $1,208,440 Illinois Settlement Fund and a $2,864,200 Ohio Settlement Fund (together, the "Settlement Funds"). (Agreement §§ 1.17, 1.26.) The Settlement further provides non-monetary benefits: Whitepages has agreed not to display the name of any Illinois or Ohio Settlement Class Member whose residence, according to Whitepages' database, remains in Illinois or Ohio, on any page on its website that includes a subscription offer to Defendant's products or services—rounding out exactly what this lawsuit aimed to accomplish. (*Id.* § 2.3.)

---

[1]    The capitalized terms used in this motion are those used in the Class Action Settlement Agreement (the "Settlement" or "Agreement"), attached hereto as Exhibit 1.

1

In accordance with the Court's Preliminary Approval Order, (dkt. 261), on June 23, 2022, the Settlement Administrator disseminated direct notice to the Settlement Classes via U.S. Mail and email, which successfully reached an address for 99.5% of the Illinois Settlement Class and 99.6% of the Ohio Settlement Class. The Settlement Administrator then sent two rounds of reminder notices—on July 25, 2022 and August 10, 2022—to members of the Settlement Classes who, at those points, had not yet filed a claim. By the Objection/Exclusion Deadline of August 24, 2022, not a single member of the Illinois or Ohio Settlement Classes objected to the Settlement and only one person submitted a valid request for exclusion.

Unsurprisingly, given the comprehensive notice and outstanding relief available, the Settlement has also seen an excellent participation rate: 24.6% of the Illinois Settlement Class submitted valid claims and 16.8% of the Ohio Settlement Class submitted valid claims, which means each of those Illinois Settlement Class Members will receive approximately $95 and each of those Ohio Settlement Class Members will receive approximately $380. Although part of a growing trend of increased participation, this far exceeds historical claims rates in consumer class actions which rarely see rates in the double digits.

For these reasons, and as detailed below, this Settlement is exceptional. The factors to be considered under Rule 23 when determining whether to grant final approval to a class settlement weigh in favor of approving this one. Thus, the Court may appropriately grant final approval.

## II.    BACKGROUND

Though Plaintiff has detailed the case background in her preliminary approval motion and motion for attorneys' fees (dkts. 251, 266), it is set forth in brief below for ease of reference.

### A.    Nature of the Litigation

The Illinois Right of Publicity Act and Ohio Right of Publicity Act codify the common law

tort of "appropriation of likeness." Both statutes enable individuals to control the commercial use of their identity and persona and to recover damages from any uncompensated commercial use. *See* 765 ILCS 1075/10 (defining "right of publicity" under IRPA); *ETW Corp. v. Jireh Publ'g Inc.*, 332 F.3d 915, 954 (6th Cir. 2003) (Clay, C.J. dissenting) (discussing history of the ORPA). Under the IRPA, individuals can obtain actual damages, profits flowing from the defendant's use of their identity, or $1,000. 765 ILCS 1075/40(a)(2). The ORPA provides a statutory minimum payment of $2,500 and allows for damages of up to $10,000. *See* R.C. § 2741.07(A)(1)(b). Neither statute requires individuals to make a showing of actual harm to recover damages.

### B.     The Claims

Plaintiffs brought this suit against Whitepages, a company that operates a "people search" website at whitepages.com. (Dkt. 249 ¶ 9.) Anyone can access Whitepages' website to search for a person by simply typing their first and last name in the website search bar. Whitepages then returns a list of individuals that match the search, with specific and personally identifying information about each profile in its database such as the middle initial, age range, phone number, and current address. (*Id.* ¶¶ 11-12.) Clicking on one of these profiles takes the user to a more detailed "free preview" page specific to that individual. (*Id.* ¶ 13.) Whitepages then informs the user that they can access the individual's full profile, as well as any other profile in the Whitepages database, by purchasing one of Whitepages' monthly subscriptions. (*Id.* ¶¶ 15, 20.) Plaintiffs allege that Whitepages' use of their identities as "free preview" advertisements for its monthly subscription service constitutes an impermissible commercial use of their identities without their consent, in violation of both the IRPA and the ORPA. (*Id.* ¶¶ 45-58.)

### C.     Procedural History

One half of this Action commenced on June 19, 2019, when then-Plaintiff Stephanie Lukis

filed her putative class action complaint against Whitepages in the Circuit Court of Cook County, Illinois, alleging that Whitepages violated her and thousands of other Illinois residents' rights under IRPA. Whitepages timely removed the case to this court. (Dkt. 1.) Whitepages then moved to dismiss the complaint, contending, *inter alia*, that (1) the Court lacked personal jurisdiction over it, (2) the IRPA did not apply to its conduct, (3) its free preview ads were protected by the First Amendment, and (4) the claims were barred under Section 230 of the Communications Decency Act. (*See* dkt. 17.) After full briefing, (*see* dkts. 24, 25), the Court denied the motion in full and permitted the case to go forward. (Dkt. 37.)

Whitepages then moved the Court to reconsider the denial of its motion to dismiss (dkt. 40), certify five questions for interlocutory appeal (dkt. 43), and stay proceedings pending its motions (dkt. 46). The Court denied Whitepages' motion to stay and took the remaining motions under advisement. (Dkts. 49, 53, 58, 60.) While those motions were under advisement, Whitepages also moved for summary judgment, asking the Court to grant summary judgment in its favor based on IRPA exceptions and First Amendment protections, which Plaintiff opposed. (Dkts. 64, 78.) While Whitepages' motion for summary judgment was pending, the Parties began discovery, which included exchanging significant written discovery, deposing Plaintiff Lukis, and deposing three of Whitepages' personnel. Class Counsel also moved to compel discovery from Whitepages twice and moved to hold Whitepages in contempt for failing to produce Court-ordered discovery. (*See* dkts. 106, 127, 192.)

On October 27, 2020, the Court denied Whitepages' motion to reconsider, its motion for leave to appeal, and its motion for summary judgment. (Dkt. 88.) That same day, Whitepages moved to dismiss Plaintiff Lukis's claims for a second time, arguing that Ms. Lukis was subject to a mandatory arbitration clause and should therefore be compelled to arbitrate. (Dkt. 89, 90.) The

Court denied Whitepages' motion to compel arbitration on April 23, 2021, which Whitepages appealed. (Dkt. 174, 181.) Then, on April 26, 2021, Plaintiff Lukis amended the complaint to add two additional plaintiffs: Shawn Brown and Mantas Norvaisas. (Dkt. 176.) Again, Whitepages moved to dismiss the new plaintiffs' claims, including on the basis that their claims were arbitrable, and simultaneously moved to stay the case pending resolution of the appeal and new motion to dismiss. (Dkt. 182, 184.) Two weeks later, the Court granted Whitepages' motion to stay in part, but permitted the Parties to take discovery as to the arbitrability of the new plaintiffs' claims. (Dkt. 193.) The Court then denied Whitepages' motion to dismiss, but deferred ruling on the arbitrability issues pending further proceedings. (Dkt. 219.)

While this action was pending, Class Counsel was also litigating the other half of this Action in a parallel putative class action against Whitepages in the Western District of Washington, captioned *Kolebuck-Utz v. Whitepages, Inc*., No. 21-cv-00053 (W.D. Wash.). That case concerned the same conduct at issue here, but alleged violations of the ORPA on behalf of a class of Ohio residents. *See id.*, dkt. 1 (W.D. Wash. Jan. 15, 2021). Whitepages moved to dismiss that lawsuit on February 25, 2021, generally relying on the same theories and arguments raised in this case. *Id.* at dkt. 12. The motion was fully briefed and denied on April 22, 2021. *Id.* at dkts. 12, 13, 15, 18.

With this Court's denial of Whitepages' third motion to dismiss and the *Kolebuck-Utz* court's denial of Whitepages' motion to dismiss, the Parties began discussing the possibility of a global settlement in July 2021. After lengthy settlement discussions and the exchange of informal discovery regarding the size and composition of the Illinois and Ohio classes, the Parties agreed to participate in a formal mediation session. (*See* dkt. 217, ¶ 1.) On September 21, 2021, the Parties attended a full-day mediation session with Judge Schenkier (ret.). (*See* dkt. 225.) Though the Parties did not reach a deal that day, they continued settlement discussions over the next several

months, including through additional conferences held with Judge Schenkier, and ultimately reached agreement on the principal terms of a global class action settlement that would resolve both this action and the *Kolebuck-Utz* action. After an additional four months of negotiating the final settlement papers and exchanging further informal discovery, the Parties executed the Settlement Agreement on April 25, 2022.

On April 28, 2022, consistent with the terms of the Settlement Agreement, Plaintiffs Fatima Butler (an Illinois resident) and Julia Scholz-Pinger (an Ohio resident) filed a Second Amended Class Action Complaint ("SAC") on behalf themselves and an Illinois class and an Ohio class. (Dkt. 249.) That same day, the former named representatives in this action and the *Kolebuck-Utz* action (Stephanie Lukis, the heirs of Shawn Brown (J.B.1, J.B.2, J.B.3, and J.B.4), Mantas Norvaisas, and Angela Kolebuck-Utz) voluntarily dismissed their individual claims pursuant to individual settlement agreements with Whitepages. (Dkt. 248.)

Plaintiffs Butler and Scholz-Pinger then promptly moved for preliminary approval of the settlement (dkt. 251), which the Court originally granted on May 20, 2022 and subsequently amended its order on June 16, 2022. (Dkts. 258, 261.) Most recently, Plaintiffs and Class Counsel moved for an award of attorney's fees, expenses, and Plaintiffs' incentive awards on August 10, 2022. (Dkts. 264, 266.)

## III.    TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth in the Class Action Settlement Agreement, (Ex. 1), and are briefly summarized here:

**A.    Class Definitions:** In the Preliminary Approval Order, the Court certified two settlement classes: an Illinois Settlement Class and an Ohio Settlement Class. The Illinois Settlement Class is comprised of:

All individuals with a primary Illinois residential address whose individual detail pages were displayed on Whitepages.com in response to a search on the website and whose names were clicked on between May 7, 2019 and January 27, 2022, where the searcher during that same site visit purchased a subscription. (Dkt. 261 ¶ 3.)

The Ohio Settlement Class is comprised of:

All individuals with a primary Ohio residential address whose individual detail pages were displayed on Whitepages.com in response to a search on the website and whose names were clicked on between May 7, 2019 and January 27, 2022, where the searcher during that same site visit purchased a subscription.[2] (*Id.* ¶ 4.)

There are 29,279 Illinois Settlement Class members and 27,802 Ohio Settlement Class members.[3] (*See* Declaration of Jacob Kamenir ("Kamenir Decl."), attached as Exhibit 2, at ¶ 5.)

**B.     Monetary Relief:** Whitepages has established a non-reversionary settlement fund for each class: an Illinois Settlement Fund of $1,208,440 and an Ohio Settlement Fund of $2,864,200. Each class member who submitted a valid claim before the August 24th Claims Deadline will be receive a *pro rata* portion of their respective settlement fund after payment of notice costs, administrative expenses, and any attorneys' fees and incentive award approved by the Court. (Agreement §§ 2.1, 2.2.) Should the Court approve Plaintiffs' requested attorneys' fees and incentive awards—and given the claims rates of 24.6% and 16.8% for the Illinois and Ohio

---

[2]     Excluded from both settlement classes are: (1) any Judge or Magistrate Judge presiding over this action and members of their families, (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, (3) persons properly execute and timely file a request for exclusion from the Illinois or Ohio Settlement Class, and (4) the legal representatives, successors, or assigns of any such excluded persons. (*Id.* ¶¶ 3-4.)

[3]     The class list Defendant originally provided the Settlement Administrator included the names of 30,211 individuals with Illinois addresses and 28,642 individuals with Ohio addresses. (Kamenir Decl. ¶ 5.) Accordingly, those are the class sizes Plaintiffs reported in their motion for preliminary approval (dkt. 261) and motion for attorneys' fees (dkt. 266). After scrubbing and deduplicating the class list, the Settlement Administrator reported that there are 29,279 unique Illinois Settlement Class members and 27,802 unique Ohio Settlement Class members**. (Kamenir Decl. ¶ 5.)

Settlement Classes, respectively—each Illinois Settlement Class Member who submitted an Approved Illinois Claim can expect to receive a Settlement Payment for approximately $95, and each Ohio Settlement Class Member who submitted an Approved Ohio Claim can expect to receive a Settlement Payment for approximately $380. Any uncashed checks or electronic payments unable to be processed within 180 days of issuance will revert back to the Illinois or Ohio Settlement Funds—depending on which fund each Settlement Payment was distributed from. (*Id.* §§ 2.1(e); 2.2(e).) Those funds will then be redistributed *pro rata* to Illinois or Ohio Settlement Class Members who submitted valid claims, if practicable, or in a manner otherwise directed by the Court upon application made by Class Counsel. (*Id.*)

C. **Prospective Relief:** For a period of three years after the Settlement is finally approved, Whitepages has agreed to not display the name of any Illinois Settlement Class Member or Ohio Settlement Class Member whose residence, according to Whitepages' database, remains in Illinois or Ohio, on any page on its website that includes a subscription offer to Whitepages' products or services. (*Id.* § 2.3(a).)

D. **Payment of Settlement Administration Expenses:** Defendant has agreed to pay from the Illinois and Ohio Settlement Funds all expenses incurred by the Settlement Administrator in providing notice, administering the Settlement, creating and maintaining the Settlement Website, receiving and processing Claim Forms, dispersing Settlement Payments, and any other related expenses. (*Id.* §§ 1.17, 1.26, 1.32.) All expenses will be paid proportionally from the Illinois Settlement Fund and the Ohio Settlement Fund, such that Settlement Administration Expenses incurred on behalf of both the Illinois and Ohio Settlement Classes will be paid equally from the Illinois Settlement Fund and the Ohio Settlement Fund, and Settlement Administration Expenses

8

incurred on behalf of only the Illinois Settlement Class or only the Ohio Settlement Class shall be paid only from the Illinois Settlement Fund or the Ohio Settlement Fund, respectively. (*Id.* § 1.32.)

        **E.**      **Attorneys' Fees and Incentive Awards:** Defendant has agreed to pay reasonable attorneys' fees in an amount determined by the Court, to be paid from the Illinois and Ohio Settlement Funds. (*Id.* § 8.1.) Class Counsel voluntarily agreed to limit their request to 35% of each fund, (*id.*), which they made by a separate motion on August 11, 2022. (Dkt. 266.) Defendant has also agreed to pay Plaintiffs incentive awards in the amount of $1,000 each, subject to Court approval, in recognition of their efforts in serving as Class Representatives. (Agreement § 8.3.)

        **F.**      **Release:** In exchange for the relief described above, the Illinois and Ohio Settlement Class Members will release Whitepages, and its related entities, from all claims relating to Whitepages' alleged use of their names, ages, contact information, former residence locations, list of possible relatives, likeness, photograph, image, or other identifying information to advertise, promote, or in connection with an offer for sale any products or services, including any violation of the IRPA or ORPA. (Agreement §§ 1.29, 1.30, 3.1.)

## IV.    THE CLASS NOTICE FULLY SATISFIED DUE PROCESS

        Prior to granting final approval to this Settlement, the Court must consider whether the class members received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011) ("*Schulte I*"). The "best notice practicable" does not necessarily require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process. In general, a notice plan that reaches at least 70% of class members is considered reasonable. *See* Federal Judicial Center, *Judges' Class Action Notice*

*and Claims Process Checklist and Plain Language Guide* at 3 (2010), available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

Here, Whitepages provided Simpluris, Inc.—the professional Settlement Administrator appointed by the Court—a class list for direct notice, which contained the names and a U.S. Mail address of all 29,279 Illinois Settlement Class members and all 27,802 Ohio Settlement Class members. (Kamenir Decl. at ¶ 5.) The Settlement Administrator then updated the U.S. Mail addresses through the National Change of Address database to ensure the most up-to-date addresses as possible. (*Id.* ¶ 6.) Using information from the class list, the Settlement Administrator then performed a skip trace to obtain email addresses for as many class members as possible, and successfully obtained at least one email address for 21,721 Illinois Settlement Class members and 21,778 Ohio Settlement Class members. (*Id* ¶ 5.) Then, on June 23, 2022, the Settlement Administrator sent the Court-approved direct notice via U.S. Mail to all 29,279 Illinois Settlement Class members and all 27,802 Ohio Settlement Class Members, and also via email to 21,721 Illinois Settlement Class members and 21,778 Ohio Settlement Class members. (*Id.* ¶¶ 12, 14.) The direct notice via mail *and* email was unsuccessful for only 154 Illinois Settlement Class members and 119 Ohio Settlement Class members, which means at least one form of direct notice successfully reached 99.5% of the Illinois Settlement Class and 99.6% of the Ohio Settlement Class. (*Id.* ¶ 16.)

The Settlement Administrator also sent two rounds of reminder notices to class members who, at each point, had not yet submitted a claim. (*Id.* ¶¶ 17, 18.) The first reminder notices were sent via email on July 25, 2022 (i.e., 30 days prior to the Claims Deadline) to 18,109 Illinois Settlement Class members and 18,931 Ohio Settlement Class members. (*Id.* ¶ 17.) The second reminder notices were sent via U.S. Mail and email on August 10, 2022 (i.e., 14 days prior to the

Claims Deadline) to 25,930 Illinois addresses and 25,779 Ohio addresses and via email to 15,953 Illinois Settlement Class members and 17,720 Ohio Settlement Class members. (*Id.* ¶ 18.)

These summary notices directed class members to the Settlement Website, www.whitepagesrightofpublicity.com, which has been and continues to be available 24/7 and has had 56,355 visitors from unique IP addresses (*Id.* ¶ 9.) The Settlement Website features the "long form" notice and important court filings (including Plaintiffs' Motion and Memorandum of Law for Attorneys' Fees, Expenses, and Incentive Awards), important deadlines, instructions on how to appear at the Final Approval Hearing telephonically, and answers to frequently asked questions. (*Id.*; Agreement § 4.2(d).)

Overall, the Notice program was highly successful, as direct Notice reached nearly every member of the class and those notices were supplemented with two rounds of reminder notices. This greatly exceeds what is required for due process.

## V.   THE SETTLEMENT WARRANTS FINAL APPROVAL

When analyzing class action settlements, "the law quite rightly requires more than a judicial rubber stamp[.]" *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). To that end, the Seventh Circuit has established "the district judge as a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (internal quotations omitted).

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that "claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval . . . after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the

class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

As the Advisory Committee for the 2018 amendments to Rule 23 recognized that "each circuit has developed its own vocabulary for expressing these concerns[,]" the Court should also take into account the factors set out by the Seventh Circuit. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. These factors are: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); *accord Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Courts in the Seventh Circuit continue to analyze these factors in tandem with the Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g.*, *In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019).

The following discussion of the factors set out in Rule 23(e)(2) and their corresponding factors set out by the Seventh Circuit demonstrates that the Settlement is fair, reasonable, adequate, and deserving of final approval.

### A. Plaintiff and Class Counsel have Adequately Represented the Class.

The first Rule 23(e)(2) factor, whether the class representative and class counsel have adequately represented the class, focuses on class counsel's and the class representative's performance as it relates to the "conduct of the litigation and of the negotiations leading up to the

12

proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is generally satisfied where the named plaintiff participated in the case diligently, and class counsel fought vigorously in the litigation. *Snyder v. Ocwen Loan Servicing, LLC*, 2018 WL 4659274, at *4 (N.D. Ill. Sept. 28, 2018); *see also Chambers v. Together Credit Union*, 2021 WL 1948453, at *2 (S.D. Ill. May 14, 2021) (finding this factor satisfied when class counsel vigorously litigated the case "both through motion practice on the legal merits and through discovery"). In considering this factor, courts are to examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account the nature and amount of discovery completed, whether formally or informally. *See Snyder*, 2018 WL 4659274 at *4. This inquiry is coextensive with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted).

The knowledge and negotiating position, participation, and conduct of Ms. Butler, Ms. Scholz-Pinger, and Class Counsel have not changed since this Court granted preliminary approval. (Dkt. 261.) Plaintiffs' interests have remained aligned with the Illinois and Ohio Settlement Classes through the Notice process and preparation for final approval. Without Plaintiffs stepping up to represent the class—at a crucial time in the case, when none of the former named plaintiffs' fell into the narrowed class definitions in the SAC—and taking on these tasks as the lead plaintiffs, the relief secured for the Settlement Classes wouldn't have been possible. Given their efforts and aligned interest with the Settlement Classes, there can be no doubt that Ms. Bulter and Ms. Scholz-Pinger have only acted in the best interest of the Illinois and Ohio Settlement Classes and have adequately represented them.

Likewise, Class Counsel worked vigorously to protect the interests of the classes and ensure that the classes were represented beyond the simple "adequate" measure. First, the immense

13

amount of investigation and discovery undertaken by Class Counsel ensured that they had adequate information to assess the strength of the case and engage in settlement discussions. For example, Class Counsel engaged in extensive formal discovery, including by obtaining hundreds of pages of documents from Whitepages, deposing three of Whitepages' personnel, and successfully moving to compel discovery from Whitepages twice. Class Counsel also engaged in extensive motion practice with Whitepages, which included briefing three motions to dismiss in this case, as well as one motion to dismiss in the *Kolebuck-Utz* case, defeating Defendant's motion for summary judgment, and defeating Defendant's motion to stay. Finally, during settlement discussions, Whitepages provided informal discovery to Class Counsel regarding the size and composition of the putative classes, giving Class Counsel the information necessary to negotiate a settlement on behalf of the Illinois and Ohio classes.

After years of investigation and discovery, the facts underlying Plaintiffs' allegations in this case, but by no means their legal import, are now substantially undisputed: Whitepages displayed Plaintiffs' and the classes' names and identifying information in free preview ads for its monthly subscription service, without asking for their consent to do so. Therefore, the Settlement unequivocally meets the Rule 23(e)(2)(C) requirement.

## B. The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations.

The second factor in Rule 23(e)(2) requires the court to consider whether the proposed settlement is the result of arm's-length negotiations. *See Wong*, 773 F.3d at 864. The record here demonstrates nothing but good-faith, non-collusive bargaining between the Parties. After over two years of active litigation, and with an appeal as to arbitrability pending, the Parties agreed in July of 2021 that it was an appropriate time to explore meaningful settlement discussions. This led to eight months of negotiations while the case was still actively litigated. Throughout the negotiation process, the Parties informally exchanged information regarding the size and composition of the

classes and eventually agreed to attend a full-day, private meditation with the Judge Schenkier (ret.) of JAMS Chicago on September 21, 2021. (Dkt. 235.) Though the Parties did not reach an agreement during that mediation, they agreed to continue working with Judge Schenkier toward resolution. (*Id.*) After several months of continued negotiations, which included more informal sharing of information about the Illinois and Ohio settlement classes and additional conferences with Judge Schenkier, the Parties finally agreed to the material terms of a global resolution in late-January 2022. (*Id.*) The Parties then spent the next three months negotiating the outstanding terms of the full, written agreement, eventually executing the Settlement Agreement on April 25, 2022.

The arm's-length nature of these negotiations is further confirmed by the Settlement itself: it is non-reversionary, provides significant cash payments to Illinois and Ohio Settlement Class Members who submit a simple, valid Claim Form, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (approving settlement where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's-length negotiation"). For these reasons, there should be no question that the Settlement here was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, 2010 WL 8816289, at *4 n.5 (N.D. Ill. 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

### C. The Settlement Treats Class Members Equally.

Next, Rule 23(e)(2) requires the proposed settlement to treat class members "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Illinois and Ohio Settlement Class Members are treated equitably both internally within their respective classes and as compared to

the other settlement class. First, since every Illinois Settlement Class Member here has nearly identical IRPA claims, each approved claimant is entitled to a *pro rata* share of the Illinois Settlement Fund, after fees and costs are paid. (Agreement § 2.1.) The same is true for the Ohio Settlement Class Members: since they all have nearly identical ORPA claims, each approved claimant is similarly entitled to a *pro rata* share of the Ohio Settlement Fund, after fees and costs are paid. (*Id.* § 2.2.) Additionally, though the Illinois and Ohio Settlement Funds are different sizes ($1,208,440 and $2,864,200, respectively), the sizes are proportional to each other, considering the (i) the size of each class (29,279 in the Illinois class and 27,802 in the Ohio class), and (ii) the amount of statutory damages provided by the IRPA ($1,000) and ORPA ($2,500). (*Id.* §§ 1.17, 1.26.) In other words, if the claims rates across both Settlement Classes were identical, each claiming Ohio Settlement Class Member would receive approximately 2.5 times more than each claiming Illinois Settlement Class Member, given the difference in statutory damages available.

The Settlement also provides for identical prospective relief, prohibiting Whitepages from displaying any class members' name on any page on its website that includes a subscription offer, so long as their residences remain in Illinois or Ohio, for three years. (*Id.* § 2.3.) Further, each Illinois and Ohio Settlement Class Member will release the same types of claims against Whitepages. (*Id.* § 3.1.) Because the Settlement treats each Illinois and Ohio Settlement Class Members equitably, this factor is fully satisfied.

### D. The Relief Secured for the Settlement Classes is Adequate and Warrants Final Approval.

The final and most crucial factor under Rule 23(e)(2) scrutinizes whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 identifies several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any

proposed award of attorneys' fees, including timing of payment, and (iv) any side agreements made in connection with the settlement. *Id.* This analysis necessarily encompasses two of the Seventh Circuit's factors: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; [and] (2) the complexity, length, and expense of further litigation[.]" *Wong*, 773 F.3d at 863. Because the first Seventh Circuit factor "[is the] most important factor relevant to the fairness of a class action settlement[,]" it is critically important for a settlement to meet this standard. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (internal quotations omitted). This Settlement does so.

### 1. The Relief Provided by the Settlement is Excellent.

The Settlement provides outstanding monetary relief for the Settlement Classes and excels when compared to other class action settlements, including other privacy settlements. Again, the deal creates a $1,208,440 fund for the benefit of 29,279 Illinois Settlement Class members and a $2,864,200 fund for the benefit of 27,802 Ohio Settlement Class members. Given the 24.6% claims rate among the Illinois Settlement Class and the 16.8% claims rate of the Ohio Settlement Class, after any approved fees and costs are paid, each claiming Illinois Settlement Class Member will be paid approximately $95, and each claiming Ohio Settlement Class Member will be paid approximately $380.

Settlements in other statutory privacy class actions frequently don't come near this amount, either in terms of the amount of the payments or percentage of available relief. Such settlements all too often secure *cy pres* relief without any individual payments to class members. *See, e.g.*, *In re Google LLC Street View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *11-14 (N.D. Cal. 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of a federal privacy statute, where $10,000 in statutory damages were available per claim). Even privacy settlements under statutes that provide thousands of

dollars in statutory damages, like the Illinois Biometric Information Privacy Act ("BIPA"), have offered only credit monitoring to class members, with no monetary relief. *See Carroll v. Crème de la Crème, Inc*., 2017-CH-01624 (Cir. Ct. Cook Cnty. June 6, 2018) (BIPA settlement). And of those privacy settlements that do provide monetary relief, many have capped the amount class members can receive and reverted the inevitable remaining funds back to the defendant, rather than distributing the fund *pro rata* to class members. *E.g.*, *Drazen v. GoDaddy.com, LLC*, 2020 WL 8254868 (S.D. Ala. Dec. 23, 2020) (in TCPA case, approving $35 million reversionary fund for 1,189,328 class members, which gave class members the option of a capped payment of $35 or a $150 voucher, and reverted the unclaimed funds to defendant).

This Settlement stands in stark contrast, as it creates non-reversionary cash settlement funds for both Settlement Classes, and the amount per person exceeds that of the few other right of publicity settlements that have provided cash payments to class members. *See*, *e.g.*, *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013) (approving settlement under California's right of publicity statute that resulted in $15 payments to claimants, representing 2% of possible statutory damages); *Perkins, et al. v. LinkedIn Corp.*, No. 5:13-cv-04303, dkt. 134 (N.D. Cal. Feb. 16, 2016) (approving $13 million settlement under California's right of publicity statute for approximately 20.8 million class members). The relief per person also excels compared to many TCPA settlements in this District, *see, e.g.*, *Leung v. XPO Logistics, Inc*., 326 F.R.D. 185, 196 (N.D. Ill. 2018) ($7 million fund for 311,013 class members); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 493 (N.D. Ill. 2015) ($11 million fund for 9.2 million class members); *In re Cap. One Tel. Cons. Prot. Act Litig.*, 80 F. Supp.3d 781, 787 (N.D. Ill. 2015) ($75.5 million fund for 17.5 million class members), as well as many consumer BIPA settlements in Illinois, *see, e.g.*, *Miracle-Pond v. Shutterfly*, 2019-CH-07050 (Cir. Ct. Cook Cnty. Sept. 9, 2021) ($6.75 million fund for

potentially millions of class members); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cnty. July 21, 2020) ($7 million fund for 169,155 class members).

This Settlement is all the more impressive because it is the first-ever class settlement under either the Illinois or Ohio right of publicity statutes. And, despite being a first-of-its-kind settlement involving a host of novel issues, it secures strong per person monetary relief for the Illinois and Ohio Settlement Class Members, with no cap on recovery per class member or reversion to Whitepages.

Finally, the non-monetary benefits created by the Settlement warrant approval. For a period of three years, Whitepages has agreed not to display the name of any Illinois or Ohio Settlement Class Member on any page on its website that includes a subscription offer to its products or services. (Agreement § 2.3.) While this highly negotiated relief is limited to three years, if Whitepages decides to go back to its old ways, it would open itself up to new exposure and the Settlement Classes could sue again, absent a change in the law in Illinois and Ohio.

At bottom, both the monetary and prospective relief secured here are excellent and should be approved.

### 2. The Cost, Risk, and Delay of Further Litigation Compared to the Settlement's Benefits Favors Final Approval.

"As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech. Sols. Co.*, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursing a litigated outcome to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 amendment.

The Settlement here meets both the 23(e)(2)(C) requirements and the Seventh Circuit's first and second factors because it provides immediate relief to the Illinois and Ohio Settlement

Classes while avoiding potentially years of risky litigation and appeals, with both Plaintiffs and Defendant believing that they have strong cases for their side. *See Schulte I*, 805 F. Supp. 2d at 586 ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). The risks here were not insignificant.

To start, the application of states' right of publicity statutes to the conduct alleged here is a relatively new issue. While this Court has described Whitepages' conduct as a "textbook example under the IRPA of using a person's identity for a commercial purpose," *Lukis v. Whitepages, Inc.*, 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020), Whitepages could press the issue on appeal if litigation were to continue. And, at that point, the tides could change, as defendants in similar right of publicity cases continue to rely on Judge Shah's opinion in *Dobrowolski* to argue that "free preview" advertising does not violate individuals' right of publicity. *See, e.g.*, *Bensen et al. v. InfoPay, Inc. & Intermedia Ventures LLC*, No. 21-cv-12061-ADB, Dkts. 24, 25, 31 (D. Mass.) (motion to dismiss ORPA and IRPA claims); *Backowski v. PeopleConnect, Inc.*, No. 21-cv-00115, Dkts. 10, 16, 18 (W.D. Wash.) (motion to dismiss ORPA claims). And, while the Court rejected many of Whitepages' other arguments—*e.g.*, that these claims must be arbitrated, that its free preview ads are protected under the First Amendment, and that the claims are barred under Section 230 of the Communications Decency Act, (dkt. 37)—Whitepages was sure to raise those issues, and possibly others, on appeal, too. *See, e.g.*, *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388 (N.D. Ill. 2016) (finding advertisements for attorneys' commercial speech "akin to the yellow pages directory" and protected by the First Amendment). Put simply, a negative appellate decision on *any* issue in this evolving area of law could sink Plaintiffs' entire case or ability to maintain it as a class action. *See, e.g.*, *Knapke v. PeopleConnect, Inc.*, 38 F. 4th 824, 833 (9th Cir. 2022)

20

(finding that attorney could, under certain circumstances, bind plaintiff to people search website's arbitration terms by searching for plaintiff on website before filing lawsuit).

Plaintiffs would also be required to use significant resources to litigate the issue of class certification. The Advisory Committee notes to amended Rule 23(e) suggest that courts should consider the likelihood of certifying a class for litigation in evaluating this sub-factor because the issue of litigating class certification is a salient one. While Plaintiffs believe that they would ultimately prevail on certification issues given Defendant's uniform conduct, class certification is still a significant hurdle and presents a risk to any class recovery. This Court's class certification decision in *Fischer, et al. v. Instant Checkmate LLC*, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) demonstrates the risk that class certification poses to class members. In *Fischer*—the first class certification decision in this space—the Court certified two classes, but declined to certify a third class of individuals appearing in search results. *Id.* at *3, *15. Though the Court's decision was based on the facts particular to that case and the specific proposed class definition, the decision demonstrates that class certification would have been by no means guaranteed.

Even if adversarial class certification were granted, the possibility of an interlocutory appeal would still risk causing significant delay to any recovery. *Cf. Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019) (in BIPA case, affirming class certification on interlocutory appeal that pended for over a year). And assuming Plaintiffs would have succeeded at trial, Plaintiffs expect that Defendant would have argued for a reduction in damages based on due process in light of the significant potential statutory damages at issue. *See, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 963 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million), *but see United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020), *cert.*

*dismissed*, 141 S. Ct. 729 (2021) (statutory award of $280 million for violating various telemarketing statues over 65 million times did not violate due process).

Finally, there is no guarantee that the Illinois and Ohio Settlement Class Members would receive any benefit from protracted litigation. Protracted litigation is costly and time consuming, and it is possible that it "would provide [c]lass [m]embers with either no in-court recovery or some recovery many years from now . . . ." *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. at 964. This Settlement provides immediate relief to Illinois and Ohio Settlement Class Members, without the risk of protracted litigation. Thus, given the substantial risks, expense, and delay that would accompany further litigation, the Settlement offers substantial value relative to the strength of Plaintiffs' case. This crucial factor therefore strongly supports final approval.

### 3. The Method of Distributing Relief to the Illinois and Ohio Settlement Class Members is Effective and Supports Final Approval.

The "effectiveness of [the]…method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg on Class Actions § 13:53 (5th ed.). Settlement distribution here is straightforward. Illinois and Ohio Settlement Class Members could submit a claim either by mail or online. Those who submitted online had the option to select to receive their Settlement Payment by Venmo, Zelle, Paypal, or check; those who submitted a valid paper claim by mail will receive a check in the mail and can update their address at any time by contacting the Settlement Administrator. (Agreement § 1.5.) Once the Settlement is approved, the Settlement Administrator will distribute Settlement Payments to each Illinois and Ohio Settlement Class Member who submitted a valid claim for their *pro rata* portion of the respective funds. *See Crumpton v. Octapharma Plasma, Inc.*, No. 19-cv-08402, dkt. 92 (N.D. Ill. Feb. 16, 2022)

(approving settlement where settlement administrator processed claims under counsel's oversight and distributed *pro rata* shares to class members with valid claims). If, after 180 days of issuance, any electronic payments are unable to be processed or any checks go uncashed, those residual funds will revert to either the Illinois Settlement Fund or Ohio Settlement Fund, depending on where they were issued from, and will then be distributed *pro rata* to Illinois or Ohio Settlement Class Members, if feasible. (Agreement § 2.1(e), 2.2(e).) If redistribution is not feasible, or if there are funds remaining after redistribution, Class Counsel will file a motion proposing where to distribute the residual funds, likely to a *cy pres* recipient. This well-recognized method of distributing monetary relief fully satisfies this aspect of Rule 23(e)(2)(C)(ii).

### 4.     The Terms of the Requested Attorneys' Fees are Reasonable.

The third sub-factor considers the adequacy of the relief provided to the class taking into account "the terms of [the] proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii).

Class Counsel petitioned the Court for an award of reasonable attorneys' fees after the Settlement Classes received Notice. (Dkt. 266.) The Settlement's contemplated method of calculating attorneys' fees (i.e., the percentage-of-the-fund method) and Class Counsel's request for thirty-five percent (35%) of each non-reversionary settlement fund is reasonable and predicated on the outstanding relief provided to the Settlement Classes. (Agreement § 8.1.) To be sure, the percentage-of-the-fund method has been used to determine a reasonable fee award in virtually every class action settlement under a privacy statute in both federal and state courts in this District, and the requested percentage fee award is well in line with common fund fee awards in statutory privacy settlements in this District. *See*, *e.g.*, *Alvarado v. Int'l Laser Prods., Inc.*, No. 18-cv-7756, dkt. 70 (N.D. Ill. Jan. 24, 2020) (awarding 35% of the fund in BIPA case) (Pallmeyer, J.); *Lopez-McNear v. Superior Health Linens, LLC*, No. 19-cv-2390, dkt. 69 (N.D. Ill. Apr. 27, 2021) (same)

23

(Pallmeyer, J.); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 18-cv-7018, dkt. 57 (N.D. Ill Sept. 20, 2020) (same) (Pacold, J.); *Neals v. ParTech, Inc.*, No. 19-cv-05660, dkt. 140 (N.D. Ill. July 20, 2022) (same) (Valderrama, J.); *Kolinek*, 311 F.R.D. at 503 (awarding 36% of fund in TCPA case); *In re Cap. One Tel. Cons. Prot. Act Litig.*, 80 F. Supp. 3d at 792 (awarding 36% of first $10 million of the fund in TCPA case). A lodestar cross-check further confirms the reasonableness of the requested fees. The 35% fee award amounts to a multiplier on the base lodestar of 1.39. This multiplier is on the low end of multipliers awarded in similar cases and thus confirms the reasonableness of the 35% of each common fund requested.

Finally, if approved, the Settlement allows Class Counsel to elect to be paid their portion of attorneys' fees within seven days after the Court's entry of a final approval order; otherwise, fees will be paid within five business days after final judgment, including any appeals. (Agreement §§ 1.13, 8.2, Exs. G-1, G-2.) These terms are reasonable and should be approved.

### 5. The individual dismissals of Lukis, Brown, Novarisas, and Kolebuck-Utz have no effect on the relief made available to Settlement Class Members.

Finally, Rule 23(e)(2) requires the identification of "any agreement made in connection with the settlement." Fed. R. Civ. P. 23(e)(2), (3). The Rule ensures that the Court is aware of any "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." *Id.* at Advisory Committee's Note to 2003 Amendment. Beyond the class settlement agreement, the Rule requires the disclosure of side deals like separate fee or incentive award agreements, or undisclosed "blow-up" provisions. 4 NEWBERG ON CLASS ACTIONS § 13:55 (5th ed. 2011).

Here, all the terms affecting the Settlement Classes are contained within the Settlement Agreement. But out of an abundance of caution, Plaintiffs remind the Court (as they did at preliminary approval) that the former named representatives—Stephanie Lukis, Shawn Brown,

Mantas Novarisas, and Angela Kolebuck-Utz (the "Dismissed Plaintiffs")—have each signed modest individual settlement agreements and dismissed their individual claims. (Agreement Recitals ¶ L.) These dismissals were necessary because the Settlement Classes here (which track those proposed in the SAC) are narrower than the ones originally pleaded, and none of the Dismissed Plaintiffs are members of those classes. Accordingly, the individual settlements have no effect on the Settlement Classes, because they only "release . . . individual claims . . . that [are not presented here] for class treatment." *Rowe v. E.I. DuPont de Nemours & Co.*, No. CIV. 06-1810 RMB/AMD, 2011 WL 3837106, at *5 (D.N.J. Aug. 26, 2011) (reviewing class representatives' agreements to dismiss individual claims and confirming they did not present any "evidence of collusion or threat of conflict"). Further, none of the individual settlements are paid from or otherwise take money away from the Illinois and Ohio Settlement Funds, none are "predicate[d] . . . on the Court's approval of the class settlement or otherwise implicate the class settlement," and none provide Plaintiff Butler or Plaintiff Scholz-Pinger—the proposed representatives of the Settlement Classes—with any additional relief above what every other Illinois and Ohio Settlement Class Member stands to recover. *See id.* In short, apart from being a necessary step in reaching the class Settlement, the Dismissed Plaintiffs' individual settlements have no detrimental impact on the relief made available to the Settlement Classes.[4]

### E. The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement.

In addition to the requirements that overlap with those now required by Rule 23(e), the Seventh Circuit requires a few additional considerations: the class's reaction to the settlement, the

---

[4] The former class representatives—Stephanie Lukis, Shawn Brown's heirs, Mantas Novarisas, and Angela Kolebuck-Utz—will present their individual settlement agreements for *in camera* inspection on the Court's request.

opinion of competent counsel, and whether the settlement raises any red flags that courts should be wary of. *Wong*, 773 F.3d at 863. Here, the positive reaction of the Settlement Classes, the support of counsel, and the lack of red flags all favor approval.

### 1. The Reaction of the Settlement Classes Favors Approval.

Lack of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc., v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *6 (N.D. Ill. 2012). Here, the Court-approved Settlement Administrator diligently implemented the Notice plan outlined in the Agreement, and the objection and exclusion deadlines have passed without a single person objecting to the Settlement and only one person (an Illinois Settlement Class member) submitting a valid request to be excluded from the Settlement. (Kamenir Decl. ¶ 19, Exs. J, K.)[5] That not one person has objected to the Settlement is powerful evidence of the Settlement Classes' support for the Settlement. *See McDaniel v. Qwest Commc'ns Corp.*, 2011 WL 13257336, at *4 (N.D. Ill. 2011) (finally approving settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'") (citations omitted); *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (stating that "[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair, reasonable and adequate").

Similarly, the 24.6% claims rate from the Illinois Settlement Class and the 16.8% claims rate of the Ohio Settlement Class also indicate a robust positive reaction from the Settlement

---

[5]    The Settlement Administrator received two timely requests for exclusion, one of which is invalid under the terms of the Agreement and the Court's Preliminary Approval Order—it is a paper claim form submitted that merely includes the word "Withdraw". (Kamenir Decl., Ex. K.)

Classes.[6] *See Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, FED. TRADE COMM'N, 11 (Sept. 2019) ("Across all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.,* cases weighted by the number of notice recipients) was 4%.").[7]

Though there are no perfectly comparable settlements, the rate at which Illinois and Ohio Settlement Class Members participated in this Settlement is consistent with settlements in other privacy class actions. *See Kolinek*, 311 F.R.D. at 493 (2.5% claims rate in TCPA case); *Snyder*, 2019 WL 2103379, at *8 (16% claims rate in TCPA case); *Crumpton*, No. 19-cv-08402, dkt. 92 (22% claims rate in BIPA case); *Neals*, No. 19-cv-05660, dkt. 140 (N.D. Ill. July 20, 2022) (23.86% claims rate in BIPA case). The strong response rate combined with a total lack of objections and a single opt out thus strongly supports granting final approval to the Settlement.

### 2. *Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval.*

The opinion of competent counsel also supports final approval of the Settlement. Where class counsel has "extensive experience in consumer class actions and complex litigation[,]" their

---

[6]     As explained in Plaintiffs' Notice of Errata in Plaintiffs' Motion for Attorneys' Fees, Expenses, and Incentive Awards, filed on August 31, 2022 (dkt. 269), the claims rates reported here differ from the claims rates reported by Class Counsel in Plaintiff's Motion for Attorneys' Fees, Expenses, and Incentive Awards, (dkt. 266 at 11 n. 2), due to a previous error in the Settlement Administrator's automated claims reporting system. The Settlement Administrator has since corrected the error, analyzed the claims for fraud, and confirmed the claims rates reported here are accurate to date. (*See* Kamenir Decl. ¶¶ 20-22.) The Settlement Administrator continues to process paper Claim Forms that continue to come in, (*id.* ¶ 20), and Class Counsel will advise the Court of the final claims rates at the Final Approval Hearing.

[7]     In mid-July 2022—not by the instruction of the Parties or the Settlement Administrator—the websites TopClassActions.com ("Top Class Actions") and ClassAction.org posted the details of this Settlement on their sites with a link to the online claim form. (Kamenir Decl. ¶ 23.) Within seven days of posting on Top Class Actions, the number of Unknown Claims submitted (*i.e.*, online claims submitted without a class member ID) increased over 3,000%, and in total, 57,033 Unknown Claims were submitted by people not on the class list up until the Claims Deadline. (*Id.*)

"belie[f] that the [s]ettlement is beneficial to the [c]lass" supports approval of the settlement. *Schulte I*, 805 F. Supp. 2d at 586; *see also Retsky Family Ltd. P'ship*, 2001 WL 1568856, at *3 (finding plaintiff's counsel competent, and their endorsement of a settlement thus supporting approval, where counsel were "experienced and skilled practitioners in the [relevant] field, and [were] responsible for significant settlements as well as legal decisions that enable litigation such as this to be successfully prosecuted") (internal quotations omitted).

Here, as discussed at length in Plaintiff's motion for preliminary approval (dkt. 251 at 16-18), Class Counsel are competent to give their opinion on this Settlement. Put simply, and for the reasons discussed above, Class Counsel believe that the Settlement provides outstanding monetary and prospective relief without the uncertainty and delay that years of litigation would bring. (Declaration of J. Eli Wade-Scott, attached as Exhibit 3, at ¶ 3) That is certainly in the best interest of the Settlement Classes. (*Id.*)

For these reasons, the opinion of Class Counsel weighs in favor of final approval.

### 3. *The Settlement Raises No Red Flags.*

Finally, the Settlement raises none of the red flags identified by the Seventh Circuit in analyzing class settlements. In *Eubank v. Pella Corp.*, the Seventh Circuit identified "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for[.]" 753 F.3d 718, 728 (7th Cir. 2014). Those signs included (i) a single class containing two adverse subgroups, (ii) a familial relationship between class counsel and the class representative, (iii) failure to establish the amount of class member recovery, (iv) the reversion of any unawarded attorneys' fees to defendant, (v) an advance of attorneys' fees before notice of the settlement was provided to class members, (vi) a provision in the settlement agreement denying incentive awards to class representatives who objected to the settlement, (vii)

providing some class members only coupons, and (viii) a complicated claims procedure creating substantial obstacles to recovery. *Id.* at 721-28.

Here, none of those red flags are present. There is no single class with adverse subgroups, as the Illinois and Ohio Settlement Class Members have been divided into two separate classes each with their own Class Representative. Further, the Class Representatives, Plaintiffs Butler and Scholz-Pinger, have no familial relationship with Class Counsel or any member of their respective law firms. The claims process here was simple and straightforward: Illinois and Ohio Settlement Class Members were able to submit the short, one-page Claim Form either online through the Settlement Website, or by mail by submitting the postage-prepaid Claim Form that was attached to their original postcard notice. Any unawarded attorneys' fees will be distributed to the claiming Illinois and Ohio Settlement Class Members, not revert to Whitepages (Agreement § 8.1); no attorneys' fees will be paid to Class Counsel until after final approval of the Settlement; and there is no provision in the Settlement Agreement denying an incentive award to a named plaintiff who does not support the Settlement.

The Settlement here is beneficial to the Illinois and Ohio Settlement Class Members and displays no warning signs that should give this Court pause. It should therefore be approved.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order finally approving the Parties' Settlement and ordering such other relief as this Court deems reasonable and just.[8]

---

[8] For the Court's convenience, Plaintiff will submit a proposed final approval order to the Court's designated email address prior to the September 28, 2022 final approval hearing.

Respectfully submitted,

**FATIMA BUTLER** and **JULIA SCHOLZ-PINGER**, individually and on behalf of all others similarly situated,

Dated: September 7, 2022              By: /s/ J. Eli Wade-Scott
                                          One of Plaintiffs' Attorneys

J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163

Roberto L. Costales, Esq.
rlc@beaumontcostales.com
William H. Beaumont, Esq.
whb@beaumontcostales.com
BEAUMONT COSTALES LLC
107 W. Van Buren, Suite 209
Chicago, Illinois 60605
Telephone: (773) 831-8000